# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | |
| RNI WIND DOWN CORPORATION., et al., | ) ) | Bankruptcy Case No. 06-10110 (CSS) |
| | ) | |
| Debtors. | ) ) | |
| | ) | |
| CHARLES L. GRIMES | ) | |
| Appellant | ) ) | Civil Action No.: 06-585 (GMS) |
| | ) | |
| v. | ) ) | |
| RNI WIND DOWN CORPORATION, et al. | ) ) ) | |
| | ) | |
| Appellees. | ) ) | |

## OPENING BRIEF OF APPELLANT CHARLES L. GRIMES

SMITH, KATZENSTEIN & FURLOW, LLP
David A. Jenkins (932)
Michele C. Gott (2671)
Kathleen M. Miller (2898)
800 Delaware Avenue, 10th Floor
PO Box 410
Wilmington, DE 19899 (Courier 19801)
Tel: (302) 652-8400
Fax: (302) 652-8405
Email: DJenkins@skfdelaware.com

December 14, 2006                *Attorneys for Charles L. Grimes*

06034|BRF|10019773.WPD

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

BASIS OF APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED AND
APPLICABLE STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     A.     Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     B.     The Derivative Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     C.     The Ninth Circuit Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     D.     Proceedings In The Bankruptcy Court . . . . . . . . . . . . . . . . . . . . . . 15

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

     I.     THE BANKRUPTCY COURT LACKED JURISDICTION
             TO APPROVE AN AMENDMENT TO THE
             DERIVATIVE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

     II.    THE BANKRUPTCY COURT ERRED IN FINDING
             THAT THE DERIVATIVE SETTLEMENT ON APPEAL TO
             THE NINTH CIRCUIT COULD BE AMENDED
             WITHOUT THE CONSENT OF THE APPELLANT IN
             THE NINTH CIRCUIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

     III.   THE BANKRUPTCY COURT ERRED IN FINDING
             THAT THE STANDARDS OF BANKRUPTCY RULE 9019
             WERE SATISFIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

          A.     The first *Martin* factor - probability of success in litigation . . . . 37

               1.     The propriety of unitary settlements . . . . . . . . . . . . . . . 38

2.    Whether Plaintiffs' Counsel deserve a fee . . . . . . . . . . . . 39

        a.    Plaintiffs' Counsel never made a showing that the Federal Derivative Action was meritorious . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

        b.    Plaintiffs' Counsel never made a showing that the State and Federal Derivative Actions caused a substantial benefit to Riverstone . . . . . . 40

        c.    There has been no showing that any fee award is reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

B.    The second *Martin* factor - likely difficulties in collection . . . . . 42

C.    The third *Martin* factor - complexities of the litigation and the expense, inconvenience and delay necessarily attending it . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

D.    The fourth *Martin* factor -paramount interest of creditors . . . . . . 44

E.    Other relevant factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*American Games, Inc. v. Trade Products, Inc.,*
    142 F.3d 1164 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Burlington Motor Carriers, Inc. v. Comdata Network, Inc.,*
    C.A. No. 99-573-GMS, 2002 WL 73490 (D.Del.) . . . . . . . . . . . . . . . . . . . . . . . 2

*Cammermeyer v. Perry,*
    97 F.3d 1235 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Cantor v. Sachs,*
    162 A. 73 (Del. Ch. 1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Chrysler Corp. v. Dann,*
    223 A.2d 384 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Cooperstock v. Pennwalt Corp.,*
    820 F.Supp. 921 (E.D.Pa. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*DHX, Inc. v. Allianz AGF MAT, LTD.,*
    425 F.3d 1169 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Harff v. Kerkorian,*
    324 A.2d 215 (Del. Ch. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Harrigan v. Bergdoll,*
    270 U.S. 560 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Heiser v. Woodruff,*
    327 U.S. 726 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Fleet/Norstar Sec. Litig.,*
    935 F. Supp. 99 (D.R.I. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 40

*In re Fogerty,*
    204 B.R. 956 (Bankr. N.D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Highway Truck Drivers and Helpers,*
    100 B.R. 209 (Bankr.E.D.Pa. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Ionosphere Clubs, Inc.,*
    156 B.R. 414 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*In re Key3Media Group, Inc.,*
    336 B.R. 87 (Bankr.D.Del 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*In re Labrum & Doak, LLP,*
    227 B.R. 391 (Bankr.E.D.Pa. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*In re M&F Worldwide Corp. Shareholders Litig.,*
    799 A.2d 1164 (Del. Ch. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.,*
    140 B.R. 969 (N.D. Ill. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Martin,*
    91 F.3d 389 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*In re Marvel Enter. Group, Inc.,*
    222 B.R. 243 (D. Del. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*In re Merck & Co., Inc. Sec. Litig.,*
    432 F.3d 261 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*In re Oracle Sec. Litig.,*
    852 F. Supp. 1437 (N.D.Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 40

*In re Phoenix Petroleum Co.,*
    278 B.R. 385 (Bankr.E.D.Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In the Matter of Roloff,*
    598 F.2d 783 (3d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Integrated Solutions, Inc. v. Service Support Specialities, Inc.,*
    124 F.3d 487 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Kapp v. Naturelle, Inc.,*
    611 F.2d 703 (8th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Law Debenture Trust Co. v. Kaiser Aluminum Corp.*,
    339 B.R. 91 (D.Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Lewis v. Anderson*,
    509 F. Supp. 232 (C.D.Cal. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Nobelman v. American Savings Bank*,
    508 U.S. 324 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 38, 41

*Strong v. BellSouth Telecomm.*,
    137 F.3d 844 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Teachers Insurance and Annuity Ass'n of America v. Butler*,
    803 F.2d 61 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-25, 35

*U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*,
    513 U.S. 18 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

**Statutes and Other Authorities**                **Page(s)**

11 U.S.C. § 541 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-30

28 U.S.C. § 1294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

28 U.S.C. § 1334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

28 U.S.C. § 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

28 U.S.C. § 158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

Fed. R. Bankr. P. 8001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Bankr. P. 9019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Fed. R. Civ. P. 23.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

R. Franklin Balotti & Jesse A. Finkelstein,
    *Delaware Law of Corporations and Business
    Organizations* (3d ed. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

15A Charles Alan Wright, Arthur R. Miller and Edward A. Cooper,
    *Federal Practice and Procedure*, § 3901 (2d ed. 1992) . . . . . . . . . . . . . . . . . . 25

1 Donald J. Wolfe, Jr. & Michael A. Pittenger,
    *Corporate and Commercial Practice in the
    Delaware Court of Chancery* § 9-1 (7th ed. 2006) . . . . . . . . . . . . . . . . . . . . 29, 30

## BASIS OF APPELLATE JURISDICTION

Charles L. Grimes filed this appeal on August 25, 2006 from a Memorandum Opinion and Order both entered on August 23, 2006 in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(a)(1) and Federal Rule of Bankruptcy Procedure 8001.

## STATEMENT OF ISSUES PRESENTED AND
## APPLICABLE STANDARD OF REVIEW

I.     Whether the Bankruptcy Court erred in finding that it had subject matter jurisdiction to approve an amendment to the settlement of a derivative suit previously approved by a final order of the United States District Court for the Northern District of California (the "California District Court") pursuant to Fed. R. Civ. P. 23.1, which order was (and remains) the subject of a pending appeal in the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"). A Bankruptcy Court's jurisdiction is a question of law subject to plenary review. *Burlington Motor Carriers, Inc. v. Comdata Network, Inc.*, C.A. No. 99-573-GMS, 2002 WL 73490, at *1 (D.Del.) (attached as Ex. 1).

II.    Whether the Bankruptcy Court erred in finding that the derivative settlement on appeal to the Ninth Circuit could be amended in an effort to resolve that appeal without the consent of the appellant in the Ninth Circuit. The District Court exercises plenary review of a Bankruptcy Court's choice and interpretation of legal precepts and its application of those precepts to historical facts. *Law Debenture Trust Co. v. Kaiser Aluminum Corp.*, 339 B.R. 91, 94 (D.Del. 2006).

III.   Whether the Bankruptcy Court erred in finding that the standards of Bankruptcy Rule 9019 were satisfied in connection with the attempted amendment to the derivative settlement. The District Court reviews the Bankruptcy Court's determination to approve a settlement for abuse of discretion. *Law Debenture*, 339 B.R. at 95.

## STATEMENT OF THE CASE

This is an appeal from an order of the Bankruptcy Court entered pursuant to Bankruptcy Rule 9019 approving an agreement to amend the settlement of a derivative suit. That settlement had been approved, pursuant to Fed. R. Civ. P. 23.1, by Judge Phyllis J. Hamilton of the California District Court (the "Derivative Settlement"); it resolved several derivative actions that had been filed on behalf of Riverstone Networks, Inc. ("Riverstone") (Ex. D to Declaration of Kathleen M. Miller in Support of Motion for Relief From Stay Pursuant to 11 U.S.C. § 362 of the Bankruptcy Code Filed by Charles L. Grimes, D.I. 351 ("Miller Dec.")). Charles L. Grimes (one of Riverstone's largest stockholders and the appellant here) had objected to the Derivative Settlement (Ex. J to Miller Dec.). In his objection, Mr. Grimes challenged both the "unitary" nature of the settlement, which required that plaintiffs' counsel be paid $1.75 million in fees as a term of the settlement, and the amount of fees paid to counsel in a case that produced no monetary benefit for Riverstone. Because the settlement was presented to the California District Court as a "unitary" settlement, the court could not analyze the requested fee under the strict standards typically applied to fee requests in derivative actions.

The California District Court had jurisdiction over approval of the Derivative Settlement pursuant to Fed. R. Civ. P. 23.1. In an opinion and order dated July 22, 2005 (the "First Settlement Order"), Judge Hamilton approved the Derivative Settlement, although not without expressing serious reservations about its unitary nature (Ex. D to Miller Dec.). As discussed in detail below, Judge Hamilton perceived the proposed "unitary settlement" as a scheme to get around an exorbitant fee award. Because of these reservations, she also

granted Mr. Grimes leave to intervene to ensure that he could appeal the First Settlement Order to the Ninth Circuit -- an appeal she invited him to take (Ex. D to Miller Dec.). Mr. Grimes filed that appeal on August 11, 2005 (Ex. D to Miller Dec.). Pursuant to an August 24, 2005 scheduling order, on November 25, 2005, Mr. Grimes filed his opening brief on appeal (Ex. E to Miller Dec.).

Perhaps concerned about the viability of the Derivative Settlement once the Ninth Circuit examined it, Riverstone and plaintiffs' counsel attempted to "settle" that appeal among themselves (*i.e*, without Mr. Grimes' participation), by agreeing to remove the unitary aspect of the Derivative Settlement and allowing Judge Hamilton to pick the appropriate amount of attorneys' fees. Riverstone and plaintiffs' counsel then moved to dismiss the appeal, claiming that it was moot (Exs. F and H to Miller Dec.). The Ninth Circuit denied the motion on March 17, 2006, without prejudice to appellees raising the issue in the briefs on the merits (Exs. G and K to Miller Dec.).

In the meantime, on February 7, 2006, Riverstone and certain of its affiliates ("Debtors") filed voluntary petitions for relief in the Bankruptcy Court under Chapter 11 of Title 11.[1] After being informed of this filing on March 24, 2006, by plaintiffs' counsel, on March 29, 2006, the Ninth Circuit stayed the appeal and directed that Debtors file a status report on or before September 20, 2006 (March 29, 2006 Order Staying the Appeal, attached as Ex. 2).

---

[1]On May 24, 2006, during the bankruptcy proceeding, Riverstone changed its name to RNI Wind Down Corporation.

Thereafter, Debtors and plaintiffs' counsel again tried to settle the Ninth Circuit appeal. This time they decided to bypass both Judge Hamilton and the Ninth Circuit. Rather, they proposed that the Bankruptcy Court bless an agreement among Debtors and plaintiffs' counsel that would amend the Derivative Settlement by requiring plaintiffs' counsel to return $950,000 of the fees paid to them under the First Settlement Order. This return, however, still would leave plaintiffs' counsel with $800,000 in fees that had not been approved by any court under traditional fee application standards. On June 8, 2006, Debtors filed a motion pursuant to Bankruptcy Rule 9019 (the "Settlement Motion") (D.I. 402) seeking the Bankruptcy Court's approval of this proposed amendment to the Derivative Settlement (the "Amended Settlement Agreement").

Mr. Grimes objected to the Settlement Motion on several grounds: (1) the Bankruptcy Court had no jurisdiction to vacate or modify the California District Court's First Settlement Order (as it was implicitly being asked to do); (2) Debtors and plaintiffs' counsel could not settle the Ninth Circuit appeal without the participation of the only appellant (Mr. Grimes); and (3) Debtors failed to show that the proposed "settlement" was reasonable (D.I. 453). An initial hearing on the Settlement Motion was held on June 30, 2006 (D.I. 489). During that hearing, the Bankruptcy Court requested supplemental briefing on the first two issues raised by Mr. Grimes, and asked the parties to address whether, assuming the Bankruptcy Court had jurisdiction to amend the Derivative Settlement, it should defer to the Ninth Circuit under principles of comity (D.I. 489 at 65). A second hearing took place on July 27, 2006 (D.I. 782). By Memorandum Opinion and Order both dated August 23, 2006 (the "Opinion" and the "Final Order"), the Bankruptcy Court granted the Settlement Motion

(D.I. 711 and 712) (attached as Ex. 3).[2]

On August 25, 2006, Mr. Grimes filed a Notice of Appeal under 28 U.S.C. § 158(a) from the Opinion and Final Order (D.I. 728). Pursuant to a stipulated briefing scheduled entered by this Court on November 13, 2006, this is Mr. Grimes' opening brief in support of this appeal.

The Ninth Circuit appeal is also proceeding again. On September 20, 2006, Debtors filed a status report in that Court representing that the Bankruptcy Court entered the Order modifying the Derivative Settlement; that Debtors' plan of reorganization subsequently was confirmed by separate order, which also enjoined all parties from continuing any action to recover a claim against Riverstone (the "Confirmation Order"); and that Debtors believed the appeal was moot (9/20/06 letter from Rebecca L. Booth to 9th Circuit attached as Ex. 4). However, Debtors did not advise the Ninth Circuit either of Mr. Grimes' objection to the Settlement Motion or of this appeal. When Debtors refused to allow Mr. Grimes to respond to the status report (to inform the Ninth Circuit of these omissions), he filed an emergency motion in the Bankruptcy Court (9/22/06 Emergency Motion for Limited Modification of the Automatic Stay and/or Confirmation Injunctions in Connection with the Ninth Circuit Appeal, attached as Ex. 5). On September 26, 2006, the Bankruptcy Court entered an order modifying the automatic stay provisions of Section 362 and the injunctions in the Confirmation Order to allow Mr. Grimes to respond to the status

---

[2]At the same time, the Bankruptcy Court denied without prejudice Mr. Grimes' previously filed motion to lift the automatic stay imposed by Section 362 of the bankruptcy code to allow him to proceed with his appeal in the Ninth Circuit (D.I. 304, 456 and 473). Mr. Grimes has not appealed the denial of his motion to lift the stay.

report in the Ninth Circuit (9/26/06 Order Granting, In Part and Continuing in Part, Charles L. Grimes' Motion for Limited Modification of the Automatic Stay and/or Confirmation Injunctions in Connection with the Ninth Circuit Appeal, attached as Ex. 6).[3]

On September 26, 2006, Mr. Grimes advised the Ninth Circuit of this appeal and his belief that the Ninth Circuit appeal is not moot (9/26/06 letter from David A. Jenkins to the 9th Circuit, attached as Ex. 8). By Order entered October 24, 2006, the Ninth Circuit reinstated the briefing schedule in that Court, requiring appellant's opening brief to be filed by November 24, 2006, the answering brief by December 26, 2006, and the reply within 14 days of service of the answering brief (10/24/06 Order reinstating the briefing schedule, attached as Ex. 9). On November 21, 2006, Mr. Grimes informed the Ninth Circuit that his opening brief had been filed the previous year (9/21/06 letter from David A. Jenkins to 9th Circuit, attached as Ex. 10). On November 24, 2006, the Ninth Circuit revised its October 24 Order to stay the appeal as to Riverstone only (11/24/06 Revised Order regarding the stay on appeal, attached as Ex. 11). Thus, the derivative plaintiffs (the real appellee in the Ninth Circuit) are required to file their answering brief on or before December 26, 2006.

---

[3]By subsequent order of September 27, 2006, the Bankruptcy Court permitted Mr. Grimes "to respond to any further submissions filed in the Ninth Circuit by any party in interest and/or to file pleading or other papers if and as directed by the Ninth Circuit" (9/28/06 Final Order Granting Charles L. Grimes Motion for Limited Modification of the Automatic Stay and/or Confirmation Injunctions in Connection with the Ninth Circuit Appeal, attached as Ex. 7).

## STATEMENT OF FACTS

### A.     Background

Riverstone is a Delaware corporation previously headquartered in Santa Clara, California. Following disappointing financial results in 2002-2003 and an investigation by the Securities and Exchange Commission into its accounting practices, Riverstone became the subject of several lawsuits, including several derivative actions. The first of those was filed on August 13, 2002 in the Superior Court of California, County of Santa Clara (the "State Court") (*Bruhn v. Pereira*, No. CV-810290) (D.I. 453 at ¶ 1). This derivative complaint made virtually identical allegations to those made in a class action complaint previously filed against Riverstone in the California District Court (*Id.*). Defendants demurred and plaintiffs filed an amended complaint in February 2003 (*Id.*).

In April 2003, another derivative suit was filed in the State Court (*Carrico v. Pereira*, No. CV-816188) (D.I. 453 at ¶ 2). The two State Court actions were then consolidated as *In re Riverstone Networks, Inc., Derivative Litigation* (the "State Derivative Action"), and in May 2003, a consolidated derivative complaint was filed (the "Fourth State Derivative Complaint") (*Id.*). On September 17, 2003, the State Court dismissed the Fourth State Derivative Complaint, stating:

> I have a lot of legal conclusions that are strung together in this pleading that I don't think satisfy the standard to either raise a doubt as to the independence and disinterest of the majority of the members of the board of directors, or that this [board] could not exercise its business judgment in deciding whether or not to initiate legal proceedings in this case.

(*Id.*). The State Court also expressed serious doubts that plaintiff would ever be able to plead demand futility with the requisite particularity, having failed to do so after four attempts (*Id.*). The State Court then stayed further proceedings in favor of a complaint which by then had been filed in the California District Court by Gregory Watterson (*Watterson v. Pereira*, C.A. No. 03-637) (the "Federal Derivative Action") (D.I. 453 at ¶ 3).

The allegations in the original complaint in the Federal Derivative Action were substantially identical to those made in the original complaint in the State Derivative Action (*Id.*). As in the State Derivative Action, defendants moved to dismiss because plaintiff failed adequately to allege demand futility and to state a cause of action (*Id.*). In response, plaintiff filed an amended complaint on November 6, 2003; the amended pleading was largely a verbatim recitation of allegations in the Fourth State Derivative Complaint, which by then had been dismissed (*Id.*). Defendants in the Federal Derivative Action again moved to dismiss, presenting numerous grounds indicating that the amended complaint would suffer the same fate as its companion Fourth State Derivative Complaint (D.I. 453 at ¶¶ 4-5).

**B.    The Derivative Settlement**

Before briefing on the motion to dismiss was complete, the parties participated in mediation (D.I. 453 at ¶ 6). On November 12, 2004, a stipulation was signed that provided for the settlement of both the State and Federal Derivative Actions--the Derivative Settlement (the "Stipulation") (*Id.*) (a copy of the Stipulation is attached as Ex. B to D.I. 402). Under the Derivative Settlement Riverstone agreed to implement certain corporate governance measures, particularly changes to the composition and practices of

Riverstone's board of directors and the committees of the board (D.I. 453 at ¶ 6).

In return, Riverstone agreed to pay $1.75 million in fees and expenses to derivative plaintiffs' counsel ("Plaintiffs' Counsel") as a "unitary" part of the settlement (D.I. 453 at ¶ 7). Unlike the typical settlement of a derivative action, where the fee request is separately analyzed by the court pursuant to well-established criteria, the fee agreement in a "unitary" settlement is just one provision of the overall agreement (D.I. at ¶ 7, n.3). This tying of the fee to the entire settlement allowed Plaintiffs' Counsel to hold the Derivative Settlement hostage to the payment of their fees, forcing the California District Court either to accept the agreed fees or disapprove the entire settlement, which would have forced the parties (and the Court) to litigate a case where neither wished to do so (Ex. E to Miller Dec. at 32).

By making their fees an agreed-to term of the settlement, Plaintiffs' Counsel also evaded the heightened level of scrutiny to which fee awards are subjected. In a typical derivative settlement, the parties first present the settlement for court approval under Fed. R. Civ. P. 23.1. If approval is received, counsel for plaintiffs file an application seeking a court award of fees. Approval of the settlement itself turns on whether the settlement taken as a whole is fair, reasonable, adequate, and free from collusion or fraud. (Ex. A. to Miller Dec., 1/19/05 Tr. at 45-56; Ex. E to Miller Dec. at 13). The subsequent fee application is subject to a higher standard of review, with the trial court acting in a fiduciary capacity to protect shareholders and maintain public confidence that derivative litigation is not conducted solely for the benefit of lawyers (Ex. E to Miller Dec. at 26-31). If the settlement of a derivative action has not produced a common fund from which counsel may be paid (and

here it did not), counsel seeking fees must first establish that the derivative action was meritorious when filed and that settlement of the derivative action created a substantial benefit to the corporation on whose behalf it was brought (Ex. A to Miller Dec. 1/19/05 Tr. at 45-56; Ex. E to Miller Dec. at 29-30)  If that showing is made, the trial court then must determine a reasonable fee based on a number of factors (Ex. E. to Miller Dec. at 30-31).[4]

On December 2, 2004, the parties to the State and Federal Derivative Actions filed an application for preliminary approval of the Derivative Settlement in the California District Court (D.I. 453 at ¶ 8).  At a hearing on January 19, 2005, Judge Hamilton refused to grant approval because of the "unitary" attorneys' fee provision, which she found "troublesome" and a deliberate attempt to avoid having the proposed fee award scrutinized under the traditional criteria set forth above (D.I. 453 at ¶ 8; Ex. A to Miller Dec. at 55, 45-56).  Accordingly, Judge Hamilton ordered further briefing on whether the court could allow the fees to be included within a unitary settlement (and thus reviewed under the less stringent standard applied to settlements), instead of having the Court apply the traditional standard for fee applications (a standard which, Judge Hamilton noted, Plaintiffs' Counsel had thus far failed to meet) (D.I. 453 at ¶ 8).

Plaintiffs' Counsel filed a supplemental brief on January 26, 2005.  At a hearing on February 16, 2005, Judge Hamilton was still troubled by the propriety of the unitary settlement and doubtful that Plaintiffs' Counsel would be able to satisfy the normal

---

[4]Where (as here) the derivative settlement does not produce a common fund, the court typically uses the lodestar approach, inquiring into the number of hours reasonably spent, multiplied by a reasonable hourly rate.  The resulting number is then adjusted upward or downward based on the benefits obtained, quality of representation, complexity or novelty of the issues, and risk of non-payment to plaintiffs' counsel (Ex. E to Miller Dec. at 30-31).

standard for a fee award (Ex. B to Miller Dec. at 3-5). Nevertheless, she granted preliminary approval and ordered that notice be sent to Riverstone's stockholders, stressing that "any objections that I receive from any shareholders on this settlement will be scrutinized and could very well block final approval" (Ex. B to Miller Dec. at 4, 20).

On May 2, 2005, Mr. Grimes, one of Riverstone's largest stockholders, filed an objection to both the unitary settlement approach and the amount of the fees sought by Plaintiffs' Counsel (D.I. 453 at ¶ 10; Ex. E to Miller Dec. 16-18).[5]  At the same time, he moved to intervene (D.I. 453 at ¶ 10).  The parties filed additional briefs and declarations and on June 1, 2005, Judge Hamilton held a hearing on the application for final approval of the settlement (*Id.*).  She began with the following observation:

> It probably comes as no surprise that I still have problems with this case.  This case has been very problematic since our hearing in January, and the supplemental briefing in February didn't clear it up much.  And frankly I still have a lot of the same problems with the case today notwithstanding yet additional briefs on final approval motion.
>     . . . .
> As I've stated on several occasions in the past, I am very troubled by the fact that you all are presenting me with a settlement in which the agreed upon attorneys fees is included which pretty much takes away or − inhibits the Court's ability to meaningfully evaluate whether or not the attorneys fees is reasonable.
>
> I'm not satisfied at all with the plaintiffs' attempt to establish some kind of a standard for the Court.  I mean I've asked several times what standard applies in this case.  The plaintiff's position is not entirely clear, even in this last round

_____

[5]Although Mr. Grimes also believed that the corporate governance provisions in the Derivative Settlement provided little benefit to Riverstone, he did not believe that the derivative claims had merit.  Thus, he did not object to dismissal of the derivative actions (Ex. E to Miller Dec. at 16).

> of papers, as to whether or not the Court should apply some
> generalized kind of reasonable fair and adequate standard to
> the whole settlement which necessarily would include the
> attorneys fees or whether or not the Court should follow the
> traditional substantial benefit analysis which would
> necessitate a showing that the suit was meritorious and that
> there was some benefit derived to the corporation, and then
> would require the Court to apply a Loadstar approach to
> evaluating fees.

(D.I. 453 at ¶ 10).[6]

Judge Hamilton went on to explain that she was still suspicious that the fee

provision had been included as a settlement term to evade her scrutiny of what she termed

an "*exorbitant fee request*" (D.I. 453 at ¶ 11) (emphasis added).  Nevertheless, because she

found no authority clearly prohibiting a unitary settlement in a derivative case,[7] Judge

Hamilton approved the Derivative Settlement (including its provision for attorneys' fees),

as fair, reasonable and adequate using established settlement standards (*Id.*).  At the same

time, she granted Mr. Grimes' motion to intervene and invited him to appeal her approval

of the Derivative Settlement, stating "[i]t seems to me that . . . this is a perfect case of for the

Ninth Circuit to make a determination as to whether or not this kind of settlement should be

permitted in a derivative action" (D.I. 453 at ¶ 11; Ex. D to Miller Dec. 06/01/05 Tr. at 39).

On July 22, 2005, the California District Court entered the First Settlement

Order implementing the above ruling, again encouraging Mr. Grimes to appeal:

---

[6]*See also* D.I. 453 at ¶ 10, n. 4 ("Frankly, it seems to me as though this settlement was
arrived at and engaged in and agreed to in part to take away from the Court the ability to
determine if the fees were reasonable").

[7]Unitary settlements are not permitted in class actions in the Ninth Circuit (Ex. E to
Miller Dec. at 34).

> *The court would welcome guidance from the Ninth Circuit* on the question of the propriety of unitary settlements in shareholder derivative actions, where the provision regarding payment of fees is a term of the settlement agreement; as well as on the question of the standard to be applied by the court in evaluating the fairness of such a settlement agreement that includes an attorneys' fees provision.

(D.I. 453 at ¶ 11) (emphasis added).

### C.    The Ninth Circuit Appeal

On August 11, 2005, Mr. Grimes filed his Notice of Appeal from the approval of the Derivative Settlement with the Ninth Circuit, and on November 25, 2005 filed his opening brief in support of that appeal (D.I. 453 at ¶ 12; Exs. D and E to Miller Dec.). Thereafter, Riverstone and Plaintiffs' Counsel (the latter no doubt fearing what could happen to unitary settlements once the Ninth Circuit took a close look at them) purported to "settle" the appeal among themselves.[8] In their purported "settlement," Plaintiffs' Counsel agreed to "unbundle" their fee award from the overall Derivative Settlement and file a separate fee application before Judge Hamilton (D.I. 453 at ¶ 12). To implement this "settlement," Plaintiffs' Counsel filed a joint motion on behalf of all appellees (including Riverstone) to dismiss the Ninth Circuit appeal claiming that their unilateral agreement to undo the portions of the Derivative Settlement at issue on appeal mooted the appeal (D.I. 453 at ¶ 12; Exs. F and H to Miller Dec.).[9]

---

[8]We have put "settle" and "settlement" in quotes because we do not believe the appeal could be settled without the agreement of the appellant, Mr. Grimes. *See infra* at Argument II.

[9]Plaintiffs' Counsel did appear to understand that, because the Ninth Circuit appeal had divested the California District Court of jurisdiction, they needed to have that appeal dismissed before the California District Court could do anything. Hence, the motion to

Mr. Grimes, the only appellant, opposed the motion to dismiss. As he explained to the Ninth Circuit, because the Derivative Settlement was not effective until approved by the California District Court under Fed. R. Civ. P. 23.1, it could not be undone once that approval was obtained without vacating the order approving it (Ex. G to Miller Dec. at 2, 11). In seeking to dismiss the appeal, the appellees never addressed the standards for vacating the California District Court's First Settlement Order - standards they could not satisfy in any event (as described in more detail below) (see Ex. G to Miller Dec. at 12-17). Thus, the only proper way to undo the Derivative Settlement was to have the proper appellate court (here, the Ninth Circuit) overturn the California District Court's First Settlement Order that had approved the Derivative Settlement.

On March 17, 2006, the Ninth Circuit denied the motion to dismiss the appeal, without prejudice to appellees raising the issue again in the briefing on the merits (D.I. 453 at ¶ 13). On March 29, 2006, the Ninth Circuit stayed the appeal after learning of Riverstone's bankruptcy and directed that Debtors file a status report in that Court by September 20, 2006 (D.I. 453 at ¶ 13). As explained *supra* at 7, the Ninth Circuit has since reinstated the briefing schedule on that appeal.

**D.    Proceedings In The Bankruptcy Court**

On February 7, 2006, Riverstone filed in the Bankruptcy Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code. On May 5, 2006, Mr. Grimes filed a Motion for Relief from the Automatic Stay (the "Lift Stay Motion") seeking a modification of the automatic stay imposed by Section 362 of the Bankruptcy Code so that

dismiss.

he could proceed with the Ninth Circuit appeal (D.I. 304).

On June 8, 2006, before responding to Mr. Grimes' Lift Stay Motion, the Debtors filed the Settlement Motion, in which they attempted (for the second time) to "settle" the Ninth Circuit appeal by amending the Derivative Settlement. *See* D.I. 402 at ¶ 24 (...it is important to remember that the Debtors are seeking this Court's approval of a Stipulation that resolves the Circuit Court Appeal, which relates to a matter already approved by the California District Court..."). *See also* D.I. 402 at ¶ 26 (suggesting that approval of the Settlement Motion would avoid the "burdens, uncertainties, delay and expense" associated with the Ninth Circuit appeal); Debtors' Objection to Lift Stay Motion (D.I. 456) at ¶ 2 ("First, the [Lift Stay] Motion should be denied because the Debtors have recently entered into a stipulation . . . resolving the Ninth Circuit Appeal"), and at ¶ 3 ("However, the Debtors have already resolved the Circuit Court Appeal, with a result that yields a return of $950,000 to these estates").[10]

Pursuant to the amendment, Debtors and Plaintiffs' Counsel agreed that the latter would repay to Debtors $950,000 of the $1.75 million in fees they had received under the First Settlement Order (D.I. 402 at ¶ 15 (b)). These fees were to be repaid within 10

---

[10]Later statements made by Debtors' counsel confirm that the Settlement Motion was an attempt to settle the Ninth Circuit appeal. *See* 6/30/05 Tr. (D.I. 489) at 20 (the settlement "resolves the two open items that he has appealed"); at 40 ("This is a settlement designed to address exactly that issue, to exact – to moot the very issues that are on appeal..."); at 41 ("we would have the right to withdraw, settle, dismiss, whatever we want to do with the appeal"). Moreover, Debtors have since advised the Ninth Circuit that they believe the Amended Settlement Agreement mooted the appeal (9/20/06 letter from Rebecca Booth to 9th Circuit attached as Ex. 4). At the second hearing on the Settlement Motion, apparently concerned about Mr. Grimes' status as the appellant in the Ninth Circuit, Debtors changed their position, now claiming that they were not settling the appeal, only amending the underlying settlement contract (D.I. 782 at 32).

business days of the entry of the Confirmation Order by the Bankruptcy Court, subject to Debtors' obligation to refund those fees to Plaintiffs' Counsel with interest in the event of a reversal or modification of the Confirmation Order (D.I. 402 at ¶ 15(c)). The amendment further provided that Debtors would file a motion to dismiss the Ninth Circuit appeal (D.I. 402 at ¶ 15(d)). Thus, if the Bankruptcy Court approved the amendment to the Derivative Settlement, Plaintiffs' Counsel would retain a fee of $800,000 for their work in the State and Federal Derivative Actions, still without any court having decided, under established fee standards, that this fee was reasonable for their work in those actions. In others words, approval of this second settlement effort would enable Plaintiffs' Counsel to get away with the very practice that is the subject of the Ninth Circuit appeal.

Mr. Grimes objected to the Settlement Motion on several grounds (D.I. 453 and 548). As he explained to the Bankruptcy Court, the Derivative Settlement existed only by virtue of the California District Court's First Settlement Order, which was on appeal to the Ninth Circuit (D.I. 453 at ¶ 20; D.I. 548 at 13). By asking the Bankruptcy Court to approve an amendment to the Derivative Settlement, Debtors were in essence asking the Bankruptcy Court to vacate or reverse the First Settlement Order, something the Bankruptcy Court did not have jurisdiction to do--only the Ninth Circuit (or, in the proper circumstances, the United States Supreme Court) can do (*Id.*). Mr. Grimes also explained that Debtors and Plaintiffs' Counsel could not settle the Ninth Circuit appeal without the participation of Mr. Grimes, the only appellant in the Ninth Circuit (D.I. 453 at ¶ 21; D.I. 548 at 4-9). Finally, Mr. Grimes argued that Debtors had not made a showing that the proposed "settlement" was reasonable under Bankruptcy Rule 9019 (D.I. 453 at ¶ 22-41).

The Bankruptcy Court held a hearing on June 30, 2006 (D.I. 489).   At that

time, the Bankruptcy Court was "extremely troubled" by the Settlement Motion (D.I. 489 at

63-64).  The Bankruptcy Court appeared to agree that it likely did not have jurisdiction to

approve the Amended Settlement Agreement, stating:

> I have serious reservations on whether I have jurisdiction.
> And I think the key issue here is the Rule 23.1 derivative
> nature of the underlying lawsuit in California and the Court-
> approved settlement in California.  And the fact that the judge
> who even approved that settlement has been divested of
> jurisdiction over that settlement by the appeal.
>
> And if that judge doesn't have jurisdiction, I'm really
> constrained to understand how I have jurisdiction.
>
> The issue of the wild card there, of course, is the overreaching
> powers granted by Congress to Bankruptcy Court.  and the
> broad – extremely broad 541 property of the estate provisions.

(D.I.  489 at 64-65).[11] .

The Bankruptcy Court was similarly concerned about approving what was

essentially a settlement of the Ninth Circuit appeal without the participation of the appellant:

> I'm very troubled, though on three issues: One, . . . whether
> or not this is – even is a settlement.  The fact that Mr. Grimes
> is not a party to this settlement, but is a party to the pending
> appeal in the 9th Circuit, and is clearly appropriately a party
> in the pending appeal in the 9th Circuit, and the . . . if not
> direct, the clearly contemplated and indirect effect of the
> settlement is to moot the appeal, and he's not a party to the
> settlement that's mooting his action. . . I'm very concerned
> about that.

D.I.  489 at 64.  *See also* D.I.  489 at 43 ("The [California District] Court below said, all

---

[11] *See also* D.I. 489 at 40 ("And why – and why am I going to do something that the
9th Circuit who has – clearly has jurisdiction, why should I step in and try to do what you
already were unsuccessful in achieving with that Court that has the appeal?").

right, Mr. Grimes can do the appeal. Obviously the debtor's not going to do it. Now he's

a party to it. You can't pull the rug out from under him"), at 41 (recognizing that debtors had

no ability to simply dismiss the appeal because debtors are "not the appellant").

The Bankruptcy Court thus requested supplemental briefing on these two

issues. *See* D.I. 489 at 65 ("whether there's a settlement in place that Mr. Grimes is not a

party; whether I have jurisdiction, and I would urge the parties to focus on 23.1 and 541...").

It also requested that the parties brief whether, even if the Bankruptcy Court had jurisdiction,

it should defer to the Ninth Circuit under principles of comity. *See* D.I. 489 at 65

(questioning whether "even if I do have jurisdiction, it's appropriate for me to, in effect, step

on the toes of the 9th Circuit Court of Appeals and settle their proceeding out from under

them").[12]

The Bankruptcy Court held a second hearing on July 27, 2006 (D.I. 782) and

by its Opinion and Final Order, both dated August 23, 2006 (D.I. 711 and 712), granted the

Settlement Motion, stating:

> This Court finds that is has jurisdiction to consider the
> Amended Settlement under Bankruptcy Rule 9019; Mr.
> Grimes is not a necessary party to the Amended Settlement;
> and the Court will not abstain from considering the 9019
> Motion because principles of comity are not invoked and the
> standard for permissive abstention is not satisfied. The Court
> further finds that the Debtors have satisfied the standard under
> Bankruptcy Rule 9019 and the Amended Settlement will be
> approved.

(Opinion at 6-7).

---

[12]Mr. Grimes, Debtors and the Official Committee Creditors all filed additional briefs
on July 24, 2006 (D.I. 548, 550, 551 and 554).

On August 25, 2006, Mr. Grimes filed a Notice of Appeal under 28 U.S.C. § 158(a) from the Opinion and Final Order (D.I. 728). He contends that the Bankruptcy Court erred as a matter of law in determining that it had jurisdiction to amend the Derivative Settlement and that Debtors and Plaintiffs' Counsel could enter into the amendment without the consent of Mr. Grimes, the only appellant in the Ninth Circuit. Mr. Grimes further contends that the Bankruptcy Court abused its discretion in finding that the agreement to amend the Derivative Settlement satisfied the standards under Bankruptcy Rule 9019.

## ARGUMENT

### I.   THE BANKRUPTCY COURT LACKED JURISDICTION TO APPROVE AN AMENDMENT TO THE DERIVATIVE SETTLEMENT

There is no dispute that a derivative action cannot be settled without court approval pursuant to Fed. R. Civ. P. Rule 23.1. The court's role in this settlement process "ensures that the derivative suit does not become a vehicle solely to benefit plaintiffs and their lawyers." *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 110-11 (D.R.I. 1996). *See also Staton v. Boeing Co.*, 327 F.3d 938, 952-53 (9th Cir. 2003) (court must carefully consider proposed settlement of a class action, paying "special attention when the record suggests that the settlement is driven by fees; that is when counsel receive a disproportionate distribution of the settlement"); 1 R. Franklin Balotti & Jesse A. Finkelstein, *Delaware Law of Corporations and Business Organizations* § 13.18[A] at 13-89 (3d ed. 2005) ("Balotti & Finkelstein") (the purpose of Rule 23.1 is to have the Court meaningfully supervise derivative settlements to avoid abuses, such as paying a plaintiff and/or his counsel to discontinue litigation).

Thus, Plaintiffs' Counsel and Riverstone were required to seek court approval for the Derivative Settlement to take effect. They did so and obtained the First Settlement Order from the California District Court which approved their unitary settlement. Of course, the California District Court's expressed concerns that, because of the unitary nature of the Derivative Settlement it never had the opportunity to analyze Plaintiffs' Counsel's request for fees *(See* Ex. D to Miller Dec. 06/01/05 Tr. at 38), led directly to the pending appeal in the Ninth Circuit.

Thus, when Debtors filed the Settlement Motion in the Bankruptcy Court, they were not merely asking that Court to "settle" a dispute with Plaintiffs' Counsel over the appropriate amount of their attorneys' fee. Instead, they sought to modify the Derivative Settlement, which had been approved by the California District Court's First Settlement Order, which in turn was (and still is) pending on appeal in the Ninth Circuit.[13] As Mr. Grimes explained to the Bankruptcy Court, because the Derivative Settlement was not effective until approved by the California District Court under Fed. R. Civ. P. 23.1, it could not be modified or undone once that approval was obtained without vacating the First Settlement Order. Thus, Debtors' Settlement Motion implicitly asked the Bankruptcy Court to vacate or reverse the California District Court's First Settlement Order and allow the derivative actions to be settled on different terms than those ordered by Judge Hamilton.

As Mr. Grimes also explained to the Bankruptcy Court, that court had no power to vacate or overturn Judge Hamilton's First Settlement Order. Rather, under our federal system, only the appropriate appellate court (here, the Ninth Circuit or, under some circumstances, the United States Supreme Court) has the power to reverse or vacate an order of a district court. *See* 28 U.S.C. § 1294 (requiring that district court orders be appealed to the court of appeals for the circuit embracing that district). This requirement is well illustrated in *Teachers Insurance and Annuity Ass'n of America v. Butler,* 803 F.2d 61 (2d

---

[13]The Bankruptcy Court acknowledged as much, stating "the Debtors previously settled the derivative actions in the [California] District Court and are merely seeking an amendment of the Original Settlement" (Opinion at 14) (although "merely" does not begin to describe what Debtors were trying to accomplish). Moreover, as explained above at 16 and Argument II, *infra,* Debtors acknowledged they were attempting to settling the Ninth Circuit appeal on several occasions and agreed to move to dismiss it upon approval of the amendment to the Derivative Settlement.

Cir. 1986), where defendants were sanctioned for attempting to use the bankruptcy court to thwart the effect of an adverse judgment entered in another jurisdiction.

In *Teachers Insurance*, plaintiff prevailed on a breach of contract claim against a partnership and its general partners following trial in the United States District Court for the Southern District of New York. *Teachers Insurance*, 803 F.2d 61 (2d Cir. 1986). Immediately following entry of the judgment, the defendant partnership filed a Chapter 11 proceeding in the Bankruptcy Court for the Eastern District of California, and obtained a temporary restraining order from that court preventing plaintiff from enforcing its judgment against the partnership and its general partners (the latter of which had not filed bankruptcy petitions). A bankruptcy trustee nominated by the general partners then filed a petition to remove the breach of contract case from the New York District Court to the California Bankruptcy Court.

Thereafter, the general partners filed notices of appeal from the judgment of the New York District Court with the Bankruptcy Appellate Panel of the Ninth Circuit, the Ninth Circuit Court of Appeals, and the Second Circuit Court of Appeals. Plaintiff responded to these maneuvers by obtaining an order from the New York District Court (1) enjoining defendants from appealing its decision or collaterally attacking the judgment entered as a result of that decision in any court other than the Second Circuit, and (2) ordering the defendants to pay plaintiff costs and attorneys' fees for their "outrageous conduct." *Teachers Insurance*, 803 F.2d at 63.

Defendants asked the Second Circuit to stay the appeals they filed in that court (they had also appealed the District Court's subsequent injunction and sanctions order).

Defendants argued that the New York District Court wrongly concluded that the automatic stay imposed by Section 362 of the Bankruptcy Code and the temporary restraining order obtained in the California Bankruptcy Court had no application to their appeals in the Second Circuit.

The Second Circuit granted defendants' motion to stay the appeal as to the general partnership based on the automatic stay imposed by Section 362 "on the condition that the judgment of the district court be given full faith and credit by the bankruptcy court in California, and without prejudice to the plaintiff's right to petition that court to have the stay of the appeal lifted." *Teachers Insurance*, 803 F.2d at 63. The Court explained that to allow the bankruptcy court to revisit issues already decided by the New York District Court "would subvert the intent of 28 U.S.C. § 1294(1) (1982) which provides that appeals from district court decisions are to be heard by the court of appeals for the circuit that embraces the district." 803 F.2d at 66. The Court then denied the motion to stay the appeal as to the non-bankrupt general partners and affirmed the injunction issued by the New York District Court "prohibiting all of the defendants-appellants from pursing or initiating any appeals of or collateral attacks upon its judgment in any court other than the Second Circuit" (it also affirmed the District Court's order imposing sanctions). *Id.* at 66-67.

*See also Heiser v. Woodruff,* 327 U.S. 726 (1946) (issues litigated and decided prior to bankruptcy are *res judicata* and cannot be further litigated in the bankruptcy proceeding); *In the Matter of Roloff,* 598 F.2d 783 (3d Cir. 1979) (where state foreclosure proceedings resulted in judgment prior to defendants' bankruptcy filing, bankruptcy court was without jurisdiction to relitigate the merits or the amount of the judgment, despite

bankruptcy court's jurisdiction over property of the estate); *Kapp v. Naturelle, Inc.,* 611 F.2d 703 (8th Cir. 1979) (where debtor permitted pre-bankruptcy default judgments to be entered holding him liable for debts of his wholly owned corporation, such judgments were *res judicata* and precluded bankruptcy court from reconsidering question of debtor's liability); *In re Phoenix Petroleum Co.,* 278 B.R. 385, 397 (Bankr.E.D.Pa. 2001), citing *Teachers Insurance,* 803 F.2d at 66 ("I also recognize that a bankruptcy court has no authority to review any decisions validly entered by a District Court or a Court of Appeals"); *In re Highway Truck Drivers and Helpers,* 100 B.R. 209 (Bankr.E.D.Pa. 1989) (until overturned by the Third Circuit, judgment of district court must be viewed as binding on bankruptcy court); *In re Fogerty,* 204 B.R. 956, 960 (Bankr. N.D. Ill. 1996) (bankruptcy court does not have jurisdiction to retry judgment rendered by court of competent jurisdiction; party seeking relief from judgment must follow procedural appeals process that governs the decisions issued by the rendering court); 15A Charles Alan Wright, Arthur R. Miller and Edward A. Cooper, *Federal Practice and Procedure*, § 3901 at 7 (2d ed. 1992) ("Appeal is taken to the court of appeals for the circuit embracing the district. At times this clear rule has led a court of appeals to refuse to act in a way that might have a collateral impact on an order entered by a district court in another circuit").[14]

       There is nothing of which we are aware (and nothing to which Debtors or the Bankruptcy Court cited) that changes those basic principles, or which permits a bankruptcy court to vacate, overturn or modify a final order of a federal district court. Although written

---

[14]The appellate court can, under certain circumstances, remand the case to the district court to let it decide whether to vacate its own order. *Cammermeyer v. Perry,* 97 F.3d 1235, 1239 (9th Cir. 1996).

under somewhat different circumstances, the observations of Judge Easterbrook (sitting as a district court judge) in *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 974 (N.D. Ill. 1992) are worth repeating: "For one federal court to issue an injunction forbidding litigation in another is extraordinary, given the principles of comity among coordinate tribunals...For a bankruptcy judge to issue an injunction with the effect of preempting resolution of a pending motion in a district court is unheard of. Well, perhaps not *un*-heard of. I found one case in which a bankruptcy court did so, and the district judge brushed the order aside in derision, treating the order as so patently unauthorized that no further explanation was warranted."

The Bankruptcy Court did not address any of these authorities (all cited by Mr. Grimes below) in finding that it had jurisdiction to modify the Derivative Settlement approved by the California District Court and on appeal to the Ninth Circuit (Opinion at 7-11).[15] Indeed, it erroneously stated that Mr. Grimes cited no authority in support of his argument (a "fact" that it found "significant" in holding as it did) (Opinion at 10-11).[16] As

---

[15]The Bankruptcy Court did eventually address *Teachers Insurance*, but did so in a separate section of its opinion addressing the parties' ability to obtain a settlement--related vacatur of a district court order (Opinion at 13). In that section, the Bankruptcy Court acknowledged that *Teachers Insurance* stands for the proposition "that a bankruptcy court is precluded from relitigating judgments rendered by courts of competent jurisdiction...." (Opinion at 13). In attempting to explain why that proposition did not apply here, the Bankruptcy Court stated that "Debtors were not seeking to relitigate the derivative actions in this Court. This Court is merely reviewing the validity of the Amended Settlement in the context of the 9019 motion" (Opinion at 13). What the Bankruptcy Court glossed over is that Debtors *were* actually asking it to relitigate the previously approved Derivative Settlement and order that it be settled on *different terms* than those in the First Settlement Order.

[16]The Bankruptcy Court, on the other hand, did not find it significant that Debtors failed to cite *any* authority in which a bankruptcy court modified a derivative settlement after

a result, the Bankruptcy Court never explained how it had the power to modify a final order of the California District Court.[17]

Instead, it ignored the unusual circumstances present here, concluding that it had jurisdiction to approve the amendment to the Derivative Settlement solely based on its jurisdiction over the property of the Debtor. The Bankruptcy Court first explained that it had jurisdiction over property of the estate pursuant to 28 U.S.C. §§ 1334 and 157 (Opinion at 7-8).[18] It then explained that, under 11 U.S.C. § 541, property of the estate includes "all legal and equitable interests of the debtor in property" (Opinion at 7-8)  In Riverstone's case, "property of the estate" includes the right to bring and settle derivative claims on Riverstone's behalf, whether the derivative claims are brought prior to or after the filing of the petition (Opinion at 9-10). Mr. Grimes does not dispute any of these basic propositions (Opinion at 10).

However, the Bankruptcy Court then departed from these basic propositions by determining that, because the right to settle the derivative claims belongs to the Debtors' estate (thus giving the Bankruptcy Court jurisdiction over those claims), it must also have

---

it had been approved by final order of a district court.

[17]Thus, it never resolved its earlier concerns on this issue. *See supra* at 18.

[18]As explained by the Bankruptcy Court, pursuant to 28 U.S.C. § 1334(a), (b), and (e)(1), the District Court has jurisdiction over all cases under title, 11; original, but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11; and exclusive jurisdiction of all property of the debtor as of commencement of the case and of property of the estate (Opinion at 7). Pursuant to 28 U.S.C. § 157(a), the District Court may provide that all cases under title 11 and proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the Bankruptcy Court, and this Court has so provided (Opinion at 7, n. 5).

jurisdiction over derivative claims that *already have been settled and dismissed by order of another court* (Opinion at 10-11).  The Bankruptcy Court stated (without citation to authority), that its "jurisdiction over the claims for injury to the debtor is based upon the claims themselves and not the procedural posture of the derivative actions asserting those claims" (Opinion at 11).

Despite the Bankruptcy Court's dismissal of "the procedural posture of the derivative actions," that posture is critical to whether that court had subject matter jurisdiction here.  Debtors' Settlement Motion did *not* seek to settle the underlying derivative claims for the first time; rather, it sought to *amend* the Derivative Settlement that had been approved by final order of the California District Court, an approval that was then (and is now) on appeal to the Ninth Circuit (D.I. 402 at ¶ 24).  Of course, Debtors' requested amendment necessarily involved changing Judge Hamilton's First Settlement Order with respect to the appropriate amount of fees that plaintiffs' counsel should receive.  And that requested change to an order of a federal district court could *only* be accomplished by a court with jurisdiction to vacate, modify or reverse that order.  Nothing in 28 U.S.C. §§ 1334 or 157 or 11 U.S.C. § 541 (or anywhere else) gives the Bankruptcy Court that power.

Mr. Grimes also disagrees with the Bankruptcy Court's finding that the Settlement Motion involved property of the estate.  As Mr. Grimes explained to the Bankruptcy Court (and again here at 16 and 31-32), it was actually the Ninth Circuit appeal that the Debtors were attempting to resolve through the Settlement Motion.  Given the positions Mr. Grimes is taking in that appeal, it is obvious that he represents neither Riverstone nor the property of its estate.

"Property of the estate" is defined in Section 541 of the Bankruptcy Code, which provides, in part:

>    (a)    The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
>        (1)    ... all legal or equitable interests of the debtor in property as of the commencement of the case....

11 U.S.C. § 541. "Property of the estate" includes "all kinds of property, including intangibles and causes of action." *Integrated Solutions, Inc. v. Service Support Specialities, Inc.*, 124 F.3d 487, 490 (3d Cir. 1997). The question of whether an interest is "property of the estate" is one of federal law. *In re Labrum & Doak, LLP*, 227 B.R. 391, 410 (Bankr.E.D.Pa. 1998), citing *Nobelman v. American Savings Bank*, 508 U.S. 324, 329 (1993). Courts, however, will look to state law to determine whether the debtor has any legal or equitable interest in the property as of the date of commencement of the case. *Labrum & Doak* 227 B. R. at 410. Thus, the Bankruptcy Court was required to look to state law to determine whether the Debtors had an interest in the property right of Mr. Grimes' appeal.

Under state law, a derivative action allows stockholders to assert a claim belonging to the corporation when those in control of the corporation refuse to do so. *Harff v. Kerkorian*, 324 A.2d 215, 218 (Del. Ch. 1974). The derivative action is, in essence, two claims for relief in one procedural vehicle. 1 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 9-1 (7th ed. 2006), citing *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984); *Cantor v. Sachs*, 162 A. 73 (Del.

Ch. 1932). The first is the stockholder's claim to compel the corporation to institute a claim against the alleged wrongdoer. Wolfe & Pittenger, at § 9-1. The second is a claim on the corporation's behalf to invalidate the underlying corporation transaction. *Id.*  The corporation, therefore, is always the real party in interest in a derivative action. *In re M&F Worldwide Corp. Shareholders Litig.*, 799 A.2d 1164 at n.31 (Del. Ch. 2002).

When a corporation, such as Riverstone, files for protection under the Bankruptcy Code, its causes of action become property of the estate. *See* 11 U.S.C. § 541; *see also, Harrigan v. Bergdoll*, 270 U.S. 560, 564 (1926) (bankruptcy law does not modify the corporation's choses in action, it merely passes the right created by state law to the trustee to be enforced by him for the benefit of all creditors). Thus, in a derivative action where the real party in interest is the corporation, the right to assert that claim passes to the debtor upon the filing of the bankruptcy petition. The same is *not* true, however, with respect to an appeal seeking to overturn a court-approved settlement of a derivative action because state law does *not* give the corporation the right to assert a claim objecting to what it just agreed to. Thus, the Bankruptcy Court also erred in finding that the amendment to the Derivative Settlement involved "property of the estate."

## II.    THE BANKRUPTCY COURT ERRED IN FINDING THAT THE DERIVATIVE SETTLEMENT ON APPEAL TO THE NINTH CIRCUIT COULD BE AMENDED WITHOUT THE CONSENT OF THE APPELLANT IN THE NINTH CIRCUIT

There is no dispute that Mr. Grimes is a party to the Ninth Circuit appeal. The California District Court ensured that he would be able to appeal its order approving the Derivative Settlement when it granted his motion to intervene. *See* Ex.  D to Miller Dec.

06/01/05 Tr. at 37-40 ("However, given my overall . . . suspicions about this matter, there are two conditions to the settlement; One, is Mr. Grimes' request to intervene is granted, Mr. Grimes will be given an opportunity to appeal the Court's approval of the settlement.  And I invite him to do so"); Ex.  D to Miller Dec. at 19 of the Order Granting Motion for Final Approval of Derivative Settlement (allowing Mr. Grimes to intervene "primarily to ensure that Mr. Grimes is not prevented from appealing the approval of the settlement to the Ninth Circuit").  Of course, Mr. Grimes accepted Judge Hamilton's invitation to appeal the First Settlement Order, and is the only appellant in the Ninth Circuit.

Debtors' amendment to the Derivative Settlement sought to settle that Ninth Circuit appeal.  When Debtors first sought approval of the amendment, they acknowledged what they were trying to do, stating "...*it is important to remember that the Debtors are seeking this Court's approval of a Stipulation that resolves the Circuit Court Appeal, which relates to a matter already approved by the California District Court...*" (D.I.  402 at ¶ 24) (emphasis added).  In addition, in attempting to persuade the Bankruptcy Court that the Settlement Motion should be approved, Debtors argued that it would avoid the "burdens, uncertainties, delay and expense associated with the Circuit Court Appeal..." (D.I. 402 at ¶ 26).  Finally, in opposing Mr. Grimes' Lift Stay Motion (filed for the purpose of allowing the Ninth Circuit appeal to proceed), Debtors contended that the amendment to the Derivative Settlement resolved the Ninth Circuit appeal (D.I. 456 at ¶¶ 2 and 3).[19]  So certain were Debtors that they were settling the appeal by attempting to amend the Derivative

---

[19]Similarly, when Riverstone and Plaintiffs' Counsel previously tried in the Ninth Circuit to amend the Derivative Settlement, they acknowledged it was an attempt to settle the appeal (Ex. F to Miller Dec. at 2, 8-10).

Settlement that they agreed, as a term of the amendment, to move to dismiss that appeal if the Bankruptcy Court allowed the amendment (D.I. 402 at ¶ 15(d)).

As explained to the Bankruptcy Court, we are unaware of any legal theory that would permit the two *appellees*-- Riverstone and the derivative plaintiff – to "settle" the appeal without the *appellant's* consent–consent that Mr. Grimes did not give.  When Riverstone and Plaintiffs' Counsel tried this same tactic with their first attempt to settle the appeal in the Ninth Circuit, they were unable to provide any authority supporting their right to do so.  Nor did Debtors or the Bankruptcy Court here cite anything that would permit less than all the parties to an appeal to "settle" that appeal.

The Bankruptcy Court tried to avoid this dilemma by finding that Debtors were "*not* seeking to settle or to dismiss the pending appeal.  Rather, they are seeking this Court's authority under Bankruptcy Rule 9019 to enter the Amended Settlement" (Opinion at 12).  This analysis, however, avoids the critical question, for it ignores what the *effect* of approving the Amended Settlement would be.  As set forth above, Debtors repeatedly admitted they were trying to settle the appeal, and thus promised to move to dismiss the appeal if the Settlement Motion succeeded.  Indeed, were it not for that appeal, there would have been no need for the Settlement Motion in the first place, because there would have been no reason for any amendment to the Derivative Settlement.[20]

---

[20]The Bankruptcy Court then explained that Mr. Grimes' consent to the settlement was unnecessary because the matter before it was "a proposed settlement of claims for injury to the debtor from actionable wrongs committed by the debtor's officers and directors, which were the subject of the derivative actions," and that even if Mr. Grimes had been the plaintiff in the derivative actions, those claims could be settled over his objection (Opinion at 12). The Court went on to find that Mr. Grimes should be in no greater position to veto the amendment to the Derivative Settlement than he would have been to veto the original

Moreover, as Mr. Grimes explained to the Bankruptcy Court, the underlying settlement is not one that Riverstone and Plaintiff's Counsel could undo just by agreement between themselves even if Mr. Grimes had consented. Once Judge Hamilton issued the First Settlement Order approving the Derivative Settlement pursuant to Fed. R. Civ. P. 23.1, any modification of that settlement would require her (or the Ninth Circuit) to vacate her prior order.[21]

In the Ninth Circuit, appellees at one point appeared to realize this requirement (*see* Ex. F to Miller Dec. at 2 ("[t]he judgment below should be vacated")), but never addressed the circumstances under which a court of appeals may vacate a district court's order (or under which a district court may vacate its own order) as the result of a settlement of the underlying case. Those standards (which typically arise in cases where the parties attempt to vacate a final judgment after they have successfully mooted an appeal from the judgment by settling the underlying dispute) are quite clear: they require "exceptional

---

settlement. With respect, this analysis is just wrong, because Mr. Grimes *is* in a greater position to veto the amendment to the Derivative Settlement. He is the *only* appellant in the Ninth Circuit, and there is nothing we are aware of that would permit the appeal to be settled without his consent. This analysis also ignores that the derivative claims were settled by final order of the California District Court *before* the bankruptcy proceeding was filed. As explained above, it is *this* procedural posture which prevents the Bankruptcy Court from having the power to amend the Derivative Settlement.

[21]Once Mr. Grimes perfected his appeal, the trial court was divested of jurisdiction even to consider such a motion to vacate. *See In re Merck & Co., Inc. Sec. Litig.,* 432 F.3d 261, 267 (3d Cir. 2005) (generally district courts are divested of jurisdiction and lose the power to act once an appeal is filed). One of the ironies of Debtors' settlement motion is that they sought to have the Bankruptcy Court vacate an order under circumstances in which the court issuing the order itself had no power to do so. Although the Bankruptcy Court appeared to appreciate this dilemma at the initial hearing on the Settlement Motion (D.I. 489 at 64-65), it ignored its earlier appreciation when issuing its Opinion and Order granting that motion.

circumstances." *American Games, Inc. v. Trade Products, Inc.*, 142 F.3d 1164, 1167 (9th Cir. 1998), *citing U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994). Not surprisingly, the mere existence of an agreement to settle and seek vacatur does not constitute the necessary exceptional circumstances (even where all the parties agree). *Bancorp*, 513 U.S. at 22-29; *DHX, Inc. v. Allianz AGF MAT, LTD.*, 425 F.3d 1169, 1176 (9th Cir. 2005).

The need for these strict standards on post-judgment vacatur were explained by the Supreme Court in *Bancorp*, 513 U.S. at 27-28: were the rule to be otherwise, litigants would be discouraged from settling early in the litigation process (when the majority of the resources of the parties and the courts could be saved). If litigants were allowed to wash away a final judgment by a settlement-related vacatur, they might find it worthwhile to roll the dice knowing that they could later erase an unfavorable outcome. *Bancorp*, 513 U.S. at 27-28. This concern applies here explicitly, where Plaintiff's Counsel and Riverstone were warned repeatedly by Judge Hamilton about their use of a unitary settlement. Those warnings were ignored, as they chose to roll the dice rather than amend the settlement in response to Mr. Grimes' objection. When the potential consequences of their actions began to look more dismal, Riverstone and Plaintiff's Counsel tried to pretend that all that happened before the California District Court never occurred. The Ninth Circuit did not permit them to do so on their first attempt to modify the Derivative Settlement, and the Bankruptcy Court should not have permitted them to do so on the second attempt.

The Bankruptcy Court found that the concerns expressed in *Bancorp* were not implicated here. It reasoned that the issue in *Bancorp* was whether an appellate court should

vacate a civil judgment when a case is settled after an appeal is filed and that the Court's

concern there was with discouraging litigants from rolling the dice rather than settling in the

district court and then trying to wash away an unfavorable result by settlement related vacatur

on appeal. In finding that the concerns of *Bancorp* were not implicated here, the Bankruptcy

Court apparently found that Debtors were not guilty of rolling the dice and then trying to

wash away an unfavorable result because they had "previously settled the derivative actions

in the [California] District Court and are merely seeking an amendment of the Original

Settlement" (Opinion at 13-14).

While the Debtors did settle the underlying derivative claims in the California

District Court, they did not settle Mr. Grimes' objection to the unitary settlement; rather, they

and Plaintiffs' Counsel chose to roll the dice on that issue. Only after Mr. Grimes appealed

did they try to resolve his concerns. Thus, the concerns of *Bancorp* are directly implicated

here.[22]

## III.    THE BANKRUPTCY COURT ERRED IN FINDING THAT THE STANDARDS OF BANKRUPTCY RULE 9019 WERE SATISFIED

The determination of whether to approve a compromise under Rule 9019 is

within the discretion of the Bankruptcy Court. *In re Key3Media Group, Inc.*, 336 B.R. 87,

92 (Bankr.D.Del 2005). When exercising its discretion, the Bankruptcy Court must

determine whether the proposed compromise is "fair, reasonable, and in the best interest of

---

[22]In addressing Mr. Grimes' argument that the parties themselves could not settle the appeal without first vacating the First Settlement Order, the Bankruptcy Court also stated that Mr. Grimes relied on *Teachers Insurance*, 803 F.2d 61, 66, for the proposition "that a bankruptcy court is precluded from relitigating judgments rendered by courts of competent jurisdiction...." (Opinion at 13). As explained above, Mr. Grimes did rely on that opinion, but only in connection with the question of subject matter jurisdiction (*supra*, 22-24 and n. 15).

the estate." 336 B.R. at 92.  The Court has a "duty to make an informed, independent

judgment that the compromise is fair and equitable." 336 B.R. at 92.  To be informed, the

Court must "'be appraised of all relevant information that will enable it to determine what

course of action will be in the best interest of the estate.'" 336 B.R. at 92, *quoting In re*

*Martin*, 91 F.3d 389, 393 (3d Cir. 1996).  The decision whether to approve the compromise

requires the Bankruptcy Court to "'assess and balance the value of the claim that is being

compromised against the value to the estate of the acceptance of the compromise proposal.'"

336 B.R. at 93, *quoting Martin*, 91 F.3d at 393.  Debtors bear the burden of providing the

Court with sufficient information to make an informed decision.  336 B.R. at 93.

In the Third Circuit, bankruptcy courts consider the following four factors

before approving a settlement under Rule 9019:

1.   the probability of success in litigation;

2.   the likely difficulties in collection;

3.   the complexities of the litigation involved, and
the expense, inconvenience and delay
necessarily attending it; and

4.   the paramount interest of the creditors.

*Martin*, 91 F.3d at 393 (referred to by the Bankruptcy Court as the "*Martin* factors"). "The

court must also consider 'all other factors relevant to a full and fair assessment of the wisdom

of the proposed compromise.'" *In re Marvel Enter. Group, Inc.*, 222 B.R. 243, 249 (D. Del.

1998). *See also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993) ("A

bankruptcy judge may not simply accept a trustee's word that the settlement is reasonable,

nor may [the judge] merely 'rubber stamp' a trustee's proposal.").

Before considering the *Martin* factors, the Bankruptcy Court was inclined to find that Debtors nevertheless had met the standard under Rule 9019. It reasoned that the Settlement Motion involved an amendment to the Derivative Settlement that had been approved by the California District Court under the more stringent standard applied to the settlement of derivative actions under Fed. R. Civ. P. 23 (Opinion at 20). The Court then explained that because the amendment to the Derivative Settlement resulted in an additional benefit to Riverstone, which recouped $950,000 of the fees previously paid to Plaintiffs' Counsel, this weighed in favor of the Settlement Motion (Opinion at 20).

In relying so heavily on the California District Court's prior approval of the Derivative Settlement, the Bankruptcy Court ignored the serious reservations expressed by that court over the Derivative Settlement and its desire to have the Ninth Circuit rule on the propriety of unitary settlements. In particular, Judge Hamilton questioned the settlement's provision that Plaintiffs' Counsel be paid attorneys' fees without undergoing the scrutiny of a traditional fee application review, suggesting that Plaintiffs' Counsel could have received no fee (or only a nominal fee) if required to undergo that scrutiny (*supra* at 11-12). Under these circumstances, the Bankruptcy Court abused its discretion to the extent it granted the Settlement Motion based on Judge Hamilton's prior approval of the Derivative Settlement.

The Bankruptcy Court further abused its discretion in finding that the *Martin* factors favored granting the Settlement Motion (Opinion at 20).

A.    **The first *Martin* factor - probability of success in litigation**

As the Bankruptcy Court recognized, the first *Martin* factor here refers to the probability that the Derivative Settlement will survive the appeal before the Ninth Circuit

(Opinion at 21). Mr. Grimes explained in detail to the Bankruptcy Court why there is a high probability that the Ninth Circuit will overturn the Derivative Settlement, and most or all of the attorneys' fees paid to Plaintiffs' Counsel returned to Riverstone (D.I. 453 at ¶ 25). The issues to be decided in that appeal are the propriety of unitary settlements in derivative actions, the standard of review applicable to a provision for the payment of attorneys' fees if unitary settlements are permitted in derivative actions, and the reasonableness of the amount of fees awarded to Plaintiffs' Counsel (*Id.*).

### 1.    The propriety of unitary settlements

Plaintiffs' counsel typically file an application for a court award of attorneys' fees and expenses after approval of a derivative settlement. *See Staton,* 327 F.3d at 969-70. Before fees are awarded in a case where no common fund is produced by the settlement (such as here), the derivative action must be shown to have been meritorious when it was filed and the settlement must have created a substantial benefit to the corporation. *Lewis v. Anderson,* 509 F. Supp. 232, 236 (C.D.Cal. 1981); *In re Oracle Sec. Litig.,* 852 F. Supp. 1437, 1445 (N.D.Cal. 1994), citing *Chrysler,* 223 A.2d at 386-87 (1966); (*see also* Ex. A to Miller Dec. at 45). If that showing is made, the court must then determine a reasonable fee to be paid, typically using counsel's lodestar as a starting point. *Strong v. BellSouth Telecomm.,* 137 F.3d 844, 852 (5th Cir. 1998); *Cooperstock v. Pennwalt Corp.,* 820 F. Supp. 921, 926 (E.D.Pa. 1993).

Because of the unitary nature of the Derivative Settlement, Plaintiffs' Counsel never gave the California District Court the opportunity to review the appropriateness of the fees paid to them. As the Bankruptcy Court was aware, the California District Court was

highly suspicious about the propriety of this approach and approved the Derivative

Settlement only because there was no authority clearing prohibiting its use. At the same

time, Judge Hamilton explicitly encouraged Mr. Grimes to appeal that approval (Ex. D to

Miller Dec. 06/01/05 Tr. at 39).

As Mr. Grimes advised the Bankruptcy Court, while the issues in the appeal

appear to be one of first impression in the Ninth Circuit, because unitary settlements in class

actions are not permitted and "clear sailing agreements"[23] in both derivative and class actions

cannot prevent a separate review by the trial court of the agreed--upon fee, there is a high

likelihood that the Ninth Circuit will find that unitary settlements in derivative actions should

be prohibited.

## 2.    Whether Plaintiffs' Counsel deserve a fee

Assuming the unitary Derivative Settlement will be overturned, Mr. Grimes

also explained to the Bankruptcy Court that if Plaintiffs' Counsel properly filed a fee

application for the California District Court to review, it is highly likely they would either

not satisfy the standard for an award of any fee, or be awarded a significantly smaller amount

than the $800,000 Plaintiffs' Counsel will keep as a result of the amendment to the

Derivative Settlement.

### a.    Plaintiffs' Counsel never made a showing that the Federal Derivative Action was meritorious

The first requirement for being awarded a fee, that the derivative action be

meritorious when filed, is considered "the most important criteria...because otherwise

---

[23]A "clear sailing agreement" is one where defendants agree to pay plaintiffs' counsel fees not to exceed a certain amount.

06034|BRF|10019773.WPD                              39

baseless litigation may be encouraged." *In re Fleet/Norstar,* 935 F.Supp. at 113. In determining whether an action was meritorious when filed, the court determines whether it would withstand a motion to dismiss. *In re Oracle Sec. Litig.,* 852 F. Supp. 1437, 1445; *In re Fleet/Norstar,* 935 F. Supp. at 113.

As Mr. Grimes explained in his objection to the Settlement Motion, because the State Derivative Action had been dismissed the Federal Derivative Action likely would have been dismissed were it not for the Derivative Settlement (D.I. 453 at ¶ 28). Not only was the amended complaint in the Federal Derivative Action "largely a verbatim recitation of allegations in the Fourth State Derivative Complaint," which had been dismissed by the State Court, Plaintiffs' Counsel essentially agreed that the amended complaint was likely to be dismissed (*Id.*). They acknowledged that because plaintiff "did not make a pre-litigation demand for action by Riverstone's Board as is typically required," and the similar State Derivative Action was dismissed for failure to have done so, there was a very real risk that the California District Court would have come to the same conclusion as the State Court and dismiss the Federal Derivative Action (*Id.*). Thus, there never has been a showing that the Federal Derivative Action was meritorious when it was filed.

        **b.**        **Plaintiffs' Counsel never made a showing that the State and Federal Derivative Actions caused a substantial benefit to Riverstone**

Plaintiffs' Counsel also never showed a causal connection between the existence of the State and Federal Derivative Actions and the alleged benefits of the Derivative Settlement (D.I. 453 at ¶ 29). At the January 19, 2005 preliminary hearing, Judge Hamilton warned Plaintiffs' Counsel that their record on this factor was lacking. *See* Ex. A

to Miller Dec. at 46 ("And it's not at all clear to me that the derivative action is the causative factor for the governance changes"); *Id.* at 47 ("I'm a little concerned that there isn't that nexus ... demonstrated between the derivative action and the substantial benefit to the corporation"). Plaintiffs' Counsel never addressed this concern in any supplemental pleadings in the California District Court.

**c.    There has been no showing that any fee award is reasonable**

Finally, the fee sought by Plaintiffs' Counsel must be *reasonable. See Staton,* 327 F.3d at 963 ("Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable'"). After warnings from the California District Court that Plaintiffs' Counsel had not provided the court with any information from which to make an assessment of the reasonableness of their fees, Plaintiffs' Counsel finally provided that court with their lodestar as an alleged "cross-check" on the purported "reasonableness of the agreed-to fee and expense award" (D.I. 453 at ¶ 32). However, the lodestar appeared to include time spent repeatedly amending the complaint in the State Derivative Action, only to have it dismissed for failing to state a cause of action (thus achieving no benefit for Riverstone), and much duplication of effort (D.I. 453 at ¶ 32). Thus, Plaintiffs' Counsel made none of the required showings in order to justify an award of attorneys fees.

Accordingly, Mr. Grimes argued that the first *Martin* factor weighed against approving the Settlement Motion because there is a high probability that he will be

successful in overturning the unitary Derivative Settlement on appeal and preventing Plaintiffs' Counsel from obtaining any fee, or a fee that is significantly less than the $800,000 that the Amended Settlement Agreement allows (D.I. 453 at ¶ 33).

The Bankruptcy Court ignored all of this, and gave only a cursory review of this factor. It found that, while it is "possible" that Mr. Grimes would be successful on appeal and thus the "entire $1.75 million in attorneys' fees and not just $950,000 would be returned to the Debtors' estates," if Mr. Grimes lost on appeal the entire $1.75 million would remain in Plaintiffs' Counsel's hands (Opinion at 21). The Court then concluded that the return of "approximately 54% of the attorneys fees previously approved by the [California] District Court fairly and accurately reflects the possibility that the Original Settlement will be overturned on appeal" (Opinion at 21). Because the Bankruptcy Court never explained how it came to that conclusion, it abused its discretion.

**B.    The second *Martin* factor - likely difficulties in collection**

As the Bankruptcy Court recognized, this factor refers to the difficulty that Debtors would face in collecting the $1.75 million in fees in the event the Derivative Settlement is overturned on appeal. The Bankruptcy Court agreed with Mr. Grimes that this factor weighed against approving the Settlement Motion as there would be little if any difficulty in retrieving the fees (Opinion at 21).

**C.    The third *Martin* factor - complexities of the litigation and the expense, inconvenience and delay necessarily attending it**

In this case, this factor refers to the "complexity of the appeal before the Ninth Circuit and the expense, inconvenience and delay necessarily attending the appeal and any

subsequent proceeding in the event that the Original Settlement is overturned on appeal"
(Opinion at 22). As Mr. Grimes explained to the Bankruptcy Court, pursuant to the
Stipulation implementing the original Derivative Settlement, Riverstone cannot oppose
Plaintiffs' Counsel request for an award of fees (D.I. 453 at ¶ 35). Thus, in the Ninth Circuit
Appeal, Plaintiffs' Counsel has taken the lead (and really should continue to do so,
particularly now that the Ninth Circuit has reinstated the briefing schedule except with
respect to Riverstone) (*Id.*).

Mr. Grimes' opening brief in the Ninth Circuit was filed prior to the Debtors'
bankruptcy petition (*Id.*). Thus, Plaintiffs' Counsel need only file an answering brief and
participate in any oral argument that is scheduled (*Id.*). Given this, and given the stay of the
Ninth Circuit proceedings with respect to Riverstone, there is nothing the Debtors need do
in the Ninth Circuit (and thus no expense to incur) (*Id.*).

As Mr. Grimes further explained, the time that it will take to complete the
Appeal will not have a material effect on the Debtors' estates (D.I. 453 at ¶ 36). It did not
prevent the Debtors from filing (and having confirmed) a plan of liquidation, and it is not
unusual for litigation, which could bring assets back into the estates, to continue after a plan
of liquidation has been confirmed (*Id.*).

The Bankruptcy Court never addressed these arguments. Rather, it concluded
without any explanation that this factor weighed in favor of the Settlement (Opinion at 22).
This, too, was an abuse of discretion.

**D.    The fourth *Martin* factor -paramount interest of creditors**

As explained in the Bankruptcy Court, the sale of Debtors' assets generated enough proceeds that all creditors will be paid in full. Thus, any additional money that comes into the estates will benefit the equity holders (such as Mr. Grimes), and it is their interests that should be taken into account here.   It is obviously in the best interest of the equity holders to have the maximum amount of money come back into the estates.  As discussed above, there is a substantial likelihood that a significant portion, if not all, of the fees paid to Plaintiffs' Counsel would be returned to the Debtors following a successful appeal in the Ninth Circuit.

The Bankruptcy Court again gave only a cursory review to this factor.  It first found that the interests of creditors favored the Settlement Motion because, even though the return of attorneys' fees was not necessary to creditors receiving payment in full, approval of the Settlement Motion was made a condition of Debtors' plan, and thus creditors' interests would be served by having the plan approved sooner (Opinion at 22-23).  As Mr. Grimes explained below, however, there was never any real justification for tying the amendment to the Derivative Settlement to the plan - except in an effort to push it through (D.I.  453 at ¶ 41).

The Bankruptcy Court further appeared to agree that the interests of the equity holders would be served by bringing money back into the estate (Opinion at 22-23).  In doing so, however, it never addressed Mr. Grimes' contention that the appeal would likely bring even more money back (D.I.  453 at ¶ 38).  This also was an abuse of discretion.

### E.    Other relevant factors

Finally, the Bankruptcy Court never addressed another significant factor indicating that the amendment was not reasonable (even under Rule 9010 standards). As Mr. Grimes explained below, by approving the amendment to the Derivative Settlement the Bankruptcy Court would allow Plaintiffs' Counsel to keep $800,000 in fees without review by *any* court as to what fee, if any, was reasonable under the circumstances (D.I. 453 at ¶ 39).[24] Such a result would allow Plaintiffs' Counsel to get away with precisely the practice that is the subject matter of the Ninth Circuit appeal.

Moreover, there was no basis for the Bankruptcy Court to believe that an $800,000 fee was reasonable under any standard (whether that applied to fee applications or under Bankruptcy Rule 9019) where it had the benefit of Judge Hamilton's comments that Plaintiffs' Counsel had not supplied sufficient information to justify *any* fee if they were required to file a separate fee application.

---

[24]Indeed, Debtors gave the Bankruptcy Court no information upon which to judge the amount of the fee (D.I.  453 at ¶ 39).

## CONCLUSION

For the above reasons, the Bankruptcy Court's Opinion and Final Order granting the Settlement Motion should be reversed.

SMITH, KATZENSTEIN & FURLOW, LLP

David A. Jenkins (ID No. 932)
Michele C. Gott (ID No. 2671)
Kathleen M. Miller (ID No. 2898)
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Tel:   (302) 652-8400
Fax:   (302) 652-8405
Email: DJenkins@skfdelaware.com
*Attorneys for Charles L. Grimes*

December 14, 2006

**Opening Brief of Appellant
Charles L. Grimes**

**Exhibit 1**

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2002 WL 73490 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
In re Burlinton Motor Holdings, Inc.D.Del.,2002.Only
the Westlaw citation is currently available.
United States District Court, D. Delaware.
In re: BURLINGTON MOTOR HOLDINGS, INC.,
et al., Debtors,
BURLINGTON MOTOR CARRIERS, INC.,
Appellant,
v.
COMDATA NETWORK, INC. Appellee.
No. 95-1559 (JFK), 95-1960(JFK), 95-1961(JFK),
95-1962(JFK), 95-1563(JFK), CIV.A.
99-573-GMS.

Jan. 18, 2002.

MEMORANDUM AND ORDER
SLEET, District J.

## I. INTRODUCTION

*1 On December 4, 1995, Burlington Motor Holdings,
Inc., Burlington Motor Carrier, Inc., Spirit
Transportation Inc., BNMC Real Estate Inc., and BMC
Equipment Inc. (the "Debtors") filed voluntary petitions
for relief under Chapter 11 of the Bankruptcy Code. On
November 22, 1996, the bankruptcy court entered an
order confirming the Debtor's Fourth Amended Plan of
Reorganization (the "Plan"). The bankruptcy court also
entered an order consolidating the Debtors' estates for
all purposes. Pursuant to the Plan, substantially all of
the Debtors' assets were transferred to the successor
corporation, Burlington Motor Carriers, Inc.
("Burlington").

On December 3, 1997, Burlington filed suit seeking to
avoid and recover preferential transfers made to
Comdata Network Inc. a/k/a Billing Services
("Comdata"). On April 14, 1999, the bankruptcy court
issued a decision in the *Burlington Motor Carriers, Inc.
v. MCI* proceeding. In that decision, the bankruptcy
court dismissed Burlington's preference claims for lack

of standing and subject matter jurisdiction. *See
Burlington Motor Carriers, Inc. v. MCI
Telecommunications,* 231 B.R. 874
(Bankr.D.Del.1999). In particular, the bankruptcy court
found that Burlington lacked standing because any
recovery from the MCI proceeding would provide no
benefit to the Debtors' bankruptcy estate.[FN1]

> FN1. Burlington appealed this decision on
> April 23, 1999.

On April 27, 1999, Comdata filed a motion to dismiss
its case based on the bankruptcy court's MCI decision.
Expressly adopting the MCI decision, the bankruptcy
court dismissed the Comdata proceeding on June 1,
1999.

Burlington appealed this decision on June 8, 1999.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Bankruptcy court jurisdiction is a question of law
subject to *de novo* review. *See In re Marcus Hook Dev.
Park, Inc.* 943 F.2d 261, 263 n. 2 (3d Cir.1991).

An analysis of the bankruptcy court's jurisdiction must
first begin with 28 U.S.C. § 1334. This section grants
the district court jurisdiction over bankruptcy cases. *See*
28 U.S.C. § 1334. It provides that "the district courts
shall have original but not exclusive jurisdiction of all
civil proceedings arising under title 11, or arising in or
related to cases under title 11." *Id.* Moreover, district
courts routinely refer bankruptcy cases to the
bankruptcy court pursuant to 28 U.S.C. § 157(a). *See
United States Trustee v. Gryphon at the Stone Mansion,
Inc.,* 216 B.R. 764, 767 (W.D.Pa.1997), *aff'd,* 166 F.3d
552 (3d Cir.1999).

Thus, in determining whether Burlington's avoidance

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 73490 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

actions fall within the bankruptcy court's subject matter jurisdiction, the court need only decide whether the matter is at least "related to" the bankruptcy. *See Gryphon, 216 B.R. at 767.* An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action, and would in any way impact upon the handling and administration of the bankrupt estate. *See id.* Furthermore, post-confirmation jurisdiction is appropriate when the matter is 'related to' the bankruptcy case. *See id.* at 768. A retention of jurisdiction provision within a confirmed plan does not grant a bankruptcy court jurisdiction. *See id.* at 769. Similarly, the absence of such a provision within a confirmed plan does not deprive a bankruptcy court of jurisdiction. *See id.*

*2 Avoidance actions are a creation of bankruptcy law and are within the matters enumerated in 28 U.S.C. § 157 as core proceedings. *See 28 U.S.C. § 157(b)(2)(F).* Thus, there can be no question that such actions are "related to" the bankruptcy. Further, the fact that these actions were not enumerated in the retention of jurisdiction recitation in the Plan is of no moment. The court thus finds that the bankruptcy court retained jurisdiction over Burlington's avoidance actions.

B. Standing

Comdata next contends that Burlington lacks standing to bring avoidance actions under 11 U.S.C. § 550(a).

Comdata argues that Section 550(a) of the Bankruptcy Code requires that Burlington's avoidance actions be for the benefit of the estate. *See 11 U.S.C. § 550(a).* Under the Plan, Burlington is unconditionally obligated to pay creditors. Comdata thus maintains that, under the terms of the Plan, any recovery by Burlington in the avoidance actions is not for the benefit of the estate. Accordingly, any recovery of preferences will only benefit Burlington. For the following reasons, the court disagrees.

It is a well-settled principle that avoidance powers may be assigned to someone other than the debtor or trustee pursuant to a plan of reorganization. *See In re*

*Churchfield Management & Inv. Corp., 122 B.R. 76, 81 (Bankr.N.D.Ill.1990).* However, a party seeking to enforce such a claim who is neither the debtor, nor the trustee, must establish two elements. *See McFarland v. Leyh, 52 F.3d 1330, 1335 (5th Cir.1995).* First, the party must establish that it has been appointed to bring the actions; and second that it is a representative of the estate. *See id.*

There is little dispute that Burlington satisfies the first element. The Plan clearly stated that Burlington was to assume "selected assets," including causes of action under sections 547 and 550 of the bankruptcy code. The bankruptcy court approved this Plan. Thus, the court finds that Burlington was appointed to bring these avoidance actions.

In determining whether a party is the "representative of the estate," courts apply a case-by-case approach. *See McFarland, 52 F.3d at 1335.* The primary consideration is whether a successful recovery by the appointed representative would benefit the debtor's estate, and particularly the unsecured creditors. *See In re Sweetwater, 884 F.2d 1323, 1326-27 (10th Cir.1989).* In determining whether a benefit has inured, courts will broadly interpret this requirement. *See In re North Atl. MillWork Corp., 155 B.R. 271, 282 (Bankr.D.Mass.1993).*

It is clear that the benefit to the estate may occur prior to an actual avoidance recovery.[FN2] *See In re Maxwell Newspapers, Inc., 189 B.R. 282, 287 (Bankr.S.D.N.Y.1995); Churchfield, 122 B.R. at 82.* In *Maxwell,* the bankruptcy court found a benefit where the debtor's creditors were assigned certain avoidance claims in exchange for the withdrawal of the creditor's $93 million claim. 189 B.R. at 286. In *Churchfield,* the avoidance claims were exchanged for a direct payment to the creditors and for payment of the estate's administrative expenses. 122 B.R. at 82-83. The court in *Churchfield* went on to note that the unsecured creditors received the benefit of every valuable consideration paid by the assignee to the estate. *See id.* "[T]o conclude otherwise would be to deprive [the assignee] of its bargained for rights and might allow it a present claim of partial failure of consideration against the estate." *Id.* at 83.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 73490 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

> FN2. There can be little dispute here that, under the terms of the Plan itself, no benefit would inure to the estate in the event of an actual avoidance recovery. The Plan specifically states that any such future proceeds would benefit only Burlington.

*3 In this case, the court acknowledges that the prior benefit, while present, is not as clear as in other cases. Here, pursuant to the Plan, Burlington paid $3.8 million to be issued directly to the unsecured creditors. It also assumed liability for various other types of claims, such as administrative claims and tax claims. In exchange for this, Burlington received substantially all of the debtors' assets, including the rights to pursue the avoidance actions. Thus, while the payment and assumption of liabilities were not solely consideration for the avoidance actions, these actions were clearly set forth in the Plan as part of the total bargain.[FN3]

> FN3. Much is made in the appellants' briefs of the fact that it is unclear what portion of the consideration went to the avoidance actions. This argument is unavailing because the estate benefitted from a voluntary, mutual exchange which explicitly included the avoidance actions.

Because Burlington was assigned these actions, and the estate benefitted from such assignment, the court finds that Burlington has standing to bring the avoidance actions.

### III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:
1. The June 1, 1999 decision by the United States Bankruptcy Court for the District of Delaware is REVERSED.

D.Del.,2002.
In re Burlinton Motor Holdings, Inc.

Not Reported in F.Supp.2d, 2002 WL 73490 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Opening Brief of Appellant
Charles L. Grimes**

**Exhibit 2**

UNITED STATES COURT OF APPEALS **F I L E D**

FOR THE NINTH CIRCUIT

MAR 2 9 2006

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

GREGORY WATTERSON, Derivatively
on behalf of Riverstone Networks, Inc on
behalf of Riverstone Networks, Inc.,

    Plaintiff - Appellee,

CHARLES L. GRIMES,

    Intervenor - Appellant,

v.

ROMULUS PEREIRA; et al.,

    Defendants - Appellees.

No. 05-16588

D.C. No. CV-03-00637-PJH
Northern District of California,
San Francisco

ORDER

RECEIVED

APR 0 6 2006

DAJ

The clerk is in receipt of Appellee Watterson's Motion to Stay Briefing

Schedule in Light of Bankruptcy Filing of Appellee Riverstone Networks, Inc. and

Automatic Bankruptcy Stay. This appeal is stayed until September 20, 2006. On

or prior to the expiration of the stay, the debtor shall file a status report.

              For the Court:
              CATHY A. CATTERSON
              Clerk of the Court

              *Alihandra M. Totor*
              Alihandra M. Totor
              Deputy Clerk
              Ninth Cir. R. 27-7/Advisory Note to Rule 27
                  and Ninth Circuit Rule 27-10

pro 03.20.06

**Opening Brief of Appellant
Charles L. Grimes**

**Exhibit 3**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| RNI WIND DOWN | ) | |
| CORPORATION, et al., | ) | Case No. 06-10110 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### MEMORANDUM OPINION[1]

Before the Court is the Debtors' Motion for an Order
Pursuant to Rule 9019 of the Federal Rules of Bankruptcy
Procedure Approving the Amendment to the Stipulation and
Agreement of Settlement Dated as of November 12, 2004 (the "9019
Motion"), and the Motion of Charles L. Grimes for Relief from the
Automatic Stay Pursuant to 11 U.S.C. § 362 of the Bankruptcy Code
(the "Stay Relief Motion").   The 9019 Motion is opposed by
Charles L. Grimes and the Stay Relief Motion is opposed by the
Debtors, the Official Committee of Equity Security Holders, and
the Official Community of Unsecured Creditors.   For the reasons
stated below, the 9019 Motion will be granted and the Stay Relief
Motion will be denied without prejudice.

### I.   Factual and Procedural Background

This controversy arises from a series of derivative suits
that were filed between August 2002 and March 2004 in the

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the
Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made
applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

Superior Court of California and the United States District Court for the Northern District of California (the "District Court") against Riverstone Networks, Inc. ("RNI") and its directors and officers.[2]  The derivative actions asserted claims against RNI's directors and officers for insider trading, breaches of fiduciary duty, abuse of control, gross mismanagement, corporate waste and unjust enrichment.  Specifically, plaintiffs alleged that between August, 2001 and December, 2002 the defendants realized that RNI could not achieve its revenue and earnings projections and conspired to create the "appearance" of growth during the relevant period by issuing false and/or misleading public statements regarding RNI's business, financial condition and prospects.

In May 2004, the plaintiffs in the derivative actions reached a settlement in principle with RNI and its directors and officers.   On November 12, 2004, all parties to the pending derivative actions entered into a Stipulation and Agreement of Settlement (the "Original Settlement").   The Original Settlement provided for the settlement of both the state court and District Court derivative actions.   The principle terms of the Original Settlement included changes to the number and independence of, members of the Board of Directors; the implementation of new

---

[2] On May 24, 2006, RNI changed its name to RNI Wind Down Corporation.  For convenience, "RNI" will be used throughout this opinion to refer to RNI Wind Down Corporation formerly known as Riverstone Networks, Inc., regardless of which formal name of the corporation was applicable at any given time.

corporate governance measures; and a payment of $11 million for the benefit of RNI. Further, section 5.1 of the Original Settlement provides, in part, that "Riverstone agrees to pay . . . the fees and expenses of all experts retained by Derivative Plaintiffs' Counsel in an aggregate amount of $1,750,000, as a unitary part of the Settlement." Original Settlement, at 14, § 5.1, ll. 14-18 (Nov. 12, 2005).

On January 26, 2005, the District Court granted preliminary approval of the Original Settlement, subject to objections from stockholders. On May 2, 2005, Charles Grimes filed both a motion to intervene and an objection to the unitary nature of the payment of $1,750,000 for plaintiffs' attorneys' fees included in the Original Settlement. On July 22, 2005, the District Court overruled Mr. Grimes' objection and entered an order granting final approval of the Original Settlement. The District Court also dismissed the District Court derivative action with prejudice and granted Mr. Grimes' motion to intervene, giving him the right to appeal.

On August 11, 2005, Mr. Grimes filed his appeal with the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"). Subsequently, the former derivative plaintiffs and defendants (the "Settlement Parties") agreed to unbundle the fee award from the Original Settlement, *i.e.*, to strike the "unitary nature of the settlement," and filed a joint motion to dismiss

3

the Ninth Circuit appeal as moot, which the Ninth Circuit denied
on March 17, 2006.  The appeal before the Ninth Circuit remains
pending.

On February 7, 2006, RNI and its affiliates (collectively,
the "Debtors") filed voluntary petitions for relief under chapter
11 of the Bankruptcy Code.

On May 5, 2006, Mr. Grimes filed the Stay Relief Motion,
seeking relief from the automatic stay to proceed with his Ninth
Circuit appeal.[3]

On June 8, 2006, the Debtors filed the 9019 Motion.  Through
the 9019 Motion, the Debtors seek to amend the Original
Settlement in the following ways:

   a. Deletion of the provision that makes granting the
      derivative plaintiffs' attorneys' fees and expenses "a
      unitary part of the settlement."

   b. Derivative plaintiffs' counsel will repay to RNI's
      estate $950,000 of the $1,750,000 previously paid to
      them as attorneys' fees.  Those funds are to be
      transferred to RNI's estate within ten business days of
      this Court confirming the Debtors' pending plan of
      reorganization.  The transfer of those funds to RNI's
      estate is subject to refund of the full amount, plus

---

[3] The Debtors' commencement of Chapter 11 proceedings on February 7, 2006
stayed the appeal before the Ninth Circuit, pursuant to section 362 of the
Bankruptcy Code.

4

interest, in the event of a reversal or modification of this Court's order confirming the Debtors' pending plan of reorganization.

c. The Debtors will bring a motion to approve the settlement amendment before this Court and file a motion to dismiss the Ninth Circuit Appeal.

This Court's approval of the Amendment to the Stipulation and Agreement of Settlement Dated as of November 12, 2004 (the "Amended Settlement") under Bankruptcy Rule 9019 is a condition to the effectiveness of the *Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Official Committee of Unsecured Creditors and the Official Committee of Equity Security Holders* (the "Plan") filed on June 30, 2006. A hearing on confirmation of the Plan is scheduled for September 12, 2006.

On June 30, 2006, the Court convened an evidentiary hearing on the 9019 Motion and the Stay Relief Motion.[4] At the conclusion of the hearing, the Court requested the submission of supplemental briefs in connection with the 9019 Motion, which were filed on July 24, 2006. On July 27, 2006, the Court heard oral argument in connection with the issues discussed in the

---

[4] Charles Grimes did not present any independent evidence in support of the Stay Relief Motion at the hearing on the motion.

supplemental briefs.  This is the Court's decision on the 9019 Motion and the Stay Relief Motion.

## II.  **The 9019 Motion**

Bankruptcy Rule 9019 provides that "[o]n a motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  Whether the Court may approve the Amended Settlement under Bankruptcy Rule 9019 is governed by well-settled principles of law and does not present a difficult issue in this case.

There are, however, three threshold issues that must be addressed before the Court may consider the merits of the Amended Settlement under Bankruptcy Rule 9019: (1) does the Bankruptcy Court have subject-matter jurisdiction over the Amended Settlement; (2) can the Court approve the Amended Settlement over the objection of Mr. Grimes, who is a party to the pending appeal before the Ninth Circuit but is not a party to the Amended Settlement; and (3) in light of the pending Ninth Circuit appeal, should the Court abstain from considering the 9019 Motion under principles of comity.

This Court finds that it has subject-matter jurisdiction to consider the Amended Settlement under Bankruptcy Rule 9019; Mr. Grimes is not a necessary party to the Amended Settlement; and the Court will not abstain from considering the 9019 Motion because principles of comity are not invoked and the standard for

6

permissive abstention is not satisfied.  The Court further finds

that the Debtors have satisfied the standard under Bankruptcy

Rule 9019 and the Amended Settlement will be approved.

A.    **This Court Has Subject-Matter Jurisdiction Over the Amended Settlement**

The basic statutory grant of bankruptcy court subject-matter

jurisdiction is contained in 28 U.S.C. § 1334.  Specifically,

section 1334(a) provides the district court with "original and

exclusive jurisdiction of all cases under title 11."  Section

1334(b) provides that "the district courts shall have original

but not exclusive jurisdiction of all civil proceedings arising

under title 11, or arising in or related to cases under title

11."  Section 1334(e)(1) provides the district court in which a

case under title 11 is commenced or is pending with "exclusive

jurisdiction (1) of all the property, wherever located, of the

debtor as of the commencement of such case, and of property of

the estate." *Compare Arbaugh v. Y&H Corporation dba The Moonlight*

*Café*, ___ U.S. ___, 126 S.Ct. 1235, 1244, 163 L.Ed. 2d 1097, 1109

(2006) (setting forth the statutory bases for federal court

subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1332).[5]

The property of the estate referenced in section 1334(e)(1) is

defined in 11 U.S.C. § 541 and includes "all legal and equitable

---

[5] 28 U.S.C. § 157(a) provides that the district court may provide that any and all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.  The United States District Court for the District of Delaware has so provided.

interests of the debtor in property . . . ." 11 U.S.C. §
541(a)(1)(2005).

Assuming the district court has subject-matter jurisdiction
under 28 U.S.C. § 1334 and the district court has referred the
matter to the bankruptcy court under 28 U.S.C. § 157(a), a
related question arises -- whether the matter before the
bankruptcy court is a core or non-core proceeding under 28 U.S.C.
§ 157(b). Importantly, 28 U.S.C. § 157(b) is **not** an independent
basis for conferring subject-matter jurisdiction to a bankruptcy
court. Rather, 28 U.S.C. § 157(b) delineates the scope of the
bankruptcy court's power to exercise the subject-matter
jurisdiction granted to the district court under 28 U.S.C. §
1334. Core proceedings include "matters concerning administration
of the estate" and "other proceedings affecting . . . the
adjustment of the debtor-creditor relationship." 28 U.S.C. §
157(b)(2)(A),(O)(2005). The consideration of the Amended
Settlement under Rule 9019 is a core proceeding.

The underlying cause of action at issue here is a derivative
action.

> Where a corporation has suffered an injury
> from actionable wrongs committed by its
> officers and directors, the remedy under a
> state's incorporation laws is a suit on
> behalf of the corporation. Such a suit may
> be brought by the corporation, or, in some
> circumstances, can be brought by the
> shareholders or creditors on its behalf.
> Regardless of who initiates the suit, the

8

> recovery goes to the corporation. When the action is brought on behalf of the corporation, it is referred to as a derivative action.

*Reliance Acceptance Group, Inc. v. Levin (In re Reliance Acceptance Group, Inc.)*, 235 B.R. 548, 554 (D. Del. 1999).

Upon the filing of a bankruptcy petition, however, any claims for injury to the debtor from actionable wrongs committed by the debtor's officers and director become property of the estate under 11 U.S.C. § 541 and the right to bring a derivative action asserting such claims vests exclusively to the trustee. *Mitchell Excavators Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir. 1984) (*citing Pepper v. Litton*, 308 U.S. 295, 306-07, 84 L. Ed. 281, 289-90, 60 S.Ct. 238, 245 (1939)). *See also Skolnick v. Atlantic Gulf Communities Corp. (In re Gen. Development Corp.)*, 179 B.R. 335, 338 (S.D. Fla. 1995) ("[t]he bankruptcy estate includes all legal claims owned by [the] corporate debtor, including derivative actions. . . ."). This is true regardless of whether the derivative action is brought prior to or after the filing of the petition. *Compare Mitchell Excavators Inc.*, 734 F.2d at 130 (derivative action brought after filing of petition); and *Gen. Development Corp.*, 179 B.R. at 337 (derivative action brought prior to filing of petition).

Thus, the claims asserted by the plaintiffs in the derivative actions in this case are property of the estate under

9

section 541 of the Bankruptcy Code and, pursuant to 28 U.S.C. §
1334(e)(1), this Court has exclusive subject-matter jurisdiction
over those claims, including settlement of those claims.[6]

This conclusion is not in dispute. In his brief in
opposition, Mr. Grimes agreed that when a corporation files for
protection under the Bankruptcy Code, causes of action, including
derivative actions, become property of the estate. Rather, Mr.
Grimes argues (without citation to authority) that the same is
not true with respect to an appeal of a court-approved settlement
of a derivative action because state law does not give the
corporation the right to assert that claim.

Mr. Grimes' argument is without merit. First, the fact that
the derivative actions have been settled and dismissed does not
divest this Court of subject-matter jurisdiction over the claims
for injury to the debtor. Whether the trustee would ultimately
prevail on such claims in the face of a previously approved
settlement may be at issue, but the settlement and dismissal has
no effect on the bankruptcy court's subject-matter jurisdiction
over the claims. Second, the fact that settlement and dismissal
of the derivative actions was followed by an appeal to the Ninth

---

[6]Because the trustee has the exclusive right to prosecute the derivative
actions, the trustee is the only party with the right to settle the actions.
*See, e.g., In Re Ontos*, No. 05-4773, 2006 U.S. Dist. LEXIS 4198 at *14 (D.N.J.
Jan. 4, 2006) ("it would be a strange and illogical interpretation of the law
that recognized on the one hand the exclusive right of the Trustee to
prosecute a fraudulent transfer claim, while on the other hand denying him the
power to settle or compromise that very same claim").

Circuit that is still pending does not change the analysis. The bankruptcy court's subject-matter jurisdiction over the claims for injury to the debtor is based upon the claims themselves and not the procedural posture of the derivative actions asserting those claims.

The Court also finds the absence of authority in support of Mr. Grimes' argument significant. As set forth above, the bankruptcy court's subject-matter jurisdiction over property of the estate, including claims for injury to the debtor, is created by statute. *See* 11 U.S.C. § 1334(e)(1). Similar authority is required to divest the bankruptcy court of its statutorily granted subject-matter jurisdiction based upon the procedural posture of the derivative actions. No such authority exists and, thus, the subject-matter jurisdiction created by Congress remains intact. *See Arbaugh*, ___ U.S. ___, 126 S.Ct. at 1244, 163 L. Ed. 2d at 1110 (rather than constricting the scope of the federal court's subject-matter jurisdiction, the "sounder course" is to refrain from constricting the court's subject-matter jurisdiction and "to leave the ball in Congress' court").

B.    **Mr. Grimes is Not a Necessary Part to the Amended Settlement**

Mr. Grimes argues that the Court cannot approve the Amended Settlement over his objection because he is a party to the

11

pending appeal before the Ninth Circuit, but is not a party to the Amended Settlement.

Mr. Grimes incorrectly collapses the Amended Settlement into the pending appeal. The Debtors are not seeking to settle or to dismiss the pending appeal. Rather, they are seeking this Court's authority under Bankruptcy Rule 9019 to enter the Amended Settlement. While such approval may moot the pending appeal, the settlement or dismissal of the Ninth Circuit appeal is not before this Court.

What is before the Court is a proposed settlement of claims for injury to the debtor from actionable wrongs committed by the debtor's officers and directors, which were the subject of the derivative actions. As set forth above, upon the filing of a bankruptcy petition, those claims became property of the estate under 11 U.S.C. § 541 and the right to bring a derivative action asserting such claims vested exclusively to the trustee, including the right to settle such claims. As a result of the bankruptcy filing, even if Mr. Grimes had been the plaintiff in the derivative actions (which he was not) those claims could be settled over Mr. Grimes' objection. *Compare Ontos*, 2006 Lexis 4198, at *14 (because the trustee has the exclusive right to prosecute a fraudulent transfer claim, he also has the power to settle or compromise the same claim). Certainly, if the consent of the plaintiff in a derivative action is not required to settle

12

claims for injury to the debtor, Mr. Grimes is in no greater position to exercise a veto over the Amended Settlement.

Mr. Grimes argues that the Debtors cannot amend the Original Settlement without first having the District Court's decision approving the Original Settlement vacated. He further argues that the Debtors do not meet the "exceptional circumstances standard" required for a court of appeals to grant *vacatur*.

Mr. Grimes cites *Teachers Insurance & Annuity Association v. Butler*, which stands for the proposition "that a bankruptcy court is precluded from relitigating judgments rendered by courts of competent jurisdiction . . . ." 803 F.2d 61, 66 (2d Cir. 1986). Debtors are not seeking to relitigate the derivative actions in this Court. This Court is merely reviewing the validity of the Amended Settlement in the context of the 9019 motion.

Grimes also cites *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994). The issue in *Bancorp* is not on point to the case at hand. In *Bancorp*, the issue on appeal was "whether appellate courts in the federal system should vacate civil judgments of subordinate courts in cases that are settled after appeal is filed or certiorari sought." *Id.* at 19.

In *Bancorp*, the Supreme Court explained reasons behind the strict standards on post-judgments *vacatur*. *Id.*

The Supreme Court reasoned that:

> [s]ome litigants, at least, may think it worthwhile to roll the dice rather than settle in the district court, or in the court of appeals, if, but only if, an unfavorable outcome can be washed away with settlement-related vacatur. And the judicial economies achieved by settlement at the district-court level are ordinarily much more extensive than those achieved by settlement on appeal.

*Id.* at 28 (emphasis omitted). Here, the Debtors previously settled the derivative actions in the District Court and are merely seeking an amendment of the Original Settlement. Therefore the concerns raised by the Supreme Court in *Bancorp* are not implicated in this case.

## C.    This Court Will Not Abstain From Considering the 9019 Motion

The principle of comity is that "the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state or jurisdiction, not as a matter of obligation, but out of deference and mutual respect." *Brown v. Babbitt Ford, Inc.*, 571 P.2d 689, 695 (Ariz. Ct. App. 1977). The principle of comity applies among federal courts and requires federal courts of coordinate jurisdiction and equal rank to exercise care to avoid interference with each other's affairs. *West Gulf Maritime Association v. ILA Deep Sea Local 24, et al.*, 751 F.2d 721, 728 (5th Cir. 1985).

14

The principle of comity is not applicable in this case because the claims asserted by the plaintiffs in the derivative actions are property of the estate under section 541 of the Bankruptcy Code and, pursuant to 28 U.S.C. § 1334(e)(1), this Court has exclusive subject-matter jurisdiction over those claims, including settlement of those claims. As a result, this is not a case where two federal courts of equal rank are exercising coordinate or concurrent jurisdiction.

Nonetheless, this Court has authority under 11 U.S.C. § 1334(c)(1) in the interest of justice to abstain from hearing a particular proceeding arising under title 11 or arising or related to a case under title 11. Thus, notwithstanding that the principle of comity is not applicable in this case, the Court will consider whether it should abstain from considering the 9019 Motion.

"Permissive abstention from core proceedings under 28 U.S.C. § 1334(c)(1) is left to the bankruptcy court's discretion." *Luan Inv. S.E. v. Franklin 145 Corp.* (*In re Petrie Retail, Inc.*), 304 F.3d 223, 232 (2d Cir. 2002). Bankruptcy courts consider twelve nonexclusive factors to determine whether permissive abstention is appropriate:

> (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the

15

difficulty or unsettled nature of the
applicable state law; (4) the presence of a
related proceeding commenced in state court
or other non-bankruptcy court; (5) the
jurisdictional basis, if any, other than 28
U.S.C. § 1334; (6) the degree of relatedness
or remoteness of the proceeding to the main
bankruptcy case; (7) the substance rather
than the form of an asserted "core"
proceeding; (8) the feasibility of severing
state law claims from core bankruptcy matters
to allow judgments to be entered in state
court with the enforcement left to the
bankruptcy court; (9) the burden of the
court's docket; (10) the likelihood that the
commencement of the proceeding in bankruptcy
court involves forum shopping by one of the
parties; (11) the existence of a right to a
jury trial; and (12) the presence in the
proceeding of nondebtor parties.

*In re Sun Healthcare Group*, 267 B.R. 673, 678-79 (Bankr. D. Del.

2000). "Evaluating the twelve factors is not a mathematical

formula." *Id.* at 679.

In this case, factors (2), (3) and (8) do not apply as they

pertain to issues of state law and comity with state courts that

are simply not present in this case. Factor (5) does not apply

because this Court's subject-matter jurisdiction arises under 28

U.S.C. § 1334. In addition, factors (9), (10) and (11) are

inapplicable because this Court's docket is not burdened, there

is no evidence of forum shopping and there is no right to a jury

trial, respectively.

This leaves factors (1), (4), (6), (7), and (12) as the relevant factors for this Court to consider in determining whether it will abstain from considering the 9019 Motion.

**(1)    *The effect or lack thereof on the efficient administration of the estate.***

Abstention would have an adverse impact on the efficient administration of the Debtors' estates. The Plan has not yet been confirmed and approval of the Amended Settlement is an express condition to the effectiveness of the Plan, assuming, *arguendo*, the Plan is confirmed. The confirmation hearing is scheduled for September 12, 2006. Any further delay in resolving the issues raised by the 9019 Motion would have an adverse effect on the timely administration of this case. Therefore, this factor does not favor abstention.

**(4)    *The presence of a related proceeding commenced in state court or other non-bankruptcy court.***

The issue before this Court is the Debtors' 9019 Motion, which seeks approval of an Amended Settlement. The issue before the Ninth Circuit is an appeal of the District Court's order approving the Original Settlement. The issues stated on appeal by Mr. Grimes are

> 1) whether unitary settlements are permissible at all in derivative actions; 2) if unitary settlements are permissible, should a district court evaluate their fairness solely under the standards

17

> applicable to ordinary settlement agreements, or should it evaluate the attorneys' fee provision pursuant to the stricter standard normally applied in fee application cases; and 3) if ordinary settlement agreement standards are applicable, did the District Court abuse its discretion by approving the settlement agreement even though it found the agreed fee exorbitant and unreasonable?

Opening Brief of Charles L. Grimes, No. 05-16588, at 2, filed in the United States Court of Appeals for the Ninth Circuit (Nov. 23, 2005).

Both proceedings arise from the settlement of the claims asserted in the derivative actions, however, the issues before each court are separate and distinct. While both the 9019 Motion and the issues on appeal were precipitated by the derivative actions, the 9019 Motion does not directly involve the validity of the Original Settlement or any of the issues presented to the Ninth Circuit on appeal. See also *Seguros del Estado, S.A. v. Scientific Games, Inc.*, 262 F.3d 1164 (11th Cir. 2001).

While the approval of the 9019 Motion alters the underlying facts of the Ninth Circuit Appeal, it does not change or determine any of the legal issues that were raised on appeal. Therefore, this factor does not favor abstention.

**(6)   The   degree   of   relatedness   or   remoteness   of   the
proceeding to the main bankruptcy case.**

Consideration  of  the  Amended  Settlement  through  the  9019
Motion  is  a  core  proceeding  and  therefore  related  to  the  main
bankruptcy case.    This factor does not favor abstention.

**(7) The substance rather than the form of an asserted "core"
proceeding.**

This  is  a  core  proceeding.    This  factor  does  not  favor
abstention.

**(12) The presence in the proceeding of nondebtor parties.**

While  Mr.  Grimes  is  a  party  to  the  appeal  in  the  Ninth
Circuit,  his  participation  is  not  necessary  for  the  Amended
Settlement.   This factor does not favor abstention.

All  of  the  relevant  factors  considered  by  bankruptcy  courts
in determining whether to abstain under 11 U.S.C. § 1334(c)(1) do
not  favor  abstention.    Thus,  it  would  not  be  in  the  interest  of
justice  for  this  Court  to  abstain  from  considering  the  9019
Motion and this Court will not do so.

**D.    The 9019 Motion Is Approved**

Bankruptcy  Rule  9019  provides  that  "[o]n  a  motion  by  the
trustee  an  after  notice  and  a  hearing,  the  court  may  approve  a
compromise  or  settlement."    Fed.  R.  Bankr.  P.  9019(a).    "Four
criteria  that  a  bankruptcy  court  should  consider  .  .  .  [are]  (1)
the   probability   of   success   in   litigation;   (2)   the   likely

difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

The Debtor clearly meets the standard under Rule 9019. As a preliminary matter, it is important to note that the Amended Settlement is an amendment to the Original Settlement previously approved by the District Court under the more stringent standards applicable to the settlement of a derivative action under Rule 23.1 of the Federal Rules of Civil Procedure. Moreover, the Amended Settlement results in an additional benefit to the Debtors' estates in the amount of $950,000. The Amended Settlement is significantly more favorable to the Debtors' estates than the Original Settlement previously approved by the District Court over Mr. Grimes' objection -- this fact alone weighs heavily in favor of approving the Amended Settlement.

Given the procedural posture of the pending appeal before the Ninth Circuit and the terms of the Amended Settlement it is somewhat difficult to apply the *Martin* factors. Nonetheless, to the extent the *Martin* factors are relevant, taken as a whole they favor approval of the Amended Settlement.[7]

---

[7] While the Amended Settlement is not a settlement of the Ninth Circuit appeal it will have an effect on that appeal by, in all likelihood, rendering it moot. Thus, the discussion of the *Martin* factors focuses almost exclusively on the Ninth Circuit appeal. Nonetheless, the Court reiterates that the issue before the Court is not the Ninth Circuit appeal but rather is the proposed settlement of claims for injury to the debtor from actionable wrongs committed

The first *Martin* factor is the probability of success in litigation. In this case, this means the probability that the Original Settlement will survive the appeal before the Ninth Circuit. It is quite possible that Mr. Grimes would be successful in his appeal before the Ninth Circuit. If so, it is possible that the entire $1.75 million in attorneys' fees and not just $950,000 would be returned to the Debtors' estates. Of course, if the approval of the Original Settlement by the District Court is affirmed by the Ninth Circuit, the entire $1.75 million in attorneys' fees would remain in the hands of the plaintiffs' attorneys. Thus, the Courts finds that the return of approximately 54% of the attorneys fees previously approved by the District Court fairly and accurately reflects the possibility that the Original Settlement will be overturned on appeal.

The second *Martin* factor is the likely difficulty in collection. In this case, this means the difficulty that the Debtors may face in collecting the $1.75 million in attorneys' fees in the event that the Original Settlement is overturned on appeal. There would be little if any difficulty in collecting the $1.75 million in attorneys' fees in the event the Original Settlement is overturned on appeal and, thus, this factor weighs against approving the Amended Settlement.

---

by the debtor's officers and directors, which were the subject of the derivative actions.

21

The third *Martin* factor is the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it.    In this case, this means the complexity of the appeal before the Ninth Circuit and the expense, inconvenience and delay necessarily attending the appeal and any subsequent proceeding in the event that the Original Settlement is overturned on appeal.    This factor weighs heavily in favor of approving the Amended Settlement.

The final *Martin* factor is the interest of creditors. Generally speaking, adding $950,000 to a debtor's estate would inure to the benefit of a debtor's creditors.    In this case, however, under the proposed Plan, creditors are "in the money" by approximately $100 million.    Thus, an additional $950,000 in the Debtors' estates will have no effect on creditor recoveries in this case.

Nonetheless, the Court finds that this factor favors approving the Amended Settlement for two reasons.    First, there is a significant benefit that inures to the Debtors' creditors under the Amended Settlement other than the return of $950,000. Specifically, approval of the Amended Settlement is a condition to the effectiveness of the proposed Plan.    Under the proposed Plan, the Debtors' creditors will receive timely payment of their allowed claims in full in cash and, in some cases, with interest. Since approval of the Amended Settlement is a condition to the

22

receipt of those funds, the approval of the Amended Settlement is in the best interest of creditors.

Second, approval of the Amended Settlement also inures to the benefit of RNI's shareholders.  Although in most bankruptcy cases there is little or no chance for payment to equity, this is not the case here.  Although *Martin* does not specify that the interest of equity should be considered, the Court finds that in appropriate circumstances, *e.g.*, in a case where there is a likelihood of a recovery for equity, the Court can and should consider the interest of equity holders in applying the fourth *Martin* factor.

Thus, considered together, the *Martin* factors weigh in favor of this Court granting the 9019 Motion.

### III.  **The Stay Relief Motion**

As discussed at length above, the claims asserted by the plaintiffs in the derivative actions are property of the estate under section 541 of the Bankruptcy Code.  Pursuant to section 362(a) of the Bankruptcy Code, the filing of the Debtors' petitions for relief on February 7, 2006, operates as a stay, applicable to all entities, of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  The automatic stay also applies to "the commencement

23

or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a)(1).

Since the claims asserted in the derivative actions are property of the estate, and RNI is a party to the pending appeal in the Ninth Circuit, the automatic stay prevents Mr. Grimes from continuing his appeal. Mr. Grimes has filed the Stay Relief Motion, seeking relief from the automatic stay for "cause" to pursue his appeal.

Section 362(d) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay for "cause." 11 U.S.C. § 362(d)(1). In order to establish cause for relief under section 362(d)(1), "the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips significantly in [its] favor.'" *Atl. Marine, Inc v. Am. Classic Voyages, Co.* (*In re American Classic Voyages, Co.*), 298 B.R. 222, 225 (D. Del. 2003) (quoting *In Re FRG*, 115 B.R. 72, 74 (E.D. Pa. 1990).

Section 362(g) of the Bankruptcy Code provides that the party requesting relief from the automatic stay has the burden of proof on the question of the debtor's equity in property and that the party opposing relief has the burden on all other issues. 11 U.S.C. § 362(g). Nonetheless, the moving party first must establish its *prima facie* case. 3-362 *Collier on Bankruptcy* P 362.10 (Alan N. Resnick, Henry J. Sommer eds. 15th Ed. Rev.

24

2005).  Failure to prove a *prima facie* case requires denial of the requested relief.  *See Sonnax Industries, Inc. v. Tri Component Prods. Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) ("[s]ection 362(d)(1) requires an initial showing of cause by the movant . . . .  If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."); *In re Eatman*, 182 B.R. 386, 390 (Bankr. S.D.N.Y. 1995) ("[w]hile section 362(g) allocates the burden of ultimate persuasion, under either ground, the movant must still make a prima facie showing that it is entitled to the relief that it seeks."); and *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994).  A *prima facie* case requires a showing by the movant of "a factual and legal right to the relief that it seeks."  *In re Elmira Litho, Inc.*, 174 B.R. at 902.

In this case, the movant did not submit any evidence in support of its Stay Relief Motion.  Mr. Grimes filed the Declaration of Kathleen M. Miller In Support of Motion for Relief from Stay Pursuant to 11 U.S.C. § 363 of the Bankruptcy Code Filed by Charles Grimes [D.I. 351], which lists and attaches as exhibits several public documents previously filed in other proceedings.  Neither the Declaration nor the documents attached thereto, however, were moved into evidence at the hearing on the

25

Stay Relief Motion. Moreover, even if the documents attached to the Declaration had been admitted into evidence, they are insufficient to establish a *prima facie* case that cause exists to lift the automatic stay. Mr. Grimes failed to make a *prima facie* case by not establishing a factual and legal right to the relief he requests in the Stay Relief Motion and, thus, the motion is denied without prejudice.

## IV.    Conclusion

For the reasons stated above, the Court will grant the 9019 Motion and will deny without prejudice the Stay Relief Motion.

An appropriate order is attached.

BY THE COURT:

Christopher S. Sontchi
United States Bankruptcy Judge

Dated:    August 23, 2006

26

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| RNI WIND DOWN | ) | |
| CORPORATION, et al., | ) | Case No. 06-10110 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

ORDER

**AND NOW,** this **23rd** day of **August, 2006,** upon consideration of the evidence and the arguments presented in the briefs and at the hearing on (i) the Debtors' Motion for an Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving the Amendment to the Stipulation and Agreement of Settlement Dated as of November 12, 2004 (the "9019 Motion"); and (ii) the Motion of Charles L. Grimes for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362 of the Bankruptcy Code (the "Stay Relief Motion"), it is hereby

**ORDERED,** that the 9019 Motion is **GRANTED;** and it is further

**ORDERED,** that the Stay Relief Motion is **DENIED** without prejudice.

BY THE COURT:


Christopher S. Sontchi
United States Bankruptcy Judge
Dated:    August 23, 2006

**Opening Brief of Appellant
Charles L. Grimes**

**Exhibit 4**

RECEIVED

SEP 2 6 2006

*DAJ*

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel. 215.963.5000
Fax: 215.963.5001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Rebecca Lynn Booth**
Associate
215.963.5690
rbooth@morganlewis.com

September 20, 2006

Ms. Cathy Catterson, Clerk
United States Court of Appeals
for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

Re:    <u>Watterson v. Pereira, et al., Case No. 05-16588</u>

Dear Ms. Catterson:

We are co-counsel with Young, Conaway, Stargatt & Taylor, LLP for RNI Wind Down
Corporation f/k/a Riverstone Networks, Inc. ("RNI") and certain affiliated debtors in their
chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the
"Bankruptcy Court"). On behalf of RNI, the following status report is provided in connection
with the above-captioned appeal (the "Appeal"):

On February 7, 2006 (the "Petition Date"), RNI filed a voluntary petition for relief under chapter
11 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court.
RNI's chapter 11 case is pending before The Honorable Christopher S. Sontchi as Case No. 06-
10110 (CSS).

On September 12, 2006, a hearing to consider confirmation of the Joint Plan of Reorganization
and Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Official
Committee of Unsecured Creditors and the Official Committee of Equity Security Holders, as
Revised (the "Plan") was held before Judge Sontchi. By Order dated September 12, 2006, Judge
Sontchi confirmed the Plan. The Plan is scheduled to become effective on or before September
25, 2006 and initial distributions are anticipated on or before September 29, 2006.

Pursuant to section 362 of the Bankruptcy Code, Section 6.3 of the Plan, and paragraph 47 of the
order confirming the Plan, all entities are enjoined from, *inter alia*, commencing or continuing
(including the issuance or employment of service of process) any action or proceeding that was

September 19, 2006
Page 2

**Morgan Lewis**
COUNSELORS AT LAW

or could have been commenced before the Petition Date to recover a claim against RNI that arose prior to the Petition Date. Thus, the present action remains stayed pursuant to the Bankruptcy Code, the Plan and the order confirming the Plan.

Moreover, following an extensive evidentiary hearing, the Bankruptcy Court ruled that as a result of RNI's chapter 11 filing, the derivative action underlying the Appeal (the "Derivative Action") and the Appeal were property of RNI's bankruptcy estate and, thus, the Bankruptcy Court had jurisdiction to modify the parties' original settlement of the Derivative Action. By Order dated August 23, 2006, the Bankruptcy Court modified the parties' original settlement of the Derivative Action. A copy of the Bankruptcy Court's August 23, 2006 Order and related opinion (collectively, the August 23 Order") are annexed hereto. The August 23 Order has not been stayed and has become final. As a result of the August 23 Order, RNI believes that the Appeal is now moot.

I would be pleased to provide any further information that the Court requires.

Very truly yours,

*Rebecca L. Booth*

Rebecca L. Booth
RLB/rxs

cc:    Marc M. Umeda, Esq. (via electronic mail and U.S. Mail)
       Robert Scott Dreher, Esq. (via electronic mail and U.S. Mail)
       Eric J. Belfi, Esq. (via electronic mail and U.S. Mail)
       Brian J. Robbins, Esq. (via electronic mail and U.S. Mail)
       John G. Emerson, Esq. (via electronic mail and U.S. Mail)
       Keith F. Park, Esq. (via electronic mail and U.S. Mail)
       David A. Jenkins, Esq. (via electronic mail and U.S. Mail)
       Michael Mee, Esq. (via electronic mail and U.S. Mail)
       Robert L. McKague, Esq. (via electronic mail and U.S. Mail)
       Grant P. Fondo, Esq. (via electronic mail and U.S. Mail)
       Craig D. Martin, Esq. (via electronic mail and U.S. Mail)
       William S. Freeman, Esq. (via electronic mail and U.S. Mail)

**Opening Brief of Appellant**
**Charles L. Grimes**                    **Exhibit 5**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | )    Chapter 11 |
| RNI WIND DOWN CORPORATION., | ) |
| et al., | )    Case No. 06-10110 (CSS) |
| | ) |
| Debtors. | ) |
| | ) |
| | ) |

**EMERGENCY MOTION FOR LIMITED MODIFICATION OF THE
AUTOMATIC STAY AND/OR CONFIRMATION INJUNCTIONS
IN CONNECTION WITH THE NINTH CIRCUIT APPEAL**

Charles L. Grimes requests limited relief of the automatic stay and/or confirmation injunction. In support of this motion, Mr. Grimes states:

1.      On February 7, 2006 (the "Petition Date"), Riverstone Networks, Inc. ("Riverstone") (n/k/a RNI Wind Down Corporation) and certain of its affiliated entities (the "Debtors") each filed voluntary petitions for relief under Chapter 11 of Title 11.

2.      Prior to the Petition Date, Charles L. Grimes appealed an order of the United States District Court for the Northern District of California approving a settlement of a derivative action involving Riverstone. The appeal was docketed in the United States Court of Appeals for the Ninth Circuit as *Watterson v. Pereira*, 05-16588 (the "Ninth Circuit Appeal").

3.      On March 29, 2006, the Ninth Circuit issued a stay of the appeal until September 20, 2006 and directed that the Debtors file a status report on or before September 20, 2006.

4.      On May 5, 2006 Mr. Grimes filed a Motion for Relief from the Automatic Stay seeking to proceed with the Ninth Circuit Appeal (the "Stay Motion"). The Stay Motion and

10017904.WPD

the Debtors' Motion for an Order Pursuant to Rule 9019 Approving the Amendment to the

Stipulation and Agreement of Settlement Dated as of November 12, 2004 (the "Settlement Motion")

were argued on June 30 and July 27, 2006.

> 5.    At the July 27[th] hearing, the Court asked counsel for the Debtors:
>
>> Assuming I grant the motion, the 9019 motion, and I hear your point
>> your point on evidence, but I assume that the next step for the Debtor
>> in the Ninth Circuit is going to be to seek to have the appeal
>> dismissed, as either moot or what have you. Don't I have to lift the
>> automatic stay to allow Mr. Grimes to participate fully in the Ninth
>> Circuit and brief the effect of this Court's order under the 9019?

(July 27, 2006 Transcript p.33-34, attached hereto as Ex. A) Debtors' counsel responded:

>> It's one of those yes and no answers. Technically, the Debtor doesn't
>> have to have the stay lifted to proceed on its own motion, but yes, it's
>> quite unfair that we would move to dismiss the appeal but he couldn't
>> answer. We would consent … to having the stay lifted for the limited
>> purpose of having him respond to our motion to dismiss the appeal
>> in the Ninth Circuit. That would be acceptable to the debtors.

*Id.*

> 6.    On August 23, 2006, the Court denied the Stay Motion and granted the

Settlement Motion. Mr. Grimes timely appealed the Settlement Motion.

> 7.    On September 20, 2006, the Debtors filed a status report in the Ninth Circuit

Appeal (the "Status Report")(A copy is attached as Ex. B). While the Debtors advised the Ninth

Circuit of the Settlement Motion, they failed to advise the Ninth Circuit that the appeal of that

motion was currently pending. The Debtors also stated that as a result of this Court's August 23,

2006 order, that the Debtors "believe[] that the [Ninth Circuit] Appeal is now moot."

> 8.    On September 22, 2006, counsel for Mr. Grimes advised the Debtors, the

Creditors Committee and the Equity Committee that he wanted to file a response to the Status

Report. The Debtors and the Committees refused to agree to a modification of the automatic stay and the injunctions in the confirmation order to allow Mr. Grimes to respond to the Status Report. The Debtors advised that their statement to this Court at the July 27th hearing is irrelevant because they did not move to dismiss the appeal. The Debtors' position is disingenuous. Clearly, the Debtors have asked the Ninth Circuit to dismiss the appeal by advising that they believe that the appeal is now moot. Moreover, the Status Report is misleading because it did not advise the Ninth Circuit that Mr. Grimes objected to the Settlement Motion and appealed the approval of that motion.

9.    Mr. Grimes seeks limited relief from the automatic stay and the injunctions in the confirmation order so that he may respond to the Status Report and any subsequent pleadings filed by the Debtors, the Committees or the Plan Administrator. Section 362(d) of the Bankruptcy Code states, in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> > (1)    for cause, including the lack of adequate protection of an interest in property of such party in interest.

Cause clearly exists here. It is fundamentally unfair for the Debtors to file a misleading report with the Ninth Circuit and then use the provisions of the automatic stay to prevent Mr. Grimes from responding.

WHEREFORE, Mr. Grimes requests the entry of an order modifying the automatic stay and the injunction provisions in the confirmation order to allowing him to file a response to the Status Report (and any other submissions by RNI, any of its successors) or other parties in interest in the Ninth Circuit Appeal.

10017904.WPD                                    3

SMITH, KATZENSTEIN & FURLOW LLP

/s/
David A. Jenkins (932)
Kathleen M. Miller (2898)
800 Delaware Avenue
Post Office Box 410
Wilmington, DE 19899-0410 (Courier 19801)
Telephone (302) 652-8400
Facsimile (302) 652-8405
E-mail: KMiller@skfdelaware.com

ATTORNEYS FOR MR. GRIMES

4

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| RNI WIND DOWN CORPORATION., | ) | |
| et al., | ) | Case No. 06-10110 (CSS) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |

**ORDER GRANTING CHARLES L. GRIMES' MOTION FOR LIMITED**
**MODIFICATION OF THE AUTOMATIC STAY AND/OR CONFIRMATION**
**INJUNCTIONS IN CONNECTION WITH THE NINTH CIRCUIT APPEAL**

The Court, having considered the Motion of Charles L. Grimes for Limited Modification

of the Automatic Stay and/or Confirmation Injunctions in Connection with the Ninth Circuit Appeal

(the "Motion"); and any opposition to the Motion; good and sufficient notice having been given; and

determining that good cause exists.

It is HEREBY ORDERED that:

    1.    The Motion is GRANTED.

    2.    The automatic stay provisions of Section 362 and the injunctions in the order

confirming the Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy

Code Proposed by the Debtors, the Official Committee of Unsecured Creditors and the Official

Committee of Equity Security Holders, as Revised (dated September 12, 2006) are hereby modified

to allow Mr. Grimes to respond the Status Report and any other pleading filed by the Debtors, its

successor or any party in interest.

Date:_____        _____

                                     United States Bankruptcy Judge

10017909.WPD

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of **September, 2006**, a copy of the foregoing

**EMERGENCY MOTION FOR LIMITED MODIFICATION OF THE AUTOMATIC STAY**

**AND/OR CONFIRMATION INJUNCTIONS IN CONNECTION WITH THE NINTH**

**CIRCUIT APPEAL** was served on the following attorneys by email and facsimile:

Michael R. Nestor, Esq.
Kenneth J. Enos, Esq.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
302-571-1253

Neil E. Herman, Esq
Morgan, Lewis & Bockius LLP
101 Park Avenue - 43rd Fl.
New York, NY 10178
212-309-6001

Adam G. Landis, Esq.
Kerri K. Mumford, Esq.
Landis Rath & Cobb LLP
919 Market Street, Suite 600
Wilmington, DE 19801
302-467-4450

William R. Baldiga, Esq
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
617-856-8201

Steven K. Kortanek, Esq.
Jennifer L. Scoliard, Esq.
Klehr Harrison Harvey Branzburg & Ellers
919 Market Street, Suite 1000
Wilmington, DE 19801
302-426-9193

Jeffrey S. Sabin, Esq.
Schulte Roth & Zabel, LLP
919 Third Avenue
New York, NY 10022
212-593-5955

Kathleen M. Miller (ID No. 2898)

**Opening Brief of Appellant
Charles L. Grimes**

**Exhibit 6**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re                   )

RNI WIND DOWN CORPORATION.,   )
et al.,                    )

        Debtors.         )

Chapter 11

Case No. 06-10110 (CSS)

*Related Docket No. 927*

## ORDER GRANTING, IN PART AND CONTINUING IN PART, CHARLES L. GRIMES' MOTION FOR LIMITED MODIFICATION OF THE AUTOMATIC STAY AND/OR CONFIRMATION INJUNCTIONS IN CONNECTION WITH THE NINTH CIRCUIT APPEAL

The Court, having considered the Motion of Charles L. Grimes for Limited Modification of the Automatic Stay and/or Confirmation Injunctions in Connection with the Ninth Circuit Appeal (the "Motion"); good and sufficient notice having been given; and determining that good cause exists.

It is HEREBY ORDERED that:

1.      The automatic stay provisions of Section 362 and the injunctions in the order confirming the Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Official Committee of Unsecured Creditors and the Official Committee of Equity Security Holders, as Revised (dated September 12, 2006)(the "Plan") are modified only to allow Mr. Grimes to file a response to the Status Report[1], in the form provided to the Plan proponents.

2.      The remainder of the Motion is continued to the hearing on September 28, 2006.

---

[1] Terms not defined herein shall have the meaning described in the Motion.
10017979.DOC

3.   This order is effective immediately, notwithstanding the provisions of Fed. Bankr.

R. P. 4001(a)(3).

Date: _September 26, 2006_

_____
United States Bankruptcy Judge

10017979.DOC

**Opening Brief of Appellant
Charles L. Grimes**

**Exhibit 7**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| RNI WIND DOWN CORPORATION., | ) | |
| et al., | ) | Case No. 06-10110 (CSS) |
| | ) | |
| Debtors. | ) | Related Docket No. 927, 955, 957 |
| | ) | |
| | ) | |

**FINAL ORDER GRANTING CHARLES L. GRIMES' MOTION FOR LIMITED
MODIFICATION OF THE AUTOMATIC STAY AND/OR CONFIRMATION
INJUNCTIONS IN CONNECTION WITH
THE NINTH CIRCUIT APPEAL**

WHEREAS, on September 22, 2006 Charles L. Grimes filed a Motion for Limited

Modification of the Automatic Stay and/or Confirmation Injunctions in Connection with the

Ninth Circuit Appeal [Docket No. 927] (the "Motion");

WHEREAS, the Court entered an order on September 26, 2006 granting the Motion in

part and continuing the Motion in part [Docket No. 957] (the "Interim Order");

WHEREAS, the Interim Order modified the automatic stay provisions of Section 362 and

the injunctions in the order confirming the Joint Plan of Reorganization and Liquidation Under

Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Official Committee of

Unsecured Creditors and the Official Committee of Equity Security Holders, as Revised (dated

September 12, 2006)(the "Plan") to allow Mr. Grimes to file a response to the Status Report;[1]

WHEREAS, the Motion seeks further relief from the automatic stay provisions of Section

362 and the injunctions in the order confirming the Plan to allow Mr. Grimes to respond to any

---

[1] Terms not defined herein shall have the meaning described in the Motion.

10017979.DOC

further submissions to the Ninth Circuit;

NOWTHEREFORE, the Court having considered the Motion and finding good cause for the relief requested therein;

IT IS HEREBY ORDERED that:

1.    The Motion is granted.    The automatic stay provisions of Section 362 and the injunctions in the order confirming the Plan are further modified to permit Mr. Grimes to respond to any further submissions filed in the Ninth Circuit by any party in interest and/or to file pleadings or other papers if and as directed by the Ninth Circuit.

Date: _September 27, 2006_

_____
United States Bankruptcy Judge

**Opening Brief of Appellant
Charles L. Grimes**

**Exhibit 8**



**Smith Katzenstein Furlow** LLP

*Attorneys at Law*

September 26, 2006

Craig B. Smith

Robert J. Katzenstein

David A. Jenkins

Laurence V. Cronin

Michele C. Gott

Kathleen M. Miller

Joelle E. Polesky

Roger D. Anderson

Robert K. Beste

Etta R. Wolfe

The Corporate Plaza
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, Delaware 19899
(Courier 19801)
Phone (302) 652-8400
Fax (302) 652-8405
www.skfdelaware.com

Ms. Cathy Catterson, Clerk
United States Court of Appeals
for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

**Re:**     *Watterson v. Pereira, et al., Case No. 05-16588*

Dear Ms. Catterson:

We are counsel to appellant Charles L. Grimes. We write in response to the status report filed by RNI Wind Down Corporation ("RNI") on September 20, 2006.

In the Bankruptcy Court in Delaware, RNI filed a Motion for an Order Pursuant to Rule 9019 Approving the Amendment to the Stipulation and Agreement of Settlement Dated as of November 12, 2004 (the "Settlement Motion"). The Settlement Motion sought Bankruptcy Court approval of a modification of the settlement of the derivative action approved by the United States District Court for the Northern District of California, which is the subject of this appeal. Mr. Grimes objected to the Settlement Motion.

On August 23, 2006, the Bankruptcy Court approved the Settlement Motion. Thereafter, Mr. Grimes timely filed an appeal in the United States District Court for the District of Delaware (the "Delaware Appeal"). The Delaware Appeal is currently pending.

Thus, Mr. Grimes disagrees that this appeal is now moot.

Sincerely,

David A. Jenkins

DAJ/tlc

10017898.WPD

Ms. Cathy Catterson, Clerk
September 26, 2006
Page 2


cc:    Marc M. Umeda, Esq. (via U.S. Mail)
       Eric J. Belfi, Esq. (via U.S. Mail)
       Brian J. Robbins, Esq. (via U.S. Mail)
       John G. Emerson, Esq. (via U.S. Mail)
       Keith F. Park, Esq. (via U.S. Mail)
       Robert L. McKague, Esq. (via U.S. Mail)
       Grant P. Fondo, Esq. (via U.S. Mail)
       Craig D. Martin, Esq. (via U.S. Mail)
       William R. Baldiga, Esq. (via U.S. Mail)
       Rebecca L. Booth, Esq. (via U.S. Mail)

**Opening Brief of Appellant
Charles L. Grimes**

**Exhibit 9**

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

# FILED

OCT 24 2006

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

GREGORY WATTERSON, Derivatively on behalf of Riverstone Networks, Inc on behalf of Riverstone Networks, Inc.,

Plaintiff - Appellee,

CHARLES L. GRIMES,

Intervenor - Appellant,

v.

ROMULUS PEREIRA; et al.,

Defendants - Appellees.

No. 05-16588

D.C. No. CV-03-00637-PJH
Northern District of California,
San Francisco

ORDER

The clerk is in receipt of appellee Riverstone Network, Inc.'s ("RNI") status report and appellant Charles L. Grimes's response to RNI's status report.

The court's March 17, 2006 order was entered in error and shall be vacated. The automatic stay applies when the debtor was the defendant in the proceeding below. *See Ingersoll-Rand Financial Corporation v. Miller Mining Company, Inc.,* 817 F.2d 1424, 1426-27 (9th Cir. 1987). The amended briefing schedule is as follows: the opening brief is due November 24, 2006; the answering brief is due December 26, 2006; and the optional reply brief is due 14 days after service of the answering brief.

No. 05-16588

Court records shall be amended to include Rebecca L. Booth, Morgan,

Lewis & Bocklus LLP, 1701 Market Street, Philadelphia, PA 19103-2921, phone

(215)963-5000; fax (215)963-5001; email: rbooth@morganlewis.com, as RNI's

co-counsel.

For the Court:
CATHY A. CATTERSON
Clerk of the Court

*Alihandra M. Totor*
Alihandra M. Totor
Deputy Clerk
Ninth Cir. R. 27-7/Advisory Note to Rule 27
and Ninth Circuit Rule 27-10

pro 10.16.06

2

**Opening Brief of Appellant
Charles L. Grimes**

**Exhibit 10**



**Smith
Katzenstein
Furlow** LLP

*Attorneys at Law*

The Corporate Plaza
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, Delaware 19899
(Courier 19801)
Phone (302) 652-8400
Fax (302) 652-8405
www.skfdelaware.com

November 21, 2006

**VIA FEDERAL EXPRESS**
Ms. Cathy Catterson, Clerk
United States Court of Appeals
for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

*Re:    Watterson v. Pereira, et al., Case No. 05-16588*

Dear Ms. Catterson:

Pursuant to the Order entered on October 24, 2006 the opening brief of appellant
Charles L. Grimes is due to be filed in this Court by November 24, 2006. I write to
inform the court that this brief was previously filed on November 23, 2005.

Sincerely,

David A. Jenkins
(ID No. 932)

cc:    Marc M. Umeda, Esq. (via U.S. Mail)
Eric J. Belfi, Esq. (via U.S. Mail)
Brian J. Robbins, Esq. (via U.S. Mail)
John G. Emerson, Esq. (via U.S. Mail)
Keith F. Park, Esq. (via U.S. Mail)
Robert L. McKague, Esq. (via U.S. Mail)
Grant P. Fondo, Esq. (via U.S. Mail)
Sandra A. Kearney, Esq. (via U.S. Mail)
Cheryl Pinarchick, Esq. (via U.S. Mail)
Rebecca L. Booth, Esq. (via U.S. Mail)
Robert Scott Dreher, Esq. (via U.S. Mail)
Michael Mee, Esq. (via U.S. Mail)
William S. Freeman (via U.S. Mail)

10019895.WPD

From:   Origin ID:   (302)652-8400
Jeannette Bly
Smith Katzenstein Furlow LLP
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899





Ship Date: 21NOV06
ActWgt: 1 LB
System#: 1115886/INET2500
Account#: S *********

REF: GRIME/06034

Delivery Address Bar Code

SHIP TO:   (415)556-9800          BILL SENDER
**Ms. Cathy Catterson, Clerk**
**United States Court of Appeals**
**Ninth Circuit**
**95 Seventh Street**
**San Francisco, CA 94103**



**PRIORITY OVERNIGHT**                    **WED**
Deliver By:
22NOV06
TRK#   **7906  1289  8400**     FORM
0201
**SFO**      A1

**94103**    -CA-US

**XH NDBA**



---

Shipping Label: Your shipment is complete

1.  Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.

2.  Fold the printed page along the horizontal line.

3.  Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**Opening Brief of Appellant
Charles L. Grimes**                    **Exhibit 11**

**FILED**

UNITED STATES COURT OF APPEALS

NOV 2 4 2006

FOR THE NINTH CIRCUIT

CATHY A. CATTERSON
CLERK, U.S. COURT OF APPEALS

GREGORY WATTERSON, Derivatively
on behalf of Riverstone Networks, Inc on
behalf of Riverstone Networks, Inc.,

Plaintiff - Appellee,

CHARLES L. GRIMES,

Intervenor - Appellant,

v.

ROMULUS PEREIRA; et al.,

Defendants - Appellees.

No. 05-16588

D.C. No. CV-03-00637-PJH
Northern District of California,
San Francisco

ORDER

The Court's October 24, 2006 order is vacated in part. Review of the record

reflects appellee Riverstone Networks, Inc. filed a voluntary petition under Title

11, Chapter 11 of the United States Bankruptcy Code. This case is stayed as to

appellee Riverstone Networks, Inc. only until May 29, 2007. On or prior to the

expiration of the stay, appellee Riverstone Networks shall file a status report.

For the Court:
CATHY A. CATTERSON
Clerk of the Court

Alihandra M. Totor
Deputy Clerk
Ninth Cir. R. 27-7/Advisory Note to Rule 27
and Ninth Circuit Rule 27-10

pro 11.16.06

## CERTIFICATE OF SERVICE

I CERTIFY that on this **14th** day of **December, 2006**, a copy of the foregoing **Opening Brief of Appellant Charles L. Grimes** was served on the following attorneys by first class mail:

Steven K. Kortanek, Esq.                    William R. Baldiga, Esq.
Christopher A. Ward, Esq.                   Brown Rudnick Berlack Israels LLP
Jennifer L. Scoliard, Esq.                    One Financial Center
Klehr Harrison Harvey                         Boston, MA 02111
Branzburg & Ellers LLP
919 Market Street, Suite 1000
Wilmington, DE 19801


David A. Jenkins (ID No. 932)

06034|COS|10020493.WPD