# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re         )
           )
RNI WIND DOWN CORPORATION., )
et al.,         )   Bankruptcy Case No. 06-10110 (CSS)
           )
    Debtors.    )
———————————————————)
           )
CHARLES L. GRIMES    )
           )   Civil Action No.: 06-585 (GMS)
    Appellant    )
           )
  v.       )
           )
RNI WIND DOWN CORPORATION, )
et al.         )
           )
    Appellees.    )
———————————————————)

## APPELLANT CHARLES L. GRIMES' ANSWERING BRIEF IN
## OPPOSITION TO APPELLEES' MOTION TO DISMISS APPEAL

SMITH, KATZENSTEIN & FURLOW, LLP
David A. Jenkins (932)
Michele C. Gott (2671)
Kathleen M. Miller (2898)
800 Delaware Avenue, 10th Floor
PO Box 410
Wilmington, DE 19899 (Courier 19801)
Tel: (302) 652-8400
Fax: (302) 652-8405
Email: DJenkins@skfdelaware.com

January 25, 2007       *Attorneys for Charles L. Grimes*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    The Underlying Derivative Settlement . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    The Ninth Circuit Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      D.    Proceedings In The Bankruptcy Court . . . . . . . . . . . . . . . . . . . . . . . . 10

      E.    This Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      F.    Status of the Ninth Circuit Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . 15

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Celotex Corp. v. Edwards,*
    514 U.S. 300 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Griggs v. Provident Consumer Discount Co.,*
    459 U.S. 56 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 25

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.,*
    445 U.S. 375 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*In re AWC Liquidation Corp.,* 292 B.R. 239 (D. Del. 2003) . . . . . . . . . . . . . . . . . . 20-22

*In re Bialac,*
    694 F.2d 625 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Bryant,*
    175 B.R. 9 (W.D.Va. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Butcher Boy Meat Market, Inc.,*
    10 B.R. 258 (Bankr. E.D. Pa. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Hagel,*
    184 B.R. 793 (9th Cir. BAP 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 27, 28

*In re Kendrick Equipment Corp.,*
    60 B.R. 356 (Bank. W.D. Va. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 26

*In re Maddox,*
    84 B.R. 251 (Bankr. N.D. Ga. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Padilla,*
    222 F.3d 1184 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-27

*In re Sacred Heart Hospital of Norristown,*
    204 B.R. 132 (E.D. Pa. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25

*In re Transtexas Gas Corp.,*
    303 F.3d 571 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22, 25

*In re Wonder Corp. of America,*
    81 B.R. 221 (Bankr. D. Conn. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In the Matter of Statistical Tabulating Corp., Inc.,*
    60 F.3d 1286 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*In the Matter of Urban Development Ltd., Inc.,*
    42 B.R. 741 (Bankr. M.D. Fla. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 24

*Lawrence v. Remes,*
    No. 92-1103, 1993 WL 141066 (6th Cir. Apr. 30, 1993) . . . . . . . . . . . . . . . . . 21

*Main Line Federal Savings and Loan Ass'n v. Tri-Kell, Inc.,*
    721 F.2d 904 (3d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24

*Mid-American Waste Systems, Inc. v. City of Gary, Indiana,*
    49 F.3d 286 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Pratt v. Ventas, Inc.,*
    365 F.3d 514 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*U.S. v. Batka,*
    916 F.2d 118 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Statutes and Other Authorities**                                    **Page(s)**

Fed. R. Civ. P. 23.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

## NATURE AND STAGE OF PROCEEDINGS

Appellant Charles L. Grimes filed this appeal on August 25, 2006 from an order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered pursuant to Bankruptcy Rule 9019 approving an agreement to amend the settlement of a derivative suit (the "Amended Settlement Order") (D.I. 1; B.D.I. 728).[1]

In October 2006, after receiving notice of appointment of a mediator pursuant to this Court's standing order requiring all bankruptcy appeals be submitted to mandatory mediation, the parties jointly sought relief from that order, agreeing that the appeal involved legal issues that were not likely to be resolved by mediation (D.I. 5). This Court granted the relief requested and directed the parties to submit an agreed brief schedule (D.I. 6). Pursuant to a stipulated briefing schedule entered by this Court on November 13, 2006, Mr. Grimes filed his opening brief on the merits of this appeal on December 14, 2006 (D.I. 12).

Five days later, on December 19, 2006, appellees moved to dismiss this appeal, claiming for the first time that the Bankruptcy Court had enjoined Mr. Grimes from continuing to prosecute this appeal from that Court's Amended Settlement Order by entry of an order on September 12, 2006 (18 days *after* this appeal was filed) confirming appellees' plan of reorganization and liquidation (the "Confirmation Order") (D.I. 13).

Pursuant to a stipulated briefing scheduled approved on December 28, 2006, this is Mr. Grimes' answering brief in opposition to appellees' motion to dismiss.

---

[1]The abbreviation "D.I." refers to the docket numbers in this Court and "B.D.I." refers to the docket numbers in the Bankruptcy Court.

## STATEMENT OF FACTS

**A.     Background**

Riverstone Networks, Inc. ("Riverstone") is a Delaware corporation previously headquartered in Santa Clara, California. [2]  Following disappointing financial results in 2002-2003 and an investigation by the Securities and Exchange Commission into its accounting practices, Riverstone became the subject of several lawsuits, including several derivative actions.  The first of those was filed in August 2002 in the Superior Court of California, County of Santa Clara (the "State Court") (*Bruhn v. Pereira*, No. CV-810290) (B.D.I. 453 at ¶ 1).  This derivative complaint made virtually identical allegations to those made in a class action complaint previously filed against Riverstone in the United States District Court for the Northern District of California (the "California District Court") (*Id.*). Defendants demurred and plaintiffs filed an amended complaint in February 2003 (*Id.*).

In April 2003, another derivative suit was filed in the State Court (*Carrico v. Pereira*, No. CV-816188) (B.D.I. 453 at ¶ 2).  The two State Court actions were then consolidated as *In re Riverstone Networks, Inc., Derivative Litigation* (the "State Derivative Action"), and in May 2003, a consolidated derivative complaint was filed (the "Fourth State Derivative Complaint") (*Id.*).  On September 17, 2003, the State Court dismissed the Fourth State Derivative Complaint, stating:

---

[2]On May 24, 2006, Riverstone changed its name to RNI Wind Down Corporation.

> I have a lot of legal conclusions that are strung together in this
> pleading that I don't think satisfy the standard to either raise
> a doubt as to the independence and disinterest of the majority
> of the members of the board of directors, or that this [board]
> could not exercise its business judgment in deciding whether
> or not to initiate legal proceedings in this case.

(*Id.*). The State Court also expressed serious doubts that plaintiff would ever be able to plead

demand futility with the requisite particularity, having failed to do so after four attempts

(*Id.*). The State Court then stayed further proceedings in favor of a complaint which by then

had been filed in the California District Court by Gregory Watterson (*Watterson v. Pereira,*

C.A. No. 03-637) (the "Federal Derivative Action") (B.D.I. 453 at ¶¶ 2-3).

       The allegations in the original complaint in the Federal Derivative Action

were substantially identical to those made in the original complaint in the State Derivative

Action (B.D.I. 453 at ¶ 3). As in the State Derivative Action, defendants moved to dismiss

because plaintiff failed adequately to allege demand futility and to state a cause of action

(*Id.*). Plaintiff filed an amended complaint on November 6, 2003; the amended pleading was

largely a verbatim recitation of allegations in the Fourth State Derivative Complaint, which

by then had been dismissed (*Id.*). Defendants in the Federal Derivative Action again moved

to dismiss, presenting numerous grounds indicating that the amended complaint would suffer

the same fate as its companion Fourth State Derivative Complaint (B.D.I. 453 at ¶¶ 4-5).

**B.**      **The Underlying Derivative Settlement**

       Before briefing on the motion to dismiss was complete, the parties entered

into a stipulation that provided for the settlement of both the State and Federal Derivative

Actions (B.D.I. 402 at Ex. B). In the derivative settlement Riverstone agreed to implement certain corporate governance measures, particularly changes to the composition and practices of its board of directors and the committees of the board (B.D.I. 453 at ¶ 6). In return, Riverstone agreed to pay $1.75 million in fees and expenses to derivative plaintiffs' counsel as a "unitary" part of the settlement (B.D.I. 453 at ¶ 7). The California District Court had jurisdiction over approval of the derivative settlement pursuant to Fed. R. Civ. P. 23.1.

Unlike the typical settlement of a derivative action, where the fee request is separately analyzed by the court pursuant to well-established criteria, the fee agreement in a "unitary" settlement is just one provision of the overall agreement (B.D.I. 453 at ¶ 7, n.3). This tying of the fee to the entire settlement allowed plaintiffs' counsel to hold the derivative settlement hostage to the payment of their fees, forcing the California District Court either to accept the agreed fees or disapprove the entire settlement, which would have forced the parties (and the Court) to litigate a case where neither wished to do so (Ex. E to Declaration of Kathleen M. Miller, B.D.I. 351 ("Miller Dec.") at 32).

By making their fees an agreed-to term of the settlement, plaintiffs' counsel also evaded the heightened level of scrutiny to which fee awards are subjected. In a typical derivative settlement, the parties first present the settlement for court approval under Fed. R. Civ. P. 23.1. If approval is received, counsel for plaintiffs file an application seeking a court award of fees. Approval of the settlement itself turns on whether the settlement taken as a whole is fair, reasonable, adequate, and free from collusion or fraud. (Ex. A. to Miller Dec. at 45-56; Ex. E to Miller Dec. at 13). The subsequent fee application is subject to a

higher standard of review, with the trial court acting in a fiduciary capacity to protect

shareholders and maintain public confidence that derivative litigation is not conducted solely

for the benefit of lawyers (Ex. E to Miller Dec. at 26-31). If the settlement of a derivative

action has not produced a common fund from which counsel may be paid (and here it did

not), counsel seeking fees must first establish that the derivative action was meritorious when

filed and that settlement of the derivative action created a substantial benefit to the

corporation on whose behalf it was brought (Ex. A to Miller Dec. at 45-56; Ex. E to Miller

Dec. at 29-30) If that showing is made, the trial court then must determine a reasonable fee

based on a number of factors (Ex. E. to Miller Dec. at 30-31).[3]

On December 2, 2004, the parties to the State and Federal Derivative Actions

filed an application for preliminary approval of the derivative settlement in the California

District Court (B.D.I. 453 at ¶ 8). At a hearing on January 19, 2005, Judge Phyllis J.

Hamilton refused to grant preliminary approval because of the "unitary" attorneys' fee

provision, which she found "troublesome" and a deliberate attempt to avoid having the

proposed fee award scrutinized under the traditional criteria set forth above ( *Id.*; Ex. A to

Miller Dec. at 45-56). Accordingly, Judge Hamilton ordered further briefing on whether the

court could allow the fees to be included within a unitary settlement (and thus reviewed

under the less stringent standard applied to settlements), instead of having the Court apply

the traditional standard for fee applications (a standard which, Judge Hamilton noted,

---

[3]Where the derivative settlement does not produce a common fund, the court typically uses the lodestar approach (Ex. E to Miller Dec. at 30-31).

plaintiffs' counsel had thus far failed to meet) (*Id.*).

At a subsequent hearing on February 16, 2005, Judge Hamilton was still troubled by the propriety of the unitary settlement and doubtful that plaintiffs' counsel would be able to satisfy the normal standard for a fee award (B.D.I. 453 at ¶ 9; Ex. B to Miller Dec. at 3-5). Nevertheless, she granted preliminary approval and ordered that notice be sent to Riverstone's stockholders, stressing that "any objections that I receive from any shareholders on this settlement will be scrutinized and could very well block final approval" (B.D.I. 453 at ¶ 9; Ex. B to Miller Dec. at 20).

On May 2, 2005, Mr. Grimes, one of Riverstone's largest stockholders, filed an objection to both the unitary settlement approach and the amount of the fees sought by plaintiffs' counsel (B.D.I. 453 at ¶ 10; Ex. J to Miller Dec.).[4] At the same time, he moved to intervene (B.D.I. 453 at ¶ 10). Following additional briefing, on June 1, 2005, Judge Hamilton held a hearing on the application for final approval of the settlement (*Id.*). She began with the following observation:

> It probably comes as no surprise that I still have problems with this case. This case has been very problematic since our hearing in January, and the supplemental briefing in February didn't clear it up much. And frankly I still have a lot of the same problems with the case today notwithstanding yet additional briefs on final approval motion.
>
> . . . .

---

[4]Although Mr. Grimes also believed that the corporate governance provisions in the derivative settlement provided little benefit to Riverstone, he did not believe that the derivative claims had merit. Thus, he did not object to dismissal of the derivative actions (Ex. J to Miller Dec. at 1-2).

As I've stated on several occasions in the past, I am very troubled by the fact that you all are presenting me with a settlement in which the agreed upon attorneys fees is included which pretty much takes away or − inhibits the Court's ability to meaningfully evaluate whether or not the attorneys fees is reasonable.

I'm not satisfied at all with the plaintiffs' attempt to establish some kind of a standard for the Court. I mean I've asked several times what standard applies in this case. The plaintiff's position is not entirely clear, even in this last round of papers, as to whether or not the Court should apply some generalized kind of reasonable fair and adequate standard to the whole settlement which necessarily would include the attorneys fees or whether or not the Court should follow the traditional substantial benefit analysis which would necessitate a showing that the suit was meritorious and that there was some benefit derived to the corporation, and then would require the Court to apply a Loadstar approach to evaluating fees.

(*Id.*; Ex. D to Miller Dec. at 3-4 of June 1, 2005 transcript ("June Tr.")).[5]

Judge Hamilton went on to explain that she was still suspicious that the fee provision had been included as a settlement term to evade her scrutiny of what she termed an "*exorbitant fee request*" (B.D.I. 453 at ¶ 11; Ex. D to Miller Dec. at 38 of June Tr.) (emphasis added). Nevertheless, because she found no authority clearly prohibiting a unitary settlement in a derivative case, [6] Judge Hamilton approved the derivative settlement

---

[5] *See also* B.D.I. 453 at ¶ 10, n.4; Ex. D to Miller Dec. at 18-19 of June Tr. ("Frankly, it seems to me as though this settlement was arrived at and engaged in and agreed to in part to take away from the Court the ability to determine if the fees were reasonable").

[6] Unitary settlements are not permitted in class actions in the Ninth Circuit (Ex. E to Miller Dec. at 34).

(including its provision for attorneys' fees), as fair, reasonable and adequate using established settlement standards (*Id.*). At the same time, however, she granted Mr. Grimes' motion to intervene and invited him to appeal her approval of the derivative settlement, stating "*[i]t seems to me that . . . this is a perfect case for the Ninth Circuit to make a determination as to whether or not this kind of settlement should be permitted in a derivative action*" (B.D.I. 453 at ¶ 11; Ex. D to Miller Dec. at 39 of June Tr.) (emphasis added).

On July 22, 2005, the California District Court entered the First Settlement Order implementing this ruling, again encouraging Mr. Grimes to appeal:

> *The court would welcome guidance from the Ninth Circuit on the question of the propriety of unitary settlements in shareholder derivative actions* where the provision regarding payment of fees is a term of the settlement agreement; as well as on the question of the standard to be applied by the court in evaluating the fairness of such a settlement agreement that includes an attorneys' fees provision.

(B.D.I. 453 at ¶ 11; Ex. D to Miller Dec.) (emphasis added).

C.    **The Ninth Circuit Appeal**

On August 11, 2005, Mr. Grimes filed an appeal from the First Settlement Order in the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit") (B.D.I. 453 at ¶ 12; Ex. D to Miller Dec.). On November 25, 2005, he filed his opening brief in support of that appeal (B.D.I. 453 at ¶ 12; Ex. E to Miller Dec.).

Debtors and plaintiffs' counsel, however, have thus far managed to avoid fighting that appeal on the merits. Riverstone and plaintiffs' counsel (the latter no doubt

fearing what could happen to unitary settlements once the Ninth Circuit took a close look at them) first purported to "settle" the appeal among themselves. In their purported "settlement," plaintiffs' counsel agreed to unbundle their fee award from the overall derivative settlement and file a separate fee application before Judge Hamilton (B.D.I. 453 at ¶ 12). To implement this "settlement," plaintiffs' counsel, on behalf of all appellees including Riverstone, filed a joint motion to dismiss the Ninth Circuit appeal claiming that appellees' unilateral agreement to undo the portions of the derivative settlement at issue on appeal mooted that appeal (B.D.I. 453 at ¶ 12; Exs. F and H to Miller Dec.).[7]

Mr. Grimes, the only appellant, opposed the motion to dismiss (Ex. G to Miller Dec.). As he explained to the Ninth Circuit, because the derivative settlement was not effective until approved by the California District Court under Fed. R. Civ. P. 23.1, it could not be undone once that approval was obtained without vacating the order approving it (Ex. G to Miller Dec. at 2, 11). In seeking to dismiss the appeal, the appellees never addressed the standards for vacating the California District Court's First Settlement Order - standards they could not satisfy in any event (*see* Ex. G to Miller Dec. at 12-17). Thus, the only proper way to undo the derivative settlement was to have the proper appellate court (here, the Ninth Circuit) overturn the California District Court's First Settlement Order that had approved the derivative settlement.

---

[7]Plaintiffs' counsel did appear to understand that, because the Ninth Circuit appeal had divested the California District Court of jurisdiction, they needed to have that appeal dismissed before the California District Court could do anything.

On March 17, 2006, the Ninth Circuit denied the motion to dismiss the appeal, without prejudice to appellees raising the issue again in the briefing on the merits (B.D.I. 453 at ¶ 13; Ex. K to Miller Dec.). On March 29, 2006, the Ninth Circuit stayed the appeal after it was informed that Riverstone and its affiliates (collectively "Debtors") had filed voluntary petitions for relief in the Bankruptcy Court (B.D.I. 453 at ¶ 13).

**D.    Proceedings In The Bankruptcy Court**

On February 7, 2006, Riverstone filed in the Bankruptcy Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code (D.I. 13 at Ex. D). Thereafter, Riverstone and plaintiffs' counsel again tried to settle the Ninth Circuit appeal, this time bypassing both Judge Hamilton and the Ninth Circuit.

Specifically, on June 8, 2006, Debtors filed a motion pursuant to Bankruptcy Rule 9019 asking the Bankruptcy Court to bless an agreement among Debtors and plaintiffs' counsel to amend the derivative settlement previously approved by Judge Hamilton (the "Settlement Motion") (B.D.I. 402). Pursuant to the amendment, Debtors and plaintiffs' counsel agreed that the latter would repay to Debtors $950,000 of the fees they had received under the First Settlement Order and Debtors would file a motion to dismiss the Ninth Circuit appeal (B.D.I. 402 at ¶ 15 (b), (d)). Thus, if the Bankruptcy Court approved the amendment, plaintiffs' counsel would retain a fee of $800,000 for their work in the State and Federal Derivative Actions, still without any court having decided, under established fee standards, that this fee was reasonable for their work in those actions. If this tactic succeeds, plaintiffs' counsel would get away with the very practice that is the subject of the Ninth

Circuit appeal.

Mr. Grimes objected to the Settlement Motion on several grounds (B.D.I. 453 and 548). As he explained to the Bankruptcy Court, the derivative settlement existed only by virtue of the California District Court's First Settlement Order, which was on appeal to the Ninth Circuit (B.D.I. 453 at ¶ 20; B.D.I. 548 at 13). By asking the Bankruptcy Court to approve an amendment to the derivative settlement, Debtors were in essence asking it to vacate or reverse the First Settlement Order, something that Court did not have jurisdiction to do--only the Ninth Circuit (or, in the proper circumstances, the United States Supreme Court) could do so (*Id.*). Mr. Grimes also explained that Debtors and plaintiffs' counsel could not settle the Ninth Circuit appeal without Mr. Grimes' participation, as he is the only appellant in that proceeding (B.D.I. 453 at ¶ 21; B.D.I. 548 at 4-9).[8] Finally, Mr. Grimes

---

[8]Debtors have been inconsistent on whether their agreement was an attempt to settle the Ninth Circuit appeal. Initially they admitted it was. B.D.I. 402 at ¶ 24 ("...it is important to remember that the Debtors are seeking this Court's approval of a Stipulation that resolves the Circuit Court Appeal, which relates to a matter already approved by the California District Court..."), at ¶ 26 (stating that approval of the Settlement Motion would avoid the "burdens, uncertainties, delay and expense" associated with the Ninth Circuit appeal); B.D.I. 456 at ¶ 2 ("First, the [Lift Stay] Motion should be denied because the Debtors have recently entered into a stipulation . . . resolving the Ninth Circuit Appeal"), at ¶ 3 ("However, the Debtors have already resolved the Circuit Court Appeal, with a result that yields a return of $950,000 to these estates"); B.D.I. 489 at 20 (the settlement "resolves the two open items that he has appealed"), at 40 ("This is a settlement designed to address exactly that issue, to exact – to moot the very issues that are on appeal..."), at 41 ("we would have the right to withdraw, settle, dismiss, whatever we want to do with the appeal"). However, at a hearing on the Settlement Motion, apparently became concerned about Mr. Grimes' status as the appellant in the Ninth Circuit, Debtors appeared to change their position, claiming that they were not settling that appeal, only amending the underlying settlement contract (B.D.I. 782 at 32).

argued that Debtors had not made a showing that the proposed "settlement" was reasonable under Bankruptcy Rule 9019 (B.D.I. 453 at ¶¶ 22-41).

The Bankruptcy Court held a hearing on June 30, 2006 (B.D.I. 489). At that time, the Bankruptcy Court was "extremely troubled" by the Settlement Motion (B.D.I. 489 at 63-64). The Bankruptcy Court appeared to agree that it likely did not have jurisdiction to approve the amendment to the derivative settlement, stating:

> I have serious reservations on whether I have jurisdiction. And I think the key issue here is the Rule 23.1 derivative nature of the underlying lawsuit in California and the Court-approved settlement in California. And the fact that the judge who even approved that settlement has been divested of jurisdiction over that settlement by the appeal.
>
> And if that judge doesn't have jurisdiction, I'm really constrained to understand how I have jurisdiction.
>
> The issue of the wild card there, of course, is the overreaching powers granted by Congress to Bankruptcy Court. And the broad – extremely broad 541 property of the estate provisions.

(B.D.I. 489 at 64-65).[9]

The Bankruptcy Court was similarly concerned about approving what was essentially a settlement of the Ninth Circuit appeal without the participation of the appellant:

> I'm very troubled, though on three issues: One, whether or not this is – even is a settlement. The fact that Mr. Grimes is not a party to this settlement, but is a party to the pending appeal in the 9th Circuit, and is clearly appropriately a party in the

---

[9] *See also* B.D.I. 489 at 40 ("And why – and why am I going to do something that the 9th Circuit who has – clearly has jurisdiction, why should I step in and try to do what you already were unsuccessful in achieving with that Court that has the appeal?").

> pending appeal in the 9th Circuit, and the . . . if not direct, the
> clearly contemplated and indirect effect of the settlement is to
> moot the appeal, and he's not a party to the settlement that's
> mooting his action. . . I'm very concerned about that.

(B.D.I. 489 at 64). *See also* B.D.I. 489 at 43 ("The [California District] Court below said,

all right, Mr. Grimes can do the appeal. Obviously the debtor's not going to do it. Now he's

a party to it. You can't pull the rug out from under him"), at 41 (recognizing that debtors had

no ability to simply dismiss the appeal because debtors are "not the appellant").

The Bankruptcy Court thus requested supplemental briefing on these issues.

*See* B.D.I. 489 at 65 ("whether there's a settlement in place that Mr. Grimes is not a party;

whether I have jurisdiction, and I would urge the parties to focus on 23.1 and 541...").[10] The

Bankruptcy Court held a second hearing on July 27, 2006 (D.I. 782). Thereafter, despite its

earlier concerns, by Memorandum Opinion and Final Order both dated August 23, 2006

(referred to in this brief as the Amended Settlement Order) (D.I. 711 and 712), the

Bankruptcy Court granted the Settlement Motion, stating:

> This Court finds that it has jurisdiction to consider the
> Amended Settlement under Bankruptcy Rule 9019; Mr.
> Grimes is not a necessary party to the Amended Settlement;
> and the Court will not abstain from considering the 9019
> Motion because principles of comity are not invoked and the
> standard for permissive abstention is not satisfied. The Court

---

[10]It also requested that the parties brief whether, even if the Bankruptcy Court had
jurisdiction, it should defer to the Ninth Circuit under principles of comity. *See* B.D.I. 489
at 65 (questioning whether "even if I do have jurisdiction, it's appropriate for me to, in effect,
step on the toes of the 9th Circuit Court of Appeals and settle their proceeding out from
under them"). However, the Bankruptcy Court's determination on the issue of comity is not
on appeal.

> further finds that the Debtors have satisfied the standard under
> Bankruptcy Rule 9019 and the Amended Settlement will be
> approved.

(B.D.I. 711 at 6-7).

### E.    This Appeal

On August 25, 2006, Mr. Grimes filed this appeal from the Amended

Settlement Order (D.I. 1; B.D.I. 728).  At issue in this appeal is whether the Bankruptcy

Court had jurisdiction to amend the derivative settlement; whether Debtors and plaintiffs'

counsel could enter into an agreement to resolve the Ninth Circuit appeal without Mr.

Grimes' consent; and whether the amendment to the settlement was reasonable.

*While this appeal was pending,* on September 12, 2006, the Bankruptcy Court

entered the Confirmation Order approving Debtors' plan of reorganization and liquidation

(D.I. 13 at Ex. J).  As is typical, the Confirmation Order contains a discharge injunction at

paragraph 49, which provides, in relevant part, as follows:

> On and after the Confirmation Date, except as provided in the
> Plan or this Confirmation Order, all Persons that have held,
> currently hold or may hold a Claim, Equity Interest, or other
> debt or liability that is addressed in the Plan are permanently
> enjoined from ...(I) commencing or continuing in any manner
> any action or other proceedings against the Debtors or the
> Reorganized Debtors or their respective properties that was or
> could have been commenced prior to the Effective Date.

Similarly, Section 6.10 of the plan states, in relevant part:

> ...there shall be in place with regards to the Assets and any
> Claims against the Debtors or the Reorganized Debtors, their
> Estates, the Liquidating Trust or any Assets of the foregoing
> a permanent injunction...(ii) permanently enjoining all

> Persons from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any Claim, debt, right or Cause of Action against the Debtors or their Assets.

(D.I. 13 at Ex. E).[11]

Pursuant to a stipulated briefing schedule, Mr. Grimes filed his opening brief on the merits of this appeal on December 14, 2006 (D.I. 12). On December 19, 2006, Debtors filed a motion to dismiss this appeal (D.I. 13). In their motion, Debtors claim that the Bankruptcy Court enjoined Mr. Grimes from prosecuting this appeal from that Court's Amended Settlement Order based on the discharge injunctions in the Confirmation Order and plan (entered *after* this appeal was filed). Even though the Confirmation Order was entered on September 12, 2006, at no time prior to filing their motion to dismiss did Debtors ever complain to Mr. Grimes or his counsel that they believed Mr. Grimes was violating the injunctive provisions of the Confirmation Order and plan by pursuing this appeal.[12]

**F.    Status of the Ninth Circuit Appeal**

On September 20, 2006, Debtors filed a status report in the Ninth Circuit advising it that the Bankruptcy Court (1) had entered the Amended Settlement Order (which

---

[11]Thus, to the extent Debtors suggest that the Confirmation Order and plan "expressly" enjoin *Mr. Grimes* from prosecuting *this particular appeal* (D.I. 13 at 4, 9), they do not.

[12]The schedule for briefing on the merits stated that it did not preclude Debtors from filing a motion to dismiss. However, when negotiating that schedule, Debtors did not indicate to Mr. Grimes' counsel that they believed the Confirmation Order precluded this appeal. If they had, one would think they would have said so.

they believed mooted the Ninth Circuit appeal), and (2) entered the Confirmation Order (which Debtors believed permanently enjoined prosecution of the Ninth Circuit appeal) (D.I. 12 at Ex. 4). Debtors neglected, however, to advise the Ninth Circuit that this appeal from the Amended Settlement Order was pending (and indeed, had been pending prior to entry of the Confirmation Order).

After Mr. Grimes advised the Ninth Circuit of the facts surrounding this appeal, the Ninth Circuit reinstated the briefing schedule in that Court (D.I. 12 at Exs. 8-9). On November 21, 2006, Mr. Grimes informed the Ninth Circuit that his opening brief had been filed the previous year (D.I. 12 at Ex. 10). Subsequently, on November 24, 2006, the Ninth Circuit revised its earlier order and stayed that appeal, *as to Riverstone only* (D.I. 12 at Ex. 11).

On December 15, 2006, Riverstone moved to dismiss the Ninth Circuit appeal contending that the Confirmation Order and plan enjoin prosecution of that appeal because they enjoin continuation of any actions against Debtors or their property (*see* D.I. 13 at n.2; a copy of Debtors' motion to dismiss in the Ninth Circuit is attached as Ex. A (w/o exhibits)). *Surprisingly*, nowhere in that motion do Debtors mention the existence of this appeal.

On January 18, 2007, Mr. Grimes filed his opposition to Riverstone's motion to dismiss in the Ninth Circuit (attached as Ex. B (w/o exhibits)). As Mr. Grimes explained to the Ninth Circuit, there is no evidence that the Bankruptcy Court intended for the Confirmation Order or plan to permanently enjoin that appeal. When the Bankruptcy Court

entered the Confirmation Order, it knew of the appeal from its Amended Settlement Order pending in this Court.  It also knew that the grounds for this appeal are Mr. Grimes' contentions that the Bankruptcy Court had no jurisdiction to enter the Amended Settlement Order (the vehicle by which Debtors claim to have mooted the Ninth Circuit appeal), and that Debtors could not resolve the Ninth Circuit appeal without Mr. Grimes.  The Bankruptcy Court also certainly was aware that if Mr. Grimes is successful in this appeal, the Amended Settlement Order will be reversed and the matter remanded to the Bankruptcy Court.  If the Bankruptcy Court had no jurisdiction to enter the Amended Settlement Order, the only way that the issue of the attorneys' fees paid to plaintiffs' counsel ever will be resolved is through the Ninth Circuit appeal.  Thus, the Bankruptcy Court will be compelled to grant Mr. Grimes relief from the injunctive provisions of the Confirmation Order and plan (to the extent they apply to the Ninth Circuit appeal) and allow the Ninth Circuit appeal to proceed.

Accordingly, Mr. Grimes has requested that if the Ninth Circuit determines that the injunctive provisions in the Confirmation Order and plan compel a continued injunction against that appeal, that it wait for resolution of this appeal before deciding Debtors' motion to dismiss the Ninth Circuit appeal.

## <u>SUMMARY OF ARGUMENT</u>

The Bankruptcy Court cannot preclude appellate review of an order entered in a bankruptcy proceeding by entering a subsequent order in the same proceeding that purports to enjoin the pending appeal of that prior order.

## **ARGUMENT**

Debtors' motion to dismiss relies entirely on their contention that the Bankruptcy Court's Confirmation Order and plan approved by that Order, which were entered *after* Mr. Grimes filed this appeal from the Bankruptcy Court's earlier Amended Settlement Order enjoin continued prosecution of this appeal. Not surprisingly, Debtors cite no authority that the Confirmation Order did (or even could) have the sweeping effect for which it is cited.

Initially, there is no evidence that the Bankruptcy Court ever intended the Confirmation Order's injunction provision to bar this then-pending appeal, nor have Debtors acted as if they really believe that the Bankruptcy Court did so intend. If Debtors really believed their current position, they should have gone directly and immediately to the Bankruptcy Court to advise it that Mr. Grimes was violating its injunction.[13] They have not done so. Instead, they waited until December 19, 2006 (three months after the Bankruptcy Court's Confirmation Order was entered and five days after Mr. Grimes filed his opening brief on the merits of this appeal) to raise this issue.

More importantly, any attempt by the Bankruptcy Court to enter an order barring this already-pending appeal from that Court's Amended Settlement Order would be void. It is a fundamental principle of federal civil procedure that the filing of this appeal

---

[13] At the very least, we would have expected a telephone call or letter informing us that we were in violation of the injunction by continuing with this appeal, and that the appeal should be dropped immediately. No such warning was ever given.

divested the Bankruptcy Court of jurisdiction over matters related to the appeal. As explained by the United States Supreme Court in *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982):

> The filing of a notice of appeal is an event of jurisdictional significance-it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.

This Court recognized that same principle in *In re AWC Liquidation Corp.*, 292 B.R. 239 (D. Del. 2003) where it determined that it was without jurisdiction to stay its order affirming a bankruptcy court order disallowing a proof of claim because the claimant had appealed this Court's order before seeking the stay. The Court reasoned, in part:

> It is a fundamental tenet of federal civil procedure that – subject to certain, defined exceptions – the filing of a notice of appeal from the final judgment of a trial court divests the trial court of jurisdiction and confers jurisdiction upon the appellate court.

292 B.R. at 242, quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 578-79 (5th Cir. 2002), and citing, among others, *U.S. v. Batka,* 916 F.2d 118, 120 (3d Cir. 1990) (district court was without jurisdiction to consider a motion for a reduction of sentence after appeal was filed in keeping with "the general principle that when an appeal is taken the appellate court obtains exclusive jurisdiction over the aspects of the case involved in the appeal"). *See also Main Line Fed. Sav. and Loan Ass'n v. Tri-Kell, Inc.,* 721 F.2d 904, 906 (3d Cir. 1983) ("Filing a notice of appeal automatically transfers jurisdiction from the district court to the appellate courts").

This principle is designed to preclude interference from the court whose decision is under review to preserve the integrity of the appellate process and prevent the chaos that would result if concurrent jurisdiction were permitted. *See In re Hagel,* 184 B.R. 793, 798 (9th Cir. BAP 1995) (emphasis added) ("Underlying this principle is a concern for ensuring the integrity of the appellate process [citation omitted]. *To this end, a trial court may not interfere with the appeal process or with the jurisdiction of the appellate court*"); *Lawrence v. Remes,* No. 92-1103, 1993 WL 141066, at *3 (6th Cir. Apr. 30, 1993) (attached as Ex. C) ("This rule is clearly necessary to prevent the procedural chaos that would result if concurrent jurisdiction were permitted") (citation omitted); *In re Sacred Heart Hosp. of Norristown,* 204 B.R. 132, 143 (E.D. Pa. 1997) ("This rule is designed to prevent interference from the lower court while the appeal is pending and to conserve judicial resources by having only one court at a time review issues"); *In re Kendrick Equip. Corp.,* 60 B.R. 356, 358 (Bank. W.D. Va. 1986) ("In order to assure the integrity of the appeal process, it is imperative that the lower court take no action which might in any way interfere with the jurisdiction of the appeal court"); *In the Matter of Urban Dev. Ltd., Inc.,* 42 B.R. 741, 743 (Bankr. M.D. Fla. 1984) (same).

The principle "applies with equal force to bankruptcy cases." *In re AWC Liquidation Corp.,* 292 B.R. at 242. Although the nature of bankruptcy proceedings often favors greater procedural flexibility,

> these principles of flexibility do *not* permit a bankruptcy court to enter an order addressing a postjudgment motion when the bankruptcy court lacks jurisdiction over the case (or over the

> portion of the case addressed in the postjudgment motion
> simply because prompt disposition of the motion might be
> desirable from an efficiency standpoint.    Such pragmatic
> concerns cannot 'outweigh' a jurisdictional defect.

*Id.* at 243, quoting *In re Transtexas Gas Corp.,* 303 F.3d at 580 (emphasis in original). *See also In re Wonder Corp. of America,* 81 B.R. 221, 224 (Bankr. D. Conn. 1988) ("the filing of a notice of appeal to a district court divests a bankruptcy court of jurisdiction to proceed with respect to matters raised by such appeal").[14]

Debtors' motion to dismiss ignores all of this.  To the contrary, it implicitly contends that the Bankruptcy Court *can* interfere with appellate review of its own order by simply entering a subsequent order enjoining such review.[15]  Not surprisingly, Debtors cite nothing to support this implicit contention.  Other courts, however, have pointed out the absurdity of such a notion.

For example, in *In the Matter of Statistical Tabulating Corp., Inc.,* 60 F.3d 1286 (7th Cir. 1995), during the pendency of the government's appeal to the district court from an order of the bankruptcy court determining priority of creditors, the debtor's assets were liquidated and the bankruptcy court dismissed the bankruptcy proceeding (the government did not formally object to the dismissal, although it did advise the bankruptcy

---

[14]The bankruptcy court, however, does retain jurisdiction "to address elements of the bankruptcy proceeding that *are not the subject of that appeal.*" *In re Transtexas Gas Corp.,* 303 F.3d at 580, n.2 (emphasis added).

[15]As explained above, we have no reason to believe that the Bankruptcy Court *does* think that it has the power to enjoin appellate review of its orders.

court of the pending appeal). After the district court ruled in the government's favor in the

pending appeal, the government thereafter moved to reopen the bankruptcy case. The

Bankruptcy Court refused to do so and the district court affirmed that decision. The Court

of Appeals for the Seventh Circuit then rejected the argument that the bankruptcy court's

dismissal had deprived the district court of jurisdiction to rule on the pending appeal, stating:

> Furthermore, the general rule that when the underlying cases
> is dismissed, all related proceedings are dismissed is clearly
> in tension with the general rule that the filing of a notice of
> appeal divests a lower court of jurisdiction over the matter on
> appeal. . . .[citations omitted] *In the instant case, the integrity*
> *of the appellate process is at serious risk if a bankruptcy*
> *court can deprive a district court of jurisdiction over an*
> *appeal by simply dismissing the underlying bankruptcy.*

60 F.3d at 1289 (emphasis added).

Similarly, in *In the Matter of Urban Development Ltd., Inc.,* 42 B.R. 741, a

bankruptcy court's order granting a mortgagee relief from the automatic stay to proceed with

a foreclosure action was on appeal when the debtor filed an adversary complaint seeking to

enjoin foreclosure. The bankruptcy court dismissed the adversary complaint, stating: "there

is hardly any doubt that filing the Notice of Appeal effectively divested this court of

jurisdiction over any controversies relating to the issues involved in the appeal." 42 B.R. at

743. It further explained:

> This conclusion is inescapable when one considers the
> ensuing result if the injunctive relief is granted which would
> prohibit [the mortgagee] to pursue its foreclosure action, the
> very right it obtained from this Court where the stay was
> lifted, the right challenged by the appeal of the Debtor. *Thus,*
> *it is clear that if this court would grant the injunctive relief*

> *sought by the Debtor, this would in effect not only frustrate*
> *but for practical purposes moot out the appeal and would, in*
> *fact, serve as a substitute for the appeal process. There is no*
> *basis in law or logic to accept this proposition.  On the*
> *contrary, it is expressly prohibited by case law.* [citations
> omitted] While the bankruptcy court has a wide latitude to
> reconsider and vacate its own prior decisions, *it may not do*
> *anything which has any impact on the order on appeal.*

(*Id.* at 744) (emphasis added).

Numerous other cases agree that a bankruptcy court does not have jurisdiction to enter an order regarding matters on appeal from that bankruptcy court to an appellate court.  For example, in *Main Line Federal Savings and Loan Ass'n,* 721 F.2d 904, the district court  dismissed as moot an appeal from a bankruptcy court's lifting of the automatic stay to allow foreclosure of a lien against debtor.  In dismissing the appeal, the district court relied on an order entered by the bankruptcy court while the appeal was pending.  The Court of Appeals for the Third Circuit found that the bankruptcy court was without jurisdiction to enter its second order because of the pending appeal and thus "the district court's dismissal was erroneously predicated upon an invalid order of the bankruptcy court." 721 F.2d at 905.

In *In re Padilla,* 222 F.3d 1184 (9th Cir. 2000), debtors appealed a bankruptcy court's order dismissing a bankruptcy proceeding as not having been filed in good faith. After the bankruptcy appellate panel reversed and remanded for reinstatement of the petition, the trustee appealed that decision to the Ninth Circuit.  While the trustee's appeal was pending, the bankruptcy court discharged debtor's debts and closed the case.  Debtor then argued that the discharge mooted the trustee's appeal.  The Ninth Circuit disagreed,

reasoning that the bankruptcy court was without jurisdiction to discharge the debts because the trustee's appeal had divested it of control over those aspects of the case involved in the appeal, and thus its discharge order was null and void. *In re Padilla*, 222 F.3d at 1189-90, citing among others, *Griggs,* 459 U.S. 56.

In *In re Bialac*, 694 F.2d 625 (9th Cir. 1982), a creditor obtained relief from the automatic stay to foreclose on a note. Debtor appealed and while that appeal was pending obtained an injunction from another bankruptcy court judge restraining the sale of debtor's property. The Ninth Circuit affirmed the bankruptcy appellate panel's order vacating the injunction on the grounds that the "[t]he pending appeal divested the lower court of jurisdiction to proceed further in the matter." 694 F.2d at 627.

In *In re Transtexas Gas Corp.,* 303 F.3d 571, state taxing authorities filed an appeal from a confirmation order raising an issue of the interest rate applicable to their claims. While that appeal was pending, the bankruptcy court entered a supplemental order reiterating the interest rate applicable to the claims. The Court of Appeals for the Fifth Circuit found that the district court erred in affirming the supplemental order because the bankruptcy court had no jurisdiction to enter an order regarding the interest rate because of the taxing authorities' pending appeal on that very issue. 303 F.3d at 579-582.

In *In re Sacred Heart Hospital,* 204 B.R. 132, the bankruptcy court entered an order denying a defendant's assertion of sovereign immunity as a defense in an adversary proceeding brought by debtor. While its order was on appeal, the bankruptcy court entered a final declaratory judgment precluding the defendant from asserting the defense. The

district court vacated the final judgment because the bankruptcy court had been divested of jurisdiction to enter it by defendant's prior filed notice of appeal.

Finally, in *In re Kendrick Equipment Corp.,* 60 B.R. 356, debtors appealed to the district court from a bankruptcy court order granting a creditor's motion to lift the automatic stay. While that appeal was still pending, debtors asked the bankruptcy court to re-impose the automatic stay. The bankruptcy court found that it did not have jurisdiction to do so, stating that it "should not entertain any request which touches directly or indirectly on the issues presented in the appeal or which might otherwise interfere with the integrity of the appeal process." 60 B.R. at 359. *See also In re Butcher Boy Meat Mkt., Inc.,* 10 B.R. 258 (Bankr. E.D. Pa. 1981) (denying motion for reconsideration of order of dismissal because appeal of that order to district court divested bankruptcy court of subject matter jurisdiction); *In re Bryant,* 175 B.R. 9 (W.D. Va. 1994) (vacating bankruptcy court's order entered while appeal was pending in the Court of Appeals for the Fourth Circuit from order of district court reversing in part prior order of bankruptcy court); *In re Maddox,* 84 B.R. 251, 255 (Bankr. N.D. Ga. 1987) (where creditor's appeal was pending from bankruptcy court order regarding her claim, treatment under the plan and objections to confirmation of the plan, "subsequent bankruptcy court orders were subject to her rights on appeal").

Debtors may argue that, despite all of the above, the Bankruptcy Court still retained jurisdiction to enforce or implement the 9019 Order that is currently on appeal. *See In re Padilla,* 222 F.3d at 1190 (on appeal, "[a]bsent a stay or supersedeas, the trial court also retains jurisdiction to implement or enforce the judgment or order but may not alter or

expand upon the judgment"); *In re Hagel,* 184 B.R. at 798 (while "the trial court may not interfere with the appeal process or with the jurisdiction of the appellate court," it "retains jurisdiction to implement or enforce the order from which the appeal is taken").

Such an argument, however, would not save Debtors here. An attempt to enjoin this appeal through the discharge provision of the Confirmation Order is not merely an effort to enforce or implement a judgment, but rather would seek to expand upon the Amended Settlement Order by enjoining any appeal from that Order. A similar issue was addressed in *In re Padilla, supra.* There, the Ninth Circuit found that the bankruptcy court's discharge of debts and closure of the case was not the mere implementation or enforcement of the bankruptcy appellate panel's remand for reinstatement of the debtor's petition. Rather, that discharge order "drastically changed the status quo and amounted to a final adjudication of the substantial rights directly involved in the appeal." 222 F.3d at 1190. Here, if the discharge injunction enjoins the appeal, it would drastically change the status quo, affecting Mr. Grimes' very right to appeal.[16]

The limits of the Bankruptcy Court's jurisdiction to implement or enforce its prior order is further illustrated in *In re Hagel,* 184 B.R. 793. There, debtors appealed a decision of a bankruptcy court, which (1) refused to confirm a proposed plan that failed to include social security disability payments for distribution to creditors, and (2) gave debtors

---

[16]Nor did Mr. Grimes need to move to stay the Confirmation Order to preserve his appeal. Such a motion is necessary only to halt action that a court is empowered to take in the first place. *In re Padilla,* 222 F.3d at 1190.

a deadline to file a new plan. Debtors appealed to the bankruptcy appellate panel. While that appeal was pending, the bankruptcy court dismissed the bankruptcy proceeding when debtors failed to file a new plan within the deadline set by the order under appeal. Debtors then appealed that order. In a decision addressing both the merits of the appeal from the original bankruptcy order and the appeal from the subsequent order of dismissal, the bankruptcy appellate panel affirmed the dismissal order. In doing so, it explained that while a pending appeal divests the trial court of jurisdiction over matters related to the appeal, "the trial court retains jurisdiction to implement or enforce" the order from which the appeal is taken. *In re Hagel*, 184 B.R. at 798. The panel went on to explain, however, that

> this is true because in implementing an appealed order, *the court does not disrupt the appellate process so long as its decision remains intact for the appellate court to review.* [citation omitted] Accordingly, courts have recognized a distinction between acts undertaken to enforce the judgment, which are permissible, and acts which expand upon or alter it, which are prohibited.

(*Id.*) (emphasis added).

Here, Debtors are trying to use the Bankruptcy Court's Confirmation Order to disrupt the appellate process, arguing that because of the later-filed Confirmation Order the Amended Settlement Order is no longer intact for appeal. The Bankruptcy Court's jurisdiction does not extend that far.

Debtors' motion contains no authority to the contrary. None of the cases upon which they rely involved an attempt to use a discharge injunction in a confirmation order entered by a bankruptcy court to bar a pending appeal from a prior order of that same court

in the bankruptcy proceeding (D.I. 13 at 10-11). Thus, none involved a bankruptcy court (or any trial court) enjoining appellate review of its own order, which is the power that Debtors seek to give to the Confirmation Order here. Debtors also misapply the collateral bar doctrine in support of this effort, claiming that because Mr. Grimes did not appeal the Confirmation Order he cannot collaterally attack it by pursuing this appeal (D.I. 13 at 10-11).

Mr. Grimes, however, is not collaterally attacking the Confirmation Order in this appeal. He contends only that to the extent the Confirmation Order includes a discharge injunction, that provision does not apply (nor was it intended to apply) to this prior pending appeal from the Bankruptcy Court's Amended Settlement Order.

Moreover, if the Bankruptcy Court did intend to apply the injunctive provision here, the collateral bar doctrine does not preclude Mr. Grimes from arguing that the Confirmation Order is void in that respect. As recognized by the very cases upon which Debtors rely, the collateral bar doctrine provides that "persons subject to an injunctive order issued by a court *with jurisdiction* are expected to obey that decree until it is modified or reversed even if they have proper grounds to object to the order." *Celotex Corp. v. Edwards,* 514 U.S. 300, 306 (1995) (emphasis added), *quoting GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.,* 445 U.S. 375, 386 (1980). *See also Pratt v. Ventas, Inc.,* 365 F.3d 514, 520 (6th Cir. 2004) (same).

In other words, the collateral bar doctrine requires that an injunction be honored only if the issuing court was acting with jurisdiction. *Pratt,* 365 F.3d at 520, citing *Celotex,* 514 U.S. at 310. For that reason, in *Pratt,* the Court of Appeals for the Sixth Circuit

found that "the district court should not have dismissed the plaintiffs' case under the collateral attack doctrine without first determining that the Delaware bankruptcy court in fact had jurisdiction to enter the Confirmation Order." 365 F.3d at 520.[17]

Here, as explained above, when the Bankruptcy Court entered the Confirmation Order, it had no jurisdiction over matters related to this appeal. Thus, the collateral bar doctrine does not apply to any injunction related to this appeal that might be contained in the Confirmation Order.

## CONCLUSION

For these reasons, Debtors' motion to dismiss should be denied and the briefing schedule on the merits reinstated.

SMITH, KATZENSTEIN & FURLOW, LLP

David A. Jenkins (ID No. 932)
Michele C. Gott (ID No. 2671)
Kathleen M. Miller (ID No. 2898)
800 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Tel: (302) 652-8400
Email: DJenkins@skfdelaware.com
*Attorneys for Charles L. Grimes*

January 25, 2007

---

[17]*See also Mid-American Waste Sys., Inc. v. City of Gary, Ind.,* 49 F.3d 286 (7th Cir. 1995) ("Collateral bar doctrine requires addressee of injunction to comply even if order was entered in error, but doctrine does not apply if court lacks subject matter jurisdiction").

# Exhibit A

No. 05-16588

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

CHARLES L. GRIMES,

*Intervenor-Appellant,*

GREGORY WATTERSON, Derivatively on behalf of
RIVERSTONE NETWORKS, INC.,

*Plaintiff-Appellee,*

v.

ROMULUS PEREIRA, et al.,

*Defendants-Appellees.*

---

On Appeal from an Order of the United States District Court
for the Northern District of California, No. CV-03-00637 PJH
(Hon. Phyllis J. Hamilton, presiding)

---

**DEFENDANT-APPELLEE RNI WIND DOWN CORPORATION F/K/A
RIVERSTONE NETWORKS, INC.'S MOTION TO DISMISS APPEAL**

---

| | |
|---|---|
| William R. Baldiga (MA 542125) | Douglas R. Young (CA 073248) |
| Cheryl B. Pinarchick (MA 636208) | Farella Braun & Martel LLP |
| Erika M. Holmes (MA 657243) | 235 Montgomery Street, 17th Floor |
| Brown Rudnick Berlack Israels LLP | San Francisco, CA 94104 |
| One Financial Center | Telephone: (415) 954-4400 |
| Boston, MA 02111 | Facsimile: (415) 954-4480 |
| Telephone: (617) 856-8200 | |
| | |
| Co-Counsel for Defendant-Appellee | Co-Counsel for Defendant-Appellee |
| RNI WIND DOWN CORPORATION | RNI WIND DOWN CORPORATION |
| f/k/a RIVERSTONE NETWORKS, INC. | f/k/a RIVERSTONE NETWORKS, INC. |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................... 2

    A.    The Derivative Actions from which this Appeal Arises ..................... 2

    B.    The California District Court's Approval of the Stipulation of
            Settlement and Mr. Grimes's Appeal ................................... 3

    C.    The RNI Bankruptcy ........................................................... 4

III.  LEGAL ARGUMENT ................................................................... 7

    A.    Mr. Grimes's Appeal is Barred by the Plain Language of the
            Confirmation Order and the Plan ........................................ 7

    B.    Mr. Grimes's Pursuit of the Appeal Constitutes an Impermissible
            Collateral Attack on the Confirmation Order ........................ 10

IV.   CONCLUSION ........................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                              **Page**

*Beyerbach v. Juno Oil Co.,*
    42 Cal. 2d 11 (Cal. 1954)...................................................................8

*Celotex Corp. v. Edwards,*
    514 U.S. 300 (1995)................................................................ 10, 11

*Estate of Shockley v. Alyeska Pipeline Service Co.,*
    130 F.3d 403 (9th Cir. 1997) .......................................... 7, 10

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.,*
    445 U.S. 375 (1980)...................................................... 10

*Huntsinger v. The Shaw Group, Inc.,*
    410 F. Supp. 2d 968 (D.C. Ore. 2006) ............................... 11

*Keeler v. Schulte,*
    47 Cal. 2d 801 (Cal. 1957).................................................... 9

*Mayer v. Dev. Corp.,*
    396 F. Supp. 917 (D. Del. 1975) ......................................... 8

*Myers v. U.S.,*
    297 B.R. 774 (S.D. Cal. 2003)....................................... 7, 10

*Pratt v. Ventas, Inc.,*
    365 F.3d 514 (6th Cir. 2004) ............................................. 11

*Rosengarten v. Int'l Tel. & Tel. Corp.,*
    466 F. Supp. 817 (S.D.N.Y. 1979) ...................................... 8

*Ross v. Bernhard,*
    396 U.S. 531 (1970) ............................................................. 8

*Stockton v. Ortiz,*
    47 Cal. App. 3d 183 (2d Cir. 1975)...................................... 8

| Statutes and Rules | Page |
|---|---|
| 9th Cir. R. 27-11(a) | 2 |
| 9th Cir. R. 27-1, Note 3 | 2 |
| 11 U.S.C. § 363 | 1 |
| 28 U.S.C. § 157(b)(2)(L) | 10 |
| Federal Rule of Bankruptcy Procedure 8002 | 7 |

## I.    **INTRODUCTION**

Defendant-Appellee RNI Wind Down Corporation f/k/a Riverstone

Networks, Inc. ("RNI")[1] respectfully requests that this appeal be dismissed

immediately because Intervenor-Appellant, Charles L. Grimes ("Mr.

Grimes"), is permanently enjoined from pursuing it.  Specifically, on

September 12, 2006, the United States Bankruptcy Court for the District of

Delaware (the "Bankruptcy Court") entered a final order confirming a plan of

reorganization for RNI in RNI's Chapter 11 proceedings (consolidated as

Case No. 06-10110 (CSS) (the "Chapter 11 Cases")) which, among other

things, permanently enjoined Mr. Grimes (among others) from continuing any

actions or proceedings against RNI or its property.  Mr. Grimes did not object

to the injunctive provisions of the plan of reorganization and no appeal of the

Bankruptcy Court's order confirming the plan has been taken.  Accordingly,

further prosecution of this appeal is prohibited by a final order entered by

another federal court and Mr. Grimes's appeal must be dismissed in its

entirety.

---

[1]  On February 7, 2006, Riverstone Networks, Inc. and certain of its affiliated
entities filed a voluntary petition under Chapter 11 of the United States
Bankruptcy Code.  On April 27, 2006, the majority of Riverstone Networks,
Inc.'s assets were sold to Lucent Technologies, Inc. pursuant to 11 U.S.C. §
363.  *See infra* at 7.  On April 28, 2006, Riverstone Networks, Inc. was
renamed as RNI Wind Down Corporation.

Defendant-Appellee RNI respectfully requests that this Motion be referred to a three-judge panel with authority to terminate this appeal pursuant to 9th Circuit Rule 27-1, Note 3. RNI further requests that the Court issue a stay of the briefing schedule as to all parties pending the resolution of this Motion to Dismiss. 9th Cir. R. 27-11(a) ("Motions requesting [dismissal] shall stay the schedule for record preparation and briefing pending the Court's disposition of the motion.").

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Derivative Actions from which this Appeal Arises

Between August 2002 and April 2003, three derivative actions were filed against RNI and certain of its former officers and directors (collectively, the "Derivative Actions"). Two of the Derivative Actions were filed in the Superior Court for the State of California, County of Santa Clara, and were consolidated under the caption *In re Riverstone Networks, Inc., Derivative Litigation,* Lead Case No. 1-02 CV 810290. The third action was filed in the United States District Court for the Northern District of California ("California District Court") under the caption *Watterson v. Pereira, et. al.,* Case No. C-03-0637-PJH.

Beginning in the Fall of 2003 and continuing throughout the Spring of 2004, the parties to the Derivative Actions engaged in settlement negotiations.

On May 6, 2004, the parties entered into a memorandum of understanding to

resolve the Derivative Actions. The settlement was set forth in a written

stipulation dated November 12, 2004 (the "Stipulation of Settlement"). Notice

of Motion and Motion for Approval of Derivative Settlement and

Memorandum of Points and Authorities in Support Thereof ("Approval

Memo.") (Ex. A hereto) at 5.

      B.     <u>The California District Court's Approval of the Stipulation of
Settlement and Mr. Grimes's Appeal</u>

On February 16, 2005, the California District Court preliminarily

approved the Stipulation of Settlement. Clerk's Docket ("CD") 91.

Subsequently, Mr. Grimes (as an RNI shareholder) objected to the Stipulation

of Settlement and moved to intervene in the Derivative Actions for the sole

purpose of appealing any order approving the Stipulation of Settlement. CD

93-94. The California District Court overruled Mr. Grimes's objection and

approved the Stipulation of Settlement on July 22, 2005 (the "Approval

Order"). CD 115. At the same time, however, the California District Court

granted Mr. Grimes's Motion to Intervene. *Id.* On August 12, 2005, Mr.

Grimes filed a notice of appeal of the Approval Order (the "Appeal"). CD

123.

C.    The RNI Bankruptcy

On February 7, 2006, RNI and certain affiliated entities (the "Debtors")[2] commenced their Chapter 11 Cases in the Bankruptcy Court. Voluntary Petition of Riverstone Networks, Inc. (Ex. B hereto). Substantially all of the Debtors' assets were sold to Lucent Technologies Inc. on April 27, 2006.

On June 30, 2006, the Debtors, the Debtors' Official Committee of Unsecured Creditors, and the Debtors' Official Committee of Equity Security Holders filed their Joint Plan of Reorganization and Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Official Committee of Unsecured Creditors and the Official Committee of Equity Security Holders, as Revised (the "Plan") (Ex. C hereto). The principal purpose of the Plan was to complete the liquidation of RNI and the other Debtors and to distribute the liquidation proceeds and any other recoveries to RNI's creditors and shareholders. Findings of Fact, Conclusions of Law, and Order under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming Joint Plan of Reorganization and Liquidation under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Official Committee of

---

[2]  The Debtors are RNI Wind Down Corporation, formerly known as Riverstone Networks, Inc., BlueCoast Software, Inc., The OASys Group, Inc., Riverstone Networks SPC, Inc. and Pipal Systems, Inc.

Unsecured Creditors and the Official Committee of Equity Security Holders,

as Revised ("Confirmation Order") (Ex. D hereto) at Paragraph 19.  In

negotiating the Plan, the Plan sponsors were particularly concerned about

resolving this Appeal in a manner that did not give rise to further

indemnification obligations in favor of the Debtors' officers and directors

named as defendant-appellees.  *See generally* Plan at §§ 4.6, 7.6.  More

specifically, the Plan sponsors were concerned that if the Appeal moved

forward, the former officers and directors of RNI subject to claims asserted in

the Derivative Actions would seek indemnification from the Debtors' estates

for their attorneys' fees and costs in responding to the Appeal.  One of the key

provisions incorporated into the Plan to address this concern is Section 6.10,

which provides for a permanent injunction of all actions or proceedings

against RNI and the other Debtors and the Debtors' properties.  Specifically,

Section 6.10 of the Plan states, in pertinent part:

> . . . there shall be in place with regards to the Assets and
> any Claims against the Debtors or the Reorganized
> Debtors, their Estates, the Liquidating Trust or any
> Assets of the foregoing a permanent injunction . . . (ii)
> **permanently enjoining all Persons from commencing**
> **or continuing in any manner any action or**
> **proceeding (whether directly, indirectly, derivatively**
> **or otherwise) on account of or respecting any Claim,**
> **debt, right or Cause of Action against the Debtors or**
> **their Assets.**

*Id.* (emphasis added).

On or about September 5, 2006, Mr. Grimes filed an objection to

confirmation of the Plan. *See* Charles L. Grimes' Objection to the Proposed

Joint Plan of Reorganization and Liquidation under Chapter 11 of the

Bankruptcy Code Proposed by the Debtors, the Official Committee of

Unsecured Creditors and the Official Committee of Equity Security Holders,

as Revised (the "Confirmation Objection") (Ex. E hereto).  Mr. Grimes <u>did not</u>

<u>object</u> to the entry of the permanent injunctions set forth in Section 6.10 of the

Plan and, in any event, each one of his objections were voluntarily withdrawn

at the hearing on confirmation of the Plan as having been consensually

resolved.  Confirmation Order at ¶ 26.  At the conclusion of the hearing on

September 12, 2006, the Bankruptcy Court approved the Plan and entered the

Confirmation Order. *See generally* Confirmation Order.  The Plan became

effective September 25, 2006.  Plan at § 1.1; *see generally* Confirmation

Order.

Consistent with Section 6.10 of the Plan, Paragraph 49 of the

Confirmation Order provides for a permanent injunction of actions or

proceedings against RNI or the assets of its estate.  Specifically, Paragraph 49

provides, in relevant part:

> On or after the Confirmation Date, except as
> provided in the Plan or this Confirmation Order, all
> Persons that have held, currently hold or may hold a
> Claim, Equity Interest, or other debt or liability that

> is addressed in the Plan are permanently enjoined
> from. . . (i) **commencing or continuing in any**
> **manner any action or other proceeding against**
> **the Debtors or the Reorganized Debtors or their**
> **respective properties that was or could have**
> **been commenced prior to the Effective Date**... .

Confirmation Order at ¶ 49 (emphasis added).  No appeal of the Confirmation

Order has been taken and the time for taking any such appeal has lapsed.

Thus, the Confirmation Order is, in all respects, a final order.[3]

## III.    LEGAL ARGUMENT

> A.    Mr. Grimes's Appeal is Barred by the Plain Language of the
>         Confirmation Order and the Plan.

The plain language of a court order is not subject to interpretation and

cannot be ignored.  *See Estate of Shockley v. Alyeska Pipeline Service Co.*,

130 F.3d 403, 407 (9th Cir. 1997) (rejecting an interpretation of a court order

that was not consistent with the plain reading of the order); *Myers v. U.S.*, 297

B.R. 774, 780 (S.D. Cal. 2003) (refusing to disregard the plain language of a

bankruptcy court order).  Here, both the plain language of the Confirmation

Order and the Plan approved by that Order expressly bar Mr. Grimes from

pursuing his Appeal and, as such, the Appeal must be dismissed.  Specifically,

Paragraph 49(i) of the Confirmation Order provides that "all Persons that have

held, currently hold or may hold … an Equity Interest" in RNI are

_____

[3]  The deadline for appealing the Confirmation Order was September 22,
2006.  Fed. R. Bankr. P. 8002.

permanently enjoined from continuing any action or other proceeding against

RNI or its properties. Confirmation Order at ¶ 49(i). Similarly, Section 6.10

of the Plan permanently enjoins "all Persons from commencing or continuing

in any manner any action or proceeding (whether directly, indirectly,

derivatively or otherwise) on account of or respecting any Claim, debt, right or

Cause of Action against the Debtors or their Assets." Plan at § 6.10 (emphasis

added).

    Mr. Grimes is an individual who admittedly holds an equity interest in

the Debtors. Confirmation Objection at 1. RNI is a named defendant in the

underlying Derivative Actions and defendant-appellee in this Appeal. Indeed,

these proceedings cannot continue in RNI's absence. *See Ross v. Bernhard*,

396 U.S. 531, 538 (1970) (commenting that a derivative action cannot proceed

without the subject corporation); *Stockton v. Ortiz*, 47 Cal. App. 3d 183, 191-

192 (2d Cir. 1975) (affirming trial court's dismissal of derivative action where

subject corporation was not joined as a party); *Mayer v. Dev. Corp.*, 396 F.

Supp. 917, 935 (D. Del. 1975) (noting that the absence of an indispensable

party compels dismissal); *Rosengarten v. Int'l Tel. & Tel. Corp.*, 466 F. Supp.

817, 828 (S.D.N.Y. 1979) (finding that the failure to serve subject corporation

in a derivative action was a "fatal defect" to the maintenance of the action

because the subject corporation was indispensable); *Beyerbach v. Juno Oil*

*Co.*, 42 Cal. 2d 11, 28 (Cal. 1954) ("The corporation is an indispensable party to a representative action brought on its behalf; its rights, not those of the nominal plaintiff, are to be litigated, and the court has no jurisdiction to adjudicate its rights in its absence as a party. Dismissal of the corporation *at any stage* in a representative action must result in a discontinuance of the action, not for a mere defect in parties, but for lack of jurisdiction to proceed.") (emphasis added); *see also Keeler v. Schulte*, 47 Cal. 2d 801, 803 (Cal. 1957) (same). As such, Mr. Grimes's pursuit of this Appeal constitutes continuing an action or proceeding against RNI <u>derivatively</u>, and continuation of the Appeal thus falls squarely within the conduct prohibited by the plain language of Paragraph 49(i) of the Confirmation Order and Section 6.10 of the Plan.

Additionally, the continuation of this proceeding constitutes an indirect attack against the assets of RNI (that is, the cash that it holds for distribution to its creditors and shareholders in accordance with the Plan). Based upon its indemnification obligations to certain of its former officers and directors named as the other appellee-defendants in this proceeding, if this Appeal is permitted to go forward, it is RNI who will bear the cost of defending the Appeal by paying such costs from its cash at the expense of its current creditors and shareholders. *See generally* Plan at §§ 4.6, 7.6. Thus, pursuit of

the Appeal also constitutes the continuation of a proceeding indirectly against the assets of RNI and is expressly prohibited by the Confirmation Order and the Plan. Confirmation Order at ¶ 49; Plan at § 6.10. For this reason as well, the Appeal must be dismissed. *See Shockley*, 130 F.3d at 407; *Myers*, 297 B.R. at 780.

> **B.**     Mr. Grimes's Pursuit of the Appeal Constitutes an Impermissible Collateral Attack on the Confirmation Order.

Mr. Grimes did not object to the injunctive provisions of the Plan (and, as noted, ultimately withdrew all of the Plan objections he had previously asserted). He cannot now ignore the terms of the Confirmation Order embodying those provisions and pursue this Appeal in this forum. It is a well-established rule that "'persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed... .'" *Celotex Corp. v. Edwards,* 514 U.S. 300, 306 (1995) (*quoting GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.,* 445 U.S. 375, 386 (1980)). "It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." *Celotex,* 514 U.S. at 313.

Here, the Bankruptcy Court clearly had jurisdiction to enter the Confirmation Order. *See* 28 U.S.C. § 157(b)(2)(L) (confirmation of a plan of

reorganization in a Chapter 11 proceeding is a core proceeding and the
bankruptcy court has exclusive jurisdiction to determine whether the plan
complies with the applicable provisions of the Bankruptcy Code and should be
confirmed). The Confirmation Order has not been modified or reversed.
Indeed, no appeal from the Confirmation Order has been taken and the time to
do so has now expired. Accordingly, Mr. Grimes is required to obey its terms
and any action by him to pursue his Appeal constitutes an impermissible
collateral attack against the Confirmation Order. *See Celotex*, 514 U.S. at 313
(action dismissed where "[r]espondents chose not to [challenge the injunction
in the bankruptcy court], but instead to collaterally attack the Bankruptcy
Court's Section 105 Injunction in the federal courts in Texas. This they cannot
be permitted to do without seriously undercutting the orderly process of the
law."); *Pratt v. Ventas, Inc.*, 365 F.3d 514, 523 (6th Cir. 2004) (affirming
district court's dismissal of an action for lack of subject matter jurisdiction
where action constituted a collateral attack on a bankruptcy order); *Huntsinger
v. The Shaw Group, Inc.*, 410 F. Supp. 2d 968, 976 (D.C. Ore. 2006) (finding
plaintiff's attempt to sue on a claim released by a bankruptcy court order and
as to which the bankruptcy court enjoined prosecution amounted to an
impermissible collateral attack on a bankruptcy order, and granting a
converted motion to dismiss).

11

IV.    **CONCLUSION**

For the reasons set forth herein, Mr. Grimes is permanently enjoined

from pursuing this Appeal and the Appeal must be dismissed in its entirety.

DATED:  December 15, 2006    Respectfully submitted,

**RNI WIND DOWN CORPORATION F/K/A
RIVERSTONE NETWORKS, INC.**

FARELLA BRAUN & MARTEL LLP

By  _____
       DOUGLAS R. YOUNG

235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

BROWN RUDNICK BERLACK ISRAELS LLP
WILLIAM R. BALDIGA
CHERYL B. PINARCHICK
ERIKA M. HOLMES
One Financial Center
Boston, MA  02111
Telephone:  (617) 856-8200

**Exhibit B**

Court of Appeals No. 05-16588

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

(Appeal from N.D. Cal. Docket No. CV-03-00637-PJH)

GREGORY WATTERSON,
Derivatively on behalf of Riverstone Networks, Inc.,
Plaintiff- Appellee,

CHARLES L. GRIMES,
Intervenor- Appellant,
v.
ROMULUS PEREIRA, et al.,
Defendants-Appellees

APPELLANT CHARLES L. GRIMES' OPPOSITION TO DEFENDANT
APPELLEE RNI WIND DOWN CORPORATION F/K/A/ RIVERSTONE
NETWORKS, INC.'S MOTION TO DISMISS APPEAL

SMITH, KATZENSTEIN & FURLOW, LLP
David A. Jenkins (DE Bar I.D. 932)
Michele C. Gott (DE Bar I.D. 2671)
Kathleen M. Miller (DE Bar I.D. 2898)
800 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Tel:   (302) 652-8400
Fax:   (302) 652-8405
Email: DJenkins@skfdelaware.com
*Attorneys for Charles L. Grimes*

January 17, 2007

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The Underlying Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    The Ninth Circuit Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    Proceedings in the Bankruptcy Court . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.    Subsequent Events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.    The Ninth Circuit Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2.    The Delaware District Court Appeal . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                       **<u>Page(s)</u>**

*Griggs v. Provident Consumer Co.,*
  459 U.S. 56 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re AWC Liquidation Corp.,*
  292 B.R. 239 (D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

*In re Bialac,*
  694 F.2d 625 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Hagel,*
  184 B.R. 793 (B.A.P. 9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 13, 19, 20

*In re Kendrick Equipment Corp.,*
  60 B.R. 356 (Bankr. W.D. Va. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Padilla,*
  222 F.3d 1184 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-19

*In re Sacred Heart Hospital of Norristown,*
  204 B.R. 132 (E.D. Pa. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Transtexas Gas Corp.,*
  303 F.3d 571 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*In re Wonder Corp. of America,*
  81 B.R. 221 (Bankr. D. Conn. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In the Matter of Statistical Tabulating Corp., Inc.,*
  60 F.3d 1286 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In the Matter of Urban Development Limited, Inc.,*
    42 B.R. 741 (Bankr. M.D. Fla. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Main Line Fed. Savings and Loan Assoc. v. Tri-Kell, Inc.,*
    721 F.2d 904 (3d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Pratt v. Ventas, Inc.,*
    365 F.3d 514 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*U.S. v. Batka,*
    916 F.2d 118 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## Statutes and Other Authorities                Page(s)

Fed. R. Civ. P. 23.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# PROCEDURAL BACKGROUND

### A.    The Underlying Action

This is an appeal from a final order of the United States District Court for the Northern District of California (the "California District Court") approving the settlement of derivative actions brought on behalf of Riverstone Networks, Inc. ("Riverstone") (Appellant's Excerpts of Record ("ER") 122, filed on 11/25/05).[1] In the settlement, Riverstone agreed to implement certain corporate governance measures and pay $1.75 million in fees and expenses to derivative plaintiffs' counsel as a unitary part of the settlement (ER 83).

Unlike the typical derivative settlement where the fee request is separately analyzed by the court, the fee agreement in a unitary settlement is a provision of the overall agreement. This tying of the fee to the settlement allowed plaintiffs' counsel to hold the derivative settlement hostage to the payment of their fees, forcing the California District Court either to accept the agreed fees or disapprove the entire settlement, which would have forced the parties (and the Court) to litigate a case where neither wished to do so.

By making their fees an agreed-to term of the settlement, plaintiffs'

---

[1]On May 24, 2006, Riverstone changed its name to RNI Wind Down Corporation in a bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

counsel also evaded the heightened level of scrutiny applied to fee awards. In a typical derivative settlement, the parties first present the settlement for court approval under Fed. R. Civ. P. 23.1, and if received, plaintiffs' counsel then file an application seeking a court award of fees. Approval of the settlement turns on whether it is as a whole fair, reasonable, adequate, and free from collusion or fraud. (*See* Opening Brief of Appellant Charles L. Grimes, filed on 11/25/05 ("OB") at 26-32). The subsequent fee application is subject to a higher standard of review, with the trial court acting in a fiduciary capacity to protect shareholders and maintain public confidence that derivative litigation is not conducted solely for the benefit of lawyers (*Id.*). If the settlement has not produced a common fund (and here it did not), counsel must establish that the derivative action was meritorious when filed and that the settlement created a substantial benefit to the corporation on whose behalf it was brought (*Id.*). If that showing is made, the trial court then must determine a reasonable fee based on a number of factors (*Id.*).

The California District Court was unhappy with the unitary nature of the settlement. At a hearing on January 19, 2005, Judge Phyllis J. Hamilton refused to grant preliminary approval of the settlement, which she believed to be a deliberate attempt to avoid having the proposed fee award scrutinized under the traditional criteria (ER 1/19/05 Tr. at 48, 50, 56). At a hearing on February 16, 2005, although

still troubled by the propriety of the unitary settlement and doubtful that plaintiffs'

counsel would be able to satisfy the normal standard for a fee award (2/16/05 Tr. at

3-4, 8 and 20), Judge Hamilton granted preliminary approval and ordered that notice

be sent to Riverstone's stockholders (*Id.* at 20).

On May 2, 2005, Charles L. Grimes, one of Riverstone's largest

stockholders, filed an objection to both the unitary settlement approach and the

amount of the fees to be paid plaintiffs' counsel (ER 94).[2]  He also moved to

intervene (ER 93).  At a June 1, 2005 hearing on the application for final approval of

the settlement, Judge Hamilton stated:

> As I've stated on several occasions in the past, I am very
> troubled by the fact that you all are presenting me with a
> settlement in which the agreed upon attorneys fees is
> included which pretty much takes away or – inhibits the
> Court's ability to meaningfully evaluate whether or not the
> attorneys fees is reasonable.

(ER 6/01/05 Tr. at 3-4).  Although still suspicious that the fee provision had been

included as a settlement term to evade her scrutiny of what she termed an "exorbitant

fee request" (*Id.* at 37-40), because she found no authority clearly prohibiting a

unitary settlement in a derivative case[3] Judge Hamilton approved the settlement using

---

[2]Mr. Grimes did not believe that the derivative claims had merit, and thus did
not object to their dismissal (ER 94).

[3]They are not permitted in class actions in this Circuit (OB at 34).

settlement standards (*Id.*).   However, she also granted Mr. Grimes' motion to

intervene and invited him to appeal, stating: "*[i]t seems to me that . . . this is a*

*perfect case of for the Ninth Circuit to make a determination as to whether or not*

*this kind of settlement should be permitted in a derivative action*" (*Id.*) (emphasis

added).  By Order dated July 22, 2005, Judge Hamilton implemented this ruling (the

"First Settlement Order"), again encouraging Mr. Grimes to appeal:

> *The court would welcome guidance from the Ninth*
> *Circuit on the question of the propriety of unitary*
> *settlements in shareholder derivative actions, ...*

(ER 115 at 19) (emphasis added).

### B.    The Ninth Circuit Appeal

Mr.  Grimes filed a notice of appeal on August 11, 2005, and filed his

opening brief on the merits on November 25, 2005.  Appellees, however, have thus

far managed to avoid fighting this appeal on the merits.  Early on, they tried to settle

the appeal by agreeing among themselves (without Mr. Grimes' participation) to

remove the unitary aspect of the derivative settlement and allow the California

District Court to pick the appropriate amount of attorneys' fees.  On November 22,

2005, plaintiffs' counsel moved on behalf of all appellees to dismiss this appeal

claiming it was mooted by this agreement.

On March 17, 2006, this Court denied the motion to dismiss, without prejudice to appellees raising the issue again in the briefing on the merits. In the meantime, on February 7, 2006, Riverstone and certain of its affiliates ("Debtors") filed a voluntary petition for relief under Chapter 11 in the Bankruptcy Court. After being informed of this filing, this Court stayed this appeal and directed that Debtors file a status report on or before September 20, 2006 (*See* 3/29/06 Order).

## C.    Proceedings in the Bankruptcy Court

On June 8, 2006, Debtors filed a motion pursuant to Bankruptcy Rule 9019, in which they again attempted to settle this appeal by amending the derivative settlement (the "Settlement Motion") (Ex. 1). Pursuant to this amendment, plaintiffs' counsel would repay to Debtors $950,000 of the fees they had received under the First Settlement Order and Debtors would move to dismiss this appeal (*Id.* at ¶ 15). Thus, if the Bankruptcy Court approved the amendment, plaintiffs' counsel would retain $800,000, still without any court having decided under established fee standards that this fee was reasonable. If this tactic succeeds, plaintiffs' counsel would get away with the very practice that is the subject of this appeal.

Mr. Grimes objected to the Settlement Motion on several grounds (Exs. 2 and 3). As he explained to the Bankruptcy Court, the derivative settlement existed only by virtue of the California District Court's First Settlement Order, which was on

appeal to this Court (Ex. 2 (w/o exhibits)).  By asking the Bankruptcy Court to

approve an amendment to the derivative settlement, Debtors were in essence asking

it to vacate or reverse the First Settlement Order, something that Court did not have

jurisdiction to do – only this Court could do that (*Id.*).  Mr. Grimes also explained that

Debtors and plaintiffs' counsel could not settle this appeal without his participation,

as he is the only appellant in this proceeding (Ex. 2 at ¶ 21; Ex. 3 at 4-9).

At a hearing on June 30, 2006 (Ex. 4), the Bankruptcy Court was

"extremely troubled" by the Settlement Motion, particularly whether it had

jurisdiction to approve an amendment to the derivative settlement:

> I have serious reservations on whether I have jurisdiction.
> And I think the key issue here is the Rule 23.1 derivative
> nature of the underlying lawsuit in California and the
> Court-approved settlement in California.  And the fact that
> the judge who even approved that settlement has been
> divested of jurisdiction over that settlement by the appeal.
>
> And if that judge doesn't have jurisdiction, I'm really
> constrained to understand how I have jurisdiction.
>
> The issue of the wild card there, of course, is the
> overreaching powers granted by Congress to Bankruptcy
> Court, and the broad – extremely broad 541 property of the
> estate provision.

(Ex. 4 at 63-65).[4]

---

[4]*See also* Ex. 4 at 40 ("And why – and why am I going to do something that the
9th Circuit who has – clearly has jurisdiction, why should I step in and try to do what

The Bankruptcy Court was similarly concerned about approving what was essentially a settlement of this appeal without the participation of the appellant:

> I'm very troubled, . . . whether or not this is – even is a settlement. The fact that Mr. Grimes is not a party to this settlement, but is a party to the pending appeal in the 9th Circuit, and is clearly appropriately a party in the pending appeal in the 9th Circuit, and the . . . if not direct, the clearly contemplated and indirect effect of the settlement is to moot the appeal, and he's not a party to the settlement that's mooting his action. . . I'm very concerned about that.

(Ex. 4 at 64).[5]

Nevertheless, pursuant to a Memorandum Opinion and Order both dated August 23, 2006, the Bankruptcy Court granted the Settlement Motion (together, the "Amended Settlement Order") (Ex. 5). On August 25, 2006, Mr. Grimes filed a notice of appeal from the Amended Settlement Order in the United States District Court for the District of Delaware (the "Delaware District Court") (Ex. 6). At issue in that appeal is whether the Bankruptcy Court had jurisdiction to amend the derivative settlement and whether Debtors and plaintiffs' counsel could enter into an agreement to resolve this appeal without Mr. Grimes' consent.

--------

you already were unsuccessful in achieving with that Court that has the appeal?").

[5] *See also* Ex. 4 at 43 ("The [California District] Court below said, all right, Mr. Grimes can do the appeal. Obviously the debtor's not going to do it. Now he's a party to it. You can't pull the rug out from under him").

On September 12, 2006, the Bankruptcy Court confirmed Debtors' plan of reorganization and liquidation (the "Confirmation Order") (Ex. D to RNI's Motion to Dismiss).

### D.    Subsequent Events

#### 1. The Ninth Circuit Appeal

On September 20, 2006, Debtors filed a status report in this Court asserting that the Amended Settlement Order mooted this appeal, and that the Confirmation Order and plan enjoined further prosecution of any action to recover a claim against Riverstone, including this appeal. Debtors did not advise this Court of Mr. Grimes' pending appeal from the Amended Settlement Order, which was filed in the Delaware District Court, *before* entry of the Confirmation Order. By letter of September 26, 2006, Mr. Grimes advised this Court of that fact and his belief that this appeal is not moot.

By Order entered October 24, 2006, this Court reinstated briefing on the merits of this appeal, requiring the opening brief to be filed by November 24, 2006, the answering brief by December 26, 2006, and the reply brief within 14 days of service of the answering brief. On November 21, 2006, Mr. Grimes advised the Court that his opening brief had been filed the previous year. Subsequently, on November 24, 2006, this Court stayed this appeal *as to Riverstone only*.

On December 15, 2006, Riverstone moved to dismiss this appeal contending that the Confirmation Order and plan enjoin prosecution of this appeal because they enjoin continuation of any actions against Debtors or their property (Motion at 5-7). Astonishingly, nowhere in their motion do Debtors mention Mr. Grimes' pending appeal in the Delaware District Court from the Bankruptcy Court's Amended Settlement Order (the vehicle by which Debtors claim to have resolved this appeal in the bankruptcy proceeding).

### 2.    The Delaware District Court Appeal

Pursuant to a stipulated briefing schedule entered in the Delaware District Court, Mr. Grimes filed his opening brief on December 14, 2006 (Ex. 7 (w/o exhibits)). Five days later, Riverstone moved to dismiss the Delaware District Court appeal arguing that the Confirmation Order and plan bar that appeal (Ex. 8 (w/o exhibits)). Mr. Grimes' response to that motion is due January 25, 2007.

### **ARGUMENT**

Debtors' motion relies entirely on the contention that the Confirmation Order and the plan enjoin continued prosecution of this appeal. Specifically, they argue that paragraph 49 of the Confirmation Order and Section 6.10 of the plan enjoin actions to recover against Riverstone or its property (whether derivatively, directly,

or indirectly).[6]

This Court already has indicated that it does not believe the injunctive provisions of the Confirmation Order or plan apply here. Aware of Debtors' position that the Confirmation Order and plan enjoin this appeal (*supra* at 8), this Court's Order of October 24, 2006 nevertheless reinstated briefing on the merits. And subsequently, on November 24, 2006, this Court stayed this action *but as to Riverstone only,* thus allowing the appeal to proceed without Riverstone. By doing so, this Court implicitly rejected Debtors' claim that the Confirmation Order and plan enjoin this appeal.

There is no evidence that the Bankruptcy Court intended for the Confirmation Order and plan to permanently enjoin this appeal. When the Bankruptcy Court entered the Confirmation Order, it knew of the pending appeal in the Delaware District Court from its Amended Settlement Order. It also knew that the grounds for that appeal are Mr. Grimes' contentions that the Bankruptcy Court had no jurisdiction to approve the Settlement Motion (the vehicle by which Debtors claim to have resolved this appeal), and that Debtors could not resolve this appeal without the consent of Mr. Grimes. The Bankruptcy Court also certainly was aware

---

[6]To the extent Riverstone suggests that the Confirmation Order and plan expressly refer to Mr. Grimes and this appeal (Motion at 1, 7), they do not.

that if Mr. Grimes succeeds on his in the Delaware District Court appeal, approval of the Settlement Motion will be reversed and the matter remanded to the Bankruptcy Court. If the Bankruptcy Court had no jurisdiction to enter the Amended Settlement Order, the only way that the issue of the attorneys' fees paid to plaintiffs' counsel ever will be resolved is through *this appeal*. Thus, the Bankruptcy Court will be required to grant Mr. Grimes relief from the injunctive provisions of the Confirmation Order and plan (to the extent they apply) to allow this appeal to proceed.

Accordingly, even if this Court determines that the Confirmation Order and plan compel a continued injunction against this appeal, it is premature to dismiss this appeal. Instead, this Court should wait for resolution of the Delaware District Court appeal.[7]

Debtors no doubt will respond by mentioning that they have moved to dismiss the Delaware District Court appeal, where they argue that the Confirmation Order and plan also enjoin prosecution of *that* appeal. Thus, we feel obliged to set forth in some detail why their position is meritless.

Initially, there is no evidence that the Bankruptcy Court ever intended the Confirmation Order to bar the then-pending Delaware District Court appeal, nor

---

[7] Thus, Mr. Grimes is not collaterally attacking the Confirmation Order here as Debtors contend.

have Debtors acted as if they really believe that the Bankruptcy Court did so intend.

If Debtors really believed their current position, they should have gone directly and

immediately to the Bankruptcy Court to advise it that Mr. Grimes was violating its

injunction. They have not done so. Instead, they waited until December 19, 2006

(three months after the Confirmation Order was entered and five days after Mr.

Grimes filed his opening brief on the merits in the Delaware District Court) to move

to dismiss.

More importantly, any attempt by the Bankruptcy Court to enter an order

barring the already pending appeal from its Amended Settlement Order would be

void. It is a fundamental principle of federal civil procedure that the filing of the

Delaware District Court appeal divested the Bankruptcy Court of jurisdiction over

matters related to the appeal. As explained by the United States Supreme Court in

*Griggs v. Provident Consumer Co.,* 459 U.S. 56, 58 (1982):

> The filing of a notice of appeal is an event of jurisdictional
> significance-it confers jurisdiction on the court of appeals
> and divests the district court of its control over those
> aspects of the case involved in the appeal.

The Delaware District Court recognized that same principle in *In re*

*AWC Liquidation Corp.,* 292 B.R. 239 (D. Del. 2003) where it determined that it was

without jurisdiction to stay its order affirming a bankruptcy court order disallowing

a proof of claim because the claimant had appealed the District Court's order before

seeking the stay. The Court reasoned, in part:

> It is a fundamental tenet of federal civil procedure that - -
> subject to certain, defined exceptions – the filing of a
> notice of appeal from the final judgment of a trial court
> divests the trial court of jurisdiction and confers
> jurisdiction upon the appellate court.

292 B.R. at 242, quoting *In re Transtexas Gas Corp.,* 303 F.3d 571, 578-79 (5th Cir.

2002), and citing, among others, *U.S. v. Batka,* 916 F.2d 118, 120 (3d Cir. 1990)

(district court was without jurisdiction to consider a motion for a reduction of

sentence after appeal was filed in keeping with "the general principle that when an

appeal is taken the appellate court obtains exclusive jurisdiction over the aspects of

the case involved in the appeal").

This principle is designed to preclude interference from the court whose

decision is under review to preserve the integrity of the appellate process and prevent

the chaos that would result if concurrent jurisdiction were permitted. *See In re Hagel,*

184 B.R. 793, 798 (B.A.P. 9th Cir. 1995) ("Underlying this principle is a concern for

ensuring the integrity of the appellate process [citation omitted]. To this end, a trial

court may not interfere with the appeal process or with the jurisdiction of the

appellate court").

The principle "applies with equal force to bankruptcy cases." *In re AWC,* 292 B.R. at 242. Although the nature of bankruptcy proceedings often favors greater procedural flexibility,

> these principles of flexibility do *not* permit a bankruptcy court to enter an order addressing a postjudgment motion when the bankruptcy court lacks jurisdiction over the case (or over the portion of the case addressed in the postjudgment motion) simply because prompt disposition of the motion might be desirable from an efficiency standpoint. Such pragmatic concerns cannot 'outweigh' a jurisdictional defect.

*In re Transtexas,* 303 F.3d at 580 (emphasis in original). *See also In re Wonder Corp. of America,* 81 B.R. 221, 224 (Bankr. D. Conn. 1988) ("the filing of a notice of appeal to a district court divests a bankruptcy court of jurisdiction to proceed with respect to matters raised by such appeal").[8]

Debtors' motion in the Delaware District Court implicitly contends that the Bankruptcy Court *can* interfere with appellate review of its own order by simply entering a subsequent order enjoining such review. Not surprisingly, Debtors cited nothing in that motion to support this implicit contention. Other courts, however, have pointed out the absurdity of such a notion.

---

[8]The bankruptcy court retains jurisdiction "to address elements of the bankruptcy proceeding that are not the subject of that appeal." *In re Transtexas,* 303 F.3d at 580, n. 2.

For example, in *In the Matter of Statistical Tabulating Corp., Inc.,* 60 F.3d 1286 (7th Cir. 1995), during the pendency of the government's appeal to the district court from an order of the bankruptcy court determining priority of creditors, the debtor's assets were liquidated and the bankruptcy court dismissed the bankruptcy (the government did not formally object to the dismissal, although it did advise the bankruptcy court of the pending appeal). After, the district court ruled in the government's favor in the prior pending appeal, the government moved to reopen the bankruptcy case. The bankruptcy court refused to do so and the district court affirmed its order. The Seventh Circuit then rejected the argument that the bankruptcy court's dismissal had deprived the district court of jurisdiction to rule on the prior pending appeal:

> Furthermore, the general rule that when the underlying case is dismissed, all related proceedings are dismissed is clearly in tension with the general rule that the filing of a notice of appeal divests a lower court of jurisdiction over the matter on appeal. . . .[citations omitted] *In the instant case, the integrity of the appellate process is at serious risk if a bankruptcy court can deprive a district court of jurisdiction over an appeal by simply dismissing the underlying bankruptcy.*

60 F.3d at 1289 (emphasis added).

Similarly, in *In the Matter of Urban Development Limited, Inc.,* 42 B.R. 741 (Bankr. M.D. Fla. 1984), a bankruptcy court's order granting a mortgagee relief

from the automatic stay to proceed with a foreclosure action was on appeal when the

debtor filed an adversary complaint seeking to enjoin foreclosure. The bankruptcy

court dismissed the adversary complaint, stating: "there is hardly any doubt that filing

the Notice of Appeal effectively divested this court of jurisdiction over any

controversies relating to the issues involved in the appeal." It further explained:

> *Thus, it is clear that if this court would grant the injunctive*
> *relief sought by the Debtor, this would in effect not only*
> *frustrate but for practical purposes moot out the appeal*
> *and would, in fact, serve as a substitute for the appeal*
> *process. There is no basis in law or logic to accept this*
> *proposition. On the contrary, it is expressly prohibited by*
> *case law.* [citations omitted] While the bankruptcy court
> has a wide latitude to reconsider and vacate its own prior
> decisions, *it may not do anything which has any impact on*
> *the order on appeal.*

42 B.R. at 744 (emphasis added).

Numerous other cases agree that a bankruptcy court does not have

jurisdiction to enter an order regarding matters on appeal from that court. For

example, in *Main Line Fed. Savings and Loan Assoc. v. Tri-Kell, Inc.,* 721 F.2d 904

(3d Cir. 1983), the district court dismissed as moot an appeal from a bankruptcy

court's order lifting the automatic stay to allow foreclosure of a lien against debtor.

In doing so, the court relied on an order entered by the bankruptcy court while the

appeal was pending. The Third Circuit found that the bankruptcy court was without

jurisdiction to enter its second order because of the pending appeal and thus "the district court's dismissal of the appeal as moot was erroneously predicated upon an invalid order of the bankruptcy court." 721 F.2d at 905.

In *In re Padilla,* 222 F.3d 1184 (9th Cir. 2000), debtors appealed a bankruptcy court's order dismissing a bankruptcy proceeding as not having been filed in good faith. After the bankruptcy appellate panel reversed and remanded for reinstatement of the petition, the trustee appealed that decision to this Court. While the trustee's appeal was pending, the bankruptcy court discharged debtor's debts and closed the case. Debtor argued that the discharge mooted the trustee's appeal. This Court disagreed, reasoning that the bankruptcy court was without jurisdiction to discharge the debts because the trustee's appeal had divested it of control over those aspects of the case involved in the appeal, and thus its discharge order was null and void. 222 F.3d at 1189-90.

In *In re Bialac,* 694 F.2d 625 (9th Cir. 1982), a creditor obtained relief from the automatic stay to foreclose on a note. Debtor appealed and subsequently obtained an injunction from another bankruptcy court judge restraining the sale of debtor's property. This Court affirmed the bankruptcy appellate panel's order vacating the injunction on the grounds that the "[t]he pending appeal divested the lower court of jurisdiction to proceed further in the matter." 694 F.2d at 627.

In *In re Sacred Heart Hospital of Norristown,* 204 B.R. 132 (E.D. Pa. 1997), the bankruptcy court entered an order denying a defendant's assertion of sovereign immunity as a defense in an adversary proceeding. While its order was on appeal, the court entered a final declaratory judgment precluding assertion of the defense. The district court vacated the final judgment because the bankruptcy court had been divested of jurisdiction by defendant's prior filed notice of appeal. *See also In re Kendrick Equipment Corp.,* 60 B.R. 356, 359 (Bankr. W.D. Va. 1986) (bankruptcy court did not have jurisdiction to re-impose stay pending appeal from its' prior decision to lift the stay because that court "should not entertain any request which touches directly or indirectly on the issues presented in the appeal or which might otherwise interfere with the integrity of the appeal process").[9]

Because the motion to dismiss is still being briefed in the Delaware District Court, we do not know how Debtors will attempt to justify their filing of that motion. They may argue that the Bankruptcy Court retained jurisdiction to enforce or implement the Amended Settlement Order even though it was on appeal. *See In re Padilla,* 222 F.3d at 1190 ("[a]bsent a stay or supersedeas, the trial court also

---

[9]Thus, the collateral bar doctrine does not apply to the Delaware District Court Appeal. *See, e.g., Pratt v. Ventas, Inc.,* 365 F.3d 514, 520 (6th Cir. 2004) (collateral bar doctrine applies to injunctions "only if [the issuing court] was acting 'with jurisdiction'").

retains jurisdiction to implement or enforce the judgment or order but may not alter or expand upon the judgment").

Such an argument, however, would not save Debtors. An attempt to enjoin the Delaware District Court appeal through the Confirmation Order is not merely an effort to enforce or implement a judgment, but rather would expand upon the Amended Settlement Order by enjoining any appeal from it. A similar issue was addressed in *In re Padilla, supra.* There, this Court found that the bankruptcy court's discharge of debts and closure of the case was not mere implementation or enforcement of the bankruptcy appellate panel's remand for reinstatement of the debtor's petition. Rather, the discharge order "drastically changed the status quo and amounted to a final adjudication of the substantial rights directly involved in the appeal." 222 F.3d at 1190. Here, if the discharge injunction enjoins the appeal, it would drastically change the status quo, affecting Mr. Grimes' very right to appeal.[10]

The limit of the Bankruptcy Court's jurisdiction to implement or enforce its prior order is further illustrated in *In re Hagel,* 184 B.R. 793. As that case explains,

---

[10]Nor did Mr. Grimes need to move to stay the Confirmation Order to preserve his appeal. Such a motion is necessary only to halt action that a court is empowered to take in the first place. *In re Padilla,* 222 F.3d at 1190.

in implementing an appealed order, *the court does not disrupt the appellate process so long as its decision remains intact for the appellate court to review.* [citation omitted] Accordingly, courts have recognized a distinction between acts undertaken to enforce the judgment, which are permissible, and acts which expand upon or alter it, which are prohibited.

184 B.R. at 798 (emphasis added). Here Debtors are trying to use the Confirmation Order to disrupt the appellate process, arguing that because of the Confirmation Order the Bankruptcy Court's Amended Settlement Order is no longer intact for appeal. The Bankruptcy Court's jurisdiction does not extend that far.

## CONCLUSION

For these reasons, Riverstone's motion to dismiss should be denied, at least pending resolution of the Delaware District Court appeal.

SMITH, KATZENSTEIN & FURLOW, LLP

*David A. Jenkins by Kathleen M. Miller*

David A. Jenkins (DE Bar I.D. 932)
Michele C. Gott (DE Bar I.D. 2671)
Kathleen M. Miller (DE Bar I.D. 2898)
800 Delaware Avenue, 10th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Tel: (302) 652-8400
Fax: (302) 652-8405
Email: DJenkins@skfdelaware.com

January 17, 2007

# Exhibit C



992 F.2d 1216                                                    Page 1
992 F.2d 1216, 1993 WL 141066 (C.A.6 (Mich.))
**(Cite as: 992 F.2d 1216)**

**C**
Lawrence v. RemesC.A.6 (Mich.),1993.NOTICE:
THIS IS AN UNPUBLISHED OPINION.(The Court's
decision is referenced in a "Table of Decisions Without
Reported Opinions" appearing in the Federal Reporter.
Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules
regarding the citation of unpublished opinions.)
United States Court of Appeals, Sixth Circuit.
Walter J. LAWRENCE, Debtor-Appellant,
v.
Richard C. REMES, Trustee-Appellee,
**No. 92-1103.**

April 30, 1993.

On Appeal from the United States District Court for the
Western District of Michigan, No. 91-00202, Siler, J.
W.D.Mich.

AFFIRMED.

Before RYAN and SILER, Circuit Judges, and
LIVELY, Senior Circuit Judge.
PER CURIAM.
*1 Walter J. Lawrence, a pro se debtor, appeals the
district court's judgment affirming a bankruptcy court
order that consolidated his Chapter 7 bankruptcy
petition with a previously filed Chapter 13 case. The
issues are whether:   (1) the bankruptcy court
erroneously converted Lawrence's Chapter 7 petition
into a Chapter 13 case, as 11 U.S.C. § 706(c) allows
such conversion only by request from the debtor;  (2)
the bankruptcy court erroneously consolidated
Lawrence's two petitions under Bankruptcy Rule
1015(a); and (3) the court erroneously determined that
Lawrence had committed defalcation of funds of his
daughter's estate.

I.

Lawrence had filed a Chapter 13 bankruptcy petition in
the Western District of Michigan, which was dismissed
by the bankruptcy court on October 31, 1990, due to his
pending Chapter 13 case in Texas. Lawrence appealed
this dismissal to the district court and requested a stay
pending appeal.   The stay was denied, so Lawrence
then petitioned under Chapter 7 in the Western District
of Michigan.

The bankruptcy court ordered Lawrence to show cause
why the Chapter 7 petition should not be dismissed
pursuant to 11 U.S.C. § 707(b).     Both parties
responded and the court did not dismiss the petition.
Later, the bankruptcy court ordered Lawrence to show
cause why the Chapter 7 case should not be
consolidated with the Chapter 13 petition then pending
appeal in the district court.   After a hearing, the
bankruptcy court entered an order consolidating the
Chapter 7 petition with the Chapter 13 case nunc pro
tunc as of the date of the filing of the Chapter 7 petition.
The district court affirmed the bankruptcy court's
order.  Appellee has not filed a brief.  For the reasons
stated herein, we AFFIRM the order of the district
court.

II.

Section 706(c) prohibits the court from converting a
Chapter 7 case to a Chapter 13 case "unless the debtor
requests such conversion." Lawrence argues that the
bankruptcy court improperly converted the Chapter 7
case, as the court stated that "[t]he case will proceed as
a Chapter 13 case until all of the procedures now on
appeal have been completed one way or the other."
The district court properly concluded, however, that the
bankruptcy court's statement did not suggest that the
judge converted the Chapter 7 case into a Chapter 13
case.    Instead, the bankruptcy judge was concerned
with preventing duplication and contradictory rulings as
to creditors' rights in the two cases.

III.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

992 F.2d 1216                                                                                     Page 2
992 F.2d 1216, 1993 WL 141066 (C.A.6 (Mich.))
**(Cite as: 992 F.2d 1216)**

"If two or more petitions are pending in the same court by or against the same debtor, the court may order consolidation of the cases." Bankruptcy Rule 1015(a). The bankruptcy court has discretion to issue orders that will conserve judicial resources and time. Rule 1015(a) advisory committee note. As the debtor, court, and creditors are identical, consolidation was appropriate given the considerations of confusion, expense, and time.

Lawrence unsuccessfully argues that at the time of consolidation, as the Chapter 13 case was on appeal to the district court, the bankruptcy court lacked jurisdiction. However, the bankruptcy courts were created as adjuncts of the district court. *In re Salem Mortgage Co.,* 783 F.2d 627, 633 n. 18 (6th Cir.1986). Therefore, the bankruptcy court properly concluded that the Chapter 13 case was not closed and would not be closed until all appellate proceedings were resolved. Accordingly, the court did not abuse its discretion in consolidating these cases, as the filing of the Chapter 7 petition while the Chapter 13 case was pending was abusive and invalid. *See In re Martin,* 97 B.R. 1013, 1017 (Bankr.N.D.Ga.1989); *Associates Fin. Servs. Corp. v. Cowen,* 29 B.R. 888, 894 (Bankr.S.D.Ohio 1983). The bankruptcy court disfavored the fact that Lawrence filed the Chapter 7 petition to invoke the protection of the automatic stay after a stay had been denied. Further, the district court opined that Lawrence has been avoiding his creditors since 1984 through abuse of the bankruptcy process.

**\*2** The dissent rightfully states that once a notice of appeal has been filed from a bankruptcy court's ruling, that court loses its jurisdiction to take further action in the case *on appeal.* However, in this matter, the bankruptcy court consolidated the later-filed Chapter 7 case with the case on appeal. When the debtor appealed that issue to the district court, the district court ratified the bankruptcy court's act of consolidation. As both cases were then in the district court either on appeal or in the adjunct bankruptcy court, they met the criteria of Bankruptcy Rule 1015 ("pending in the same court by ... the same debtor") to allow consolidation.

IV.

A Michigan state probate court determined that Lawrence had committed defalcation of funds of his daughter's estate when it ordered the bonding insurance company to make the estate whole for the funds. The district court referred to this finding, but that does not make the finding appealable in this case, as this court has jurisdiction only over final orders of the district court in bankruptcy appeals. *In re Continental Airlines, Inc.,* 932 F.2d 282, 285 (3d Cir.1991). In addition, whether the bonding insurance company claim was improperly allowed in the Chapter 13 case is not properly raised in this appeal from the consolidation order, as it is the subject of a different case and a different appeal.

AFFIRMED.

RYAN, Circuit Judge, dissenting.
Bankruptcy Rule 1015 mandates that a bankruptcy court may only consolidate "two or more petitions [that] are *pending in the same court,*" (emphasis added), and so makes clear that in order to consolidate two petitions, the bankruptcy court must have jurisdiction over both. Because I believe the bankruptcy court lacked jurisdiction over Lawrence's Chapter 13 petition, and so lacked jurisdiction to consolidate his Chapter 7 petition with it, I respectfully dissent.

The majority relies on *In re Salem Mortgage Co.,* 783 F.2d 626 (6th Cir.1986), to conclude that the bankruptcy court had jurisdiction over the Chapter 13 petition. However, *Salem* involved a *district court's* subject matter jurisdiction over bankruptcy matters: Subsection (b) grants to the U.S. district courts original, but not exclusive, jurisdiction of all civil proceedings arising under title 11 or arising under or related to cases under title 11. This broad grant of jurisdiction will enable the *bankruptcy courts, which are created as adjuncts of the district court for the purpose of exercising the jurisdiction,* to dispose of controversies that arise in bankruptcy cases or under the bankruptcy code. Actions that formerly had to be tried in the State court or in the Federal district court, at great cost and delay to the estate, may now be tried in bankruptcy court.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

992 F.2d 1216
992 F.2d 1216, 1993 WL 141066 (C.A.6 (Mich.))
**(Cite as: 992 F.2d 1216)**

Page 3

*Id.* at 633 n. 18 (emphasis added) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 18, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5804). It is apparent that the language describing the bankruptcy courts as "adjuncts" of the district courts, to which the majority avers, speaks only to the legitimacy of a bankruptcy court's original jurisdiction, and to the peculiarity of the bankruptcy and district court's nonexclusive jurisdiction over non-core proceedings. While this language may make clear that bankruptcy and district courts enjoy a unique relationship, it does not purport to propose that a bankruptcy court be permitted to have lingering jurisdiction over a case that it dismissed, which dismissal has been appealed to the district court. Neither does it explain why that relationship should nullify the rule universally applied to district and appellate court jurisdictions: that the filing of a notice of appeal divests one court of jurisdiction and transfers jurisdiction to the appealed-to court. The special relationship between the bankruptcy and district courts would not make it any more convenient or less chaotic were the two courts to be simultaneously exercising jurisdiction over a case under these circumstances.

**\*3** A few circuits have addressed the question of the bankruptcy court's relationship to the district court, and its effect on the two court's jurisdiction. In *In re Combined Metals Reduction Co., 557 F.2d 179 (9th Cir.1977)*, the Ninth Circuit considered a case in which a district court originally denied a party's motion for permission to file objections to bankruptcy claims, and then vacated its order after the party had perfected his appeal. Although noting "the well-established rule that a bankruptcy court has wide latitude to reconsider and vacate its prior decisions, so long as the proceedings have not been terminated, and no intervening rights have become vested ...," *id.* at 201, the court of appeals concluded that the bankruptcy court lacked jurisdiction to revisit its order once the order had been appealed. In so doing, the court of appeals explicitly endorsed the application of the general rule regarding loss of jurisdiction to the specific case of bankruptcy courts: The general rule is that once a notice of appeal has been filed, the lower court loses jurisdiction over the subject matter of the appeal.... This rule is clearly necessary to prevent the procedural chaos that would result if concurrent jurisdiction were permitted.

*Id.* at 200 (citations omitted). The court then discussed one party's argument "that a bankruptcy court can vacate its decision even after an appeal thereof has been perfected...." *Id.* at 201. The court rejected this proposed interpretation:*[A]ccepting this view ... would require us to hold that a bankruptcy court and a court of appeals can have concurrent jurisdiction over the subject matter of an appeal.* Such a holding would permit bankruptcy courts to divest the courts of appeals of jurisdiction over appeals by the simple expediency used by the district court in the case presently before us. *We are of the opinion that no lower court should be able to vacate or modify an order under appeal, not even a bankruptcy court attempting to eliminate the need for a particular appeal.*

*Id.* (emphasis added). The Ninth Circuit has, moreover, recently reiterated this holding, citing *Combined Metals* and employing its reasoning. *In re: Adams Apple, Inc., 829 F.2d 1484, 1489 (9th Cir.1987).* [FN1]

> FN1. *Adams Apple* came after both the Bankruptcy Reform Act of 1978 and the Bankruptcy Amendments & Federal Judgeship Act of 1984, which Acts made significant changes to bankruptcy court jurisdiction.

The Third Circuit, too, has spoken to this issue, and rejected the suggestion that bankruptcy and district courts may possess some commonality of jurisdiction. *Main Line Fed. Sav. and Loan Ass'n v. Tri-Kell, Inc., 721 F.2d 904, 906 (3d Cir.1983).* In so doing, the court noted that "[t]he procedural morass in this case illustrates the problems created by assertions of concurrent jurisdiction," and emphasized that "in the case before us application of the rule [against concurrent jurisdiction] would promote rather than retard the efficient utilization of the appellate process." *Id.* at 907.

I believe it is appropriate to apply the rule against concurrent jurisdiction in this case, and so would adopt the reasoning of the Ninth and Third Circuits. Dismissing Lawrence's Chapter 7 petition as an abusive filing would have been the direct and appropriate route

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

992 F.2d 1216
992 F.2d 1216, 1993 WL 141066 (C.A.6 (Mich.))
**(Cite as: 992 F.2d 1216)**

Page 4

for the bankruptcy court to take.  But by consolidating the petition with an already-dismissed petition, and disposing of it by this more convoluted route, it has simply obscured the issues in this case.  Its action attempted to transform the already-pending appeal concerning the Chapter 13 petition into an appeal involving 1) that dismissal; 2) the de facto dismissal of the Chapter 7 petition; and 3) the consolidation of the two cases.  And, meanwhile, the bankruptcy court's action caused yet another appeal to be filed, focusing solely on the latter two events.

*4 The holding expressed by the majority may wreak unforeseeable havoc by giving the green light to bankruptcy courts to revisit orders over which the district courts have exercised jurisdiction.  Because I believe it was improper for the bankruptcy court to exercise jurisdiction over a case when its dismissal had already been appealed to the district court, I respectfully dissent.

C.A.6 (Mich.),1993.
Lawrence v. Remes
992 F.2d 1216, 1993 WL 141066 (C.A.6 (Mich.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I CERTIFY that on this **25th** day of **January, 2007**, a copy of the foregoing **APPELLANT**

**CHARLES L. GRIMES ANSWERING BRIEF IN OPPOSITION TO APPELLEES'**

**MOTION TO DISMISS APPEAL** was served on the following attorneys by first class mail:

Steven K. Kortanek
Christopher A. Ward
KLEHR HARRISON HARVEY
BRANZBURG & ELLERS LLP
919 Market Street, Suite 1000
Wilmington, DE 19801

William R. Baldiga
Cheryl B. Pinarchick
BROWN RUDNICK BERLACK
ISRAELS, LLP
One Financial Center
Boston, MA 02111

David A. Jenkins (ID No. 932)

06034|COS|10021725.WPD