# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                              :
                                                    :    Chapter 11
RNI WIND DOWN CORPORATION, et al.,                  :
                                                    :    Case No. 06-10110 (CSS)
      Reorganized Debtors.                      :
                                                    :    (Jointly Administered)
_____            :
                                                    :
CHARLES L. GRIMES,                                  :
                                                    :
      Appellant,                                :
                                                    :    Civil Action No. 06-cv-00585 (GMS)
   v.                                             :
                                                    :
RNI WIND DOWN CORPORATION, et al.,                  :
                                                    :
      Appellees.                                :
_____            :

## REPLY TO APPELLANT'S ANSWERING BRIEF
## TO MOTION TO DISMISS APPEAL

**KLEHR, HARRISON, HARVEY,**
**BRANZBURG & ELLERS LLP**
Steven Kortanek, Esq.
Christopher A. Ward, Esq.
919 North Market Street, Suite 1000
Wilmington, DE 19801
Tel:   302-552-5500
Fax:  302-426-9193

        -and-

**BROWN RUDNICK BERLACK ISRAELS LLP**
Cheryl B. Pinarchick, Esq.
One Financial Center
Boston, MA 02111
Tel:   617-856-8200
Fax:  617-856-8201

February 8, 2007         *Attorneys for RNI Wind Down Corporation, et. al.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

I.     INTRODUCTION ................................................................................ 1

II.    ADDITIONAL RELEVANT FACTS ................................................... 1

III.   LEGAL ARGUMENT............................................................................ 2

      A.   Mr. Grimes Admits that He is Bound by the Permanent Injunctions
          Entered by the Bankruptcy Court. ............................................. 2

      B.   The Doctrine of Res Judicata Precludes Mr. Grimes from Continuing this
          Appeal. .................................................................................... 3

      C.   The Plain Language of the Confirmation Order is Not Subject to
          Interpretation............................................................................ 6

      D.   Section 1144 of the Bankruptcy Code Precludes the Relief Mr. Grimes
          Seeks. ...................................................................................... 8

      E.   The Cases Cited in Support of the Answering Brief are Inapposite. .......... 9

IV.    CONCLUSION.................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Corbett v. MacDonald Moving Servs., Inc.*, 124 F. 3d 82 (2d Cir. 1997) ------------------------ 5, 10

*CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F. 3d 187 (3d Cir. 1999)----------------------------3, 4

*DirecTV, Inc. v. Leto*, 2006 WL 3163232 (3d Cir. 2006) ------------------------------------------6

*Griggs v. Provident Consumer Corp.*, 459 U.S. 56 (1982) ----------------------------------------9

*In re AWC Liquidation Corp.*, 292 B.R. 239 (D. Del. 2003) --------------------------------------9

*In re Bialac*, 694 F. 2d 625 (9th Cir. 1982) ------------------------------------------------------9

*In re Bowen*, 174 B.R. 840 (Bankr. S.D. Ga. 1994)----------------------------------------------8

*In re Bryant*, 175 B.R. 9 (W.D. Va. 1994) --------------------------------------------------------9

*In re Butcher Boy Meat Market, Inc.*, 10 B.R. 258 (E.D. Pa. 1981) -------------------------- 10

*In re Crown Vantage, Inc.*, 421 F. 3d 963 (9th Cir. 2005) --------------------------------------5

*In re Elstein*, 238 B.R. 747 (Bankr. N.D. Ill. 1999)-----------------------------------------------9

*In re Fesq*, 153 F. 3d 113 (3d Cir. 1998) ----------------------------------------------------------8

*In re Genesis Health Ventures, Inc.*, 340 B.R. 729 (D. Del. 2006) ------------------------------8

*In re Hagel*, 184 B.R. 793 (9th Cir. BAP 1995)--------------------------------------------------9

*In re Ivory*, 70 F. 3d 73 (9th Cir. 1995)----------------------------------------------------------6

*In re Kendrick Equip. Corp.*, 60 B.R. 356 (Bankr. W.D. Va. 1986)-------------------------- 10

*In re Maddox*, 84 B.R. 251 (Bankr. N.D. Ga. 1987)-------------------------------------------- 10

*In re Michelson*, 141 B.R. 715 (Bankr. E.D. Cal. 1992) ----------------------------------------9

*In re Midstate Mortgage Investors, Inc.*, 105 Fed. Appx. 420, No. 03-2153,
(3d Cir., Aug. 5, 2004)------------------------------------------------------------------------5, 6

*In re Padilla*, 222 F. 3d 1184 (9th Cir. 2000)-------------------------------------------------- 10

*In re PWS Holding Corp.*, 303 F. 3d 308 (3d Cir. 2002)-------------------------------------3, 4, 5, 9

*In re Sacred Heart Hosp. of Norristown*, 204 B.R. 132 (E.D. Pa. 1997)-------------------------9

*In re Szostek*, 886 F. 2d 1405 (3d Cir. 1989)--------------------------------------------------------------3, 6

*In re Transtexas Gas Corp.*, 303 F. 3d 571 (5th Cir. 2002)---------------------------------------------9

*In re Wonder Corp. of America*, 81 B.R. 221 (Bankr. D. Conn. 1988)---------------------------- 10

*In the Matter of Statistical Tabulating Corp., Inc.*, 60 F. 3d 1286 (7th Cir. 1995) ---------------- 10

*Jewelcor Inc. v. Asia Commercial Co., Ltd.*, 11 F.3d 394 (3d Cir. 1993)-----------------------------6

*Lawrence v. Remes*, No. 92-1103, 1993 WL 141066 (6th Cir. Apr. 30, 1993)--------------------- 10

*Main Line Fed. Sav. and Loan Assoc. v. Tri-Kell, Inc.*, 721 F. 2d 904 (3d Cir. 1983) --------------9

*Monarch Life Ins. Co. v. Ropes & Gray*, 65 F. 3d 973 (1st Cir. 1995) --------------------------5, 7, 9

*New Jersey Dep't of Treasury v. Visara Int'l, Inc.*, 166 Fed. Appx. 639,
    Civ. No. 05-1196 (3d Cir., Feb 15, 2006) ----------------------------------------------------------------3

*Republic Supply Co. v. Shoaf*, 815 F. 2d 1046 (5th Cir. 1987) ------------------------------------------6

*Stoll v. Gottlieb*, 305 U.S. 165 (1938) -----------------------------------------------------------------------6

*Trulis v. Barton*, 107 F.3d 685 (9th Cir. 1995) -----------------------------------------------------------5

*United States v. Batka*, 916 F. 2d 118 (3d Cir. 1990)-----------------------------------------------------9

**Statutes**

11 U.S.C § 1144 -----------------------------------------------------------------------------------------1, 8, 9

11 U.S.C. § 1141(a) -------------------------------------------------------------------------------------------3

DEL1 65670-1

## I.    INTRODUCTION

In Mr. Grimes's[1] Answering Brief, he admits, without conceding, that he is permanently enjoined from pursuing this Appeal and that he would require relief from a final order of the Bankruptcy Court, an order from which he has not appealed, to proceed. *Appellant Charles L. Grimes' Answering Brief in Opposition to Appellee's Motion to Dismiss Appeal* ("Answering Brief") at 17. Nevertheless, Mr. Grimes implores this Court to deny the Motion to Dismiss on the grounds that the Bankruptcy Court did not have the requisite jurisdiction to enter the subject injunctions. Where, as here, Mr. Grimes failed to appeal the Confirmation Order entering the injunctions, res judicata bars him from challenging those injunctions now.

Moreover, Mr. Grimes's late challenge to the Bankruptcy Court's jurisdiction to enter the permanent injunctions that preclude him from pursuing this Appeal is nothing more than a collateral attack on the cornerstone of the Plan, a plan which has now been substantially consummated. In seeking to unwind the subject injunctions, Mr. Grimes is, in effect, seeking revocation of the Confirmation Order. Section 1144 of the Bankruptcy Code does not permit such a collateral attack on a final order of confirmation and the Appeal must be dismissed.

## II.    ADDITIONAL RELEVANT FACTS

The Plan is the product of months of arduous negotiations between the Debtors, the Equity Committee, the Creditors' Committee and others and memorializes the settlement of dozens of material disputes among the parties, including the treatment of millions of dollars of indemnity claims asserted by the former officers and directors of RNI. *See Affidavit of Craig Jalbert, Plan Administrator, in Support of Motion to Dismiss* (Ex. A hereto). The parties relied on the finality of the Plan to consummate those settlements over the last four months, including

---

[1] Capitalized terms used in this brief have the same meaning as the capitalized terms contained in RNI's Motion to Dismiss.

DEL1 65670-1

the estates' payment of approximately $250 million to creditors and shareholders.[2] *See* Ex. A, ¶

6. The injunctions are a central component of the deals the parties struck and they have enabled

the parties to implement those deals in the months since. *Id.* at ¶ 8.

Mr. Grimes did not object to the entry of the subject injunctions, and withdrew his other

objections to the Plan at the hearing on confirmation. Confirmation Order at ¶ 26. The Plan

became effective September 25, 2006. Plan at § 1.1; *see generally* Confirmation Order. Mr.

Grimes did not appeal from the Confirmation Order, and the time for taking any such appeal has

lapsed. The Confirmation Order is therefore a final order with res judicata effect.

## III.   LEGAL ARGUMENT

A.    Mr. Grimes Admits that He is Bound by the Permanent Injunctions Entered by the
Bankruptcy Court.

As an initial matter, Mr. Grimes admits, without conceding, that he is permanently

enjoined from continuing this Appeal. On page 17 of the Answering Brief, Mr. Grimes states:

> If the Bankruptcy Court had no jurisdiction to enter the Amended
> Settlement Order, the only way that the issue of attorneys' fees
> paid to plaintiffs' counsel ever will be resolved is through the
> Ninth Circuit appeal. Thus, *the Bankruptcy Court will be*
> *compelled to grant Mr. Grimes relief from the injunctive*
> *provisions of the Confirmation Order and plan (to the extent they*
> *apply to the Ninth Circuit appeal) to allow the Ninth Circuit*
> *appeal to proceed.* (emphasis added).

Thus, Mr. Grimes admits that he cannot proceed without relief from a final order of the

Bankruptcy Court, an order from which he did not appeal. Mr. Grimes cites no authority in

support of his contention that, notwithstanding his failure to appeal, the Bankruptcy Court *will be*

---

[2] As of December 31, 2006, the Plan Administrator had distributed approximately 91 percent of the cash on hand on
the Effective Date, or $257,544,674.80 (including pre- and post-effective expenses and chapter 11 administrative
expenses). Plan Administrator's First Quarterly Report (the "Quarterly Report") (Ex. B hereto). Of the
distributions, the Plan Administrator has distributed $75,347,081.88 to creditors (who have been now paid in full)
and $174,399,534.36 to equity holders, including Mr. Grimes. *Id.*

*required* to grant him relief from the injunctive provisions.  Indeed, as set forth in detail below, the law belies Mr. Grimes's contention.

B. The Doctrine of Res Judicata Precludes Mr. Grimes from Continuing this Appeal.

The Third Circuit has summarized res judicata as applied to bankruptcy cases as follows:

> Section 1141(a) of the [Bankruptcy] Code provides that a plan is
> binding upon all parties once it is confirmed…[A] confirmed plan
> of reorganization is binding upon every entity that holds a claim or
> interest even though a holder of a claim or interest is not
> scheduled, has not filed a claim, does not receive a distribution
> under the plan or is not entitled to retain an interest under such
> plan.  In other words, a confirmed plan precludes parties from
> raising claims or issues that could have or should have been raised
> before confirmation but were not.

*New Jersey Department of Treasury v. Visara Int'l, Inc.*, 166 Fed. Appx. 639, Civ. No. 05-1196 (3d Cir., Feb 15, 2006) (brackets in original) (quoting 8 Collier on Bankruptcy ¶ 1141.02 (15th ed., rev. 2004)).  Thus, where a party fails to appeal from an order confirming a plan of reorganization, this Circuit has precluded that party from subsequently attacking the validity of provisions set forth in the plan.  *See id.*; *In re PWS Holding Corp.*, 303 F. 3d 308, 315 (3d Cir. 2002); *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F. 3d 187, 194 (3d Cir. 1999); *In re Szostek*, 886 F. 2d 1405, 1413 (3d Cir. 1989).  Here, Mr. Grimes was an active participant in the confirmation proceedings: he initially objected to the entry of the Confirmation Order, then negotiated modifications to the Confirmation Order with respect to his objections, and finally withdrew his objections based upon such agreed changes.  He had ample opportunity to object to the injunctions and to appeal from the Confirmation Order, a final judgment on the merits,[3] but chose not to do so.  Thus, the Confirmation Order is now res judicata, barring Mr. Grimes from attacking the validity of the subject injunctions.  *See e.g. Visara Int'l, Inc.*, 166 Fed. Appx. at 642 (confirmation order was res judicata, precluding state from continuing contract action

---

[3] *See In re PWS Holding Corp.* 303 F. 3d at 315; *see also* 11 U.S.C. § 1141(a).

against debtor in state court where it had previously withdrawn identical claims against debtor in bankruptcy case); *CoreStates Bank, N.A.*, 176 F. 3d at 205-06 (precluding creditor from enforcing pre-confirmation subordination agreement where creditor failed to appeal from confirmation order that did not include provisions of subordination agreement).

      The facts of the present case are analogous to those in *In re PWS Holding Corp.*, 303 F. 3d 308 (3d Cir. 2002). In *PWS*, a supermarket chain commenced a chapter 11 case. *Id.* at 310. When the plan of reorganization proposed releasing certain fraudulent transfer claims, three creditors, including one Haskell, objected. *Id.* Prior to the hearing on confirmation of the plan, Haskell filed an action against various third parties in Alabama state court under the Alabama Uniform Fraudulent Transfer Act (the "Alabama Action"). *Id.* at 311. While the Alabama Action was pending, the bankruptcy court confirmed the plan over Haskell's objection. *Id.* The confirmation order specifically barred the Alabama Action, and enjoined "all entities…from commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims and Causes of Action that [were] extinguished or released pursuant to the Plan or [the] Confirmation Order." *Id.* at 312. Haskell did not appeal from the confirmation order and continued his pursuit of the Alabama Action. *Id.* The Debtors filed, and the District Court granted, a motion to enforce the Confirmation Order to enjoin the Alabama Action. *Id.* Haskell appealed, and the Third Circuit affirmed, finding that "Haskell had the opportunity to contest the extinguishment of the fraudulent transfer claims, but his objections were overruled by the District Court through its Confirmation Order, *from which he did not file an appeal.*" *Id.* at 315 (emphasis added). The Court thus held that the confirmation order precluded Haskell from pursuing the previously filed Alabama Action. *Id.*

      Mr. Grimes, like Haskell in *PWS*, failed to appeal from the Bankruptcy Court's

-4-

Confirmation Order, which order explicitly bars the continuation "in any manner any action or other proceedings against the Debtor or the Reorganized Debtors or their respective properties." (Ex. D of Motion to Dismiss, ¶ 49). As a result, as was Haskell in *PWS,* Mr. Grimes is barred from pursuing the Appeal and it must be dismissed.

Numerous courts have similarly barred parties, like Mr. Grimes, who fail to appeal from the provisions of a confirmed plan, from later challenging the court's power to approve or implement the provisions of the plan. *See e.g. In re Crown Vantage, Inc.,* 421 F. 3d 963, 972 (9th Cir. 2005) ("[A] confirmed reorganization plan operates as a final judgment with res judicata effect," even if provisions set forth in the plan are inconsistent with the Bankruptcy Code or contain illegal provisions) (citation omitted); *In re Midstate Mortgage Investors, Inc.,* 105 Fed. Appx. 420, 423, No. 03-2153, (3d Cir., Aug. 5, 2004) (the finality of a confirmed plan precluded creditor from subsequently challenging the bankruptcy court's authority to include in the plan the release of certain loan guarantors); *Corbett v. MacDonald Moving Servs., Inc.,* 124 F. 3d 82, 89 (2d Cir. 1997) ("When a bankruptcy court approves a plan of reorganization involving persons over whom the court has personal jurisdiction, and adjusts the debts and obligations among the debtor, the debtor's parent companies, and its creditors, all persons present and having an opportunity to challenge the bankruptcy court's jurisdiction to approve or implement each component of the plan must raise subject matter jurisdiction at that time or on direct appeal *or not at all*.") (emphasis added); *Trulis v. Barton,* 107 F.3d 685 (9th Cir. 1995) (res judicata precludes continuation of lawsuit filed prior to confirmation of chapter 11 plan of reorganization where confirmation order released claims against debtor and enjoined the continuation of any lawsuits against debtor); *Monarch Life Ins. Co. v. Ropes & Gray,* 65 F. 3d 973, 983 (1st Cir. 1995) (when a bankruptcy court's power to enter an injunction is conclusively

-5-

resolved in a confirmation order, a party that neither opposed nor appealed from the confirmation

order is precluded from subsequently challenging the court's jurisdiction to enter the injunction);

*In re Ivory*, 70 F. 3d 73, 75 (9th Cir. 1995) (a party who did not object to chapter 13 confirmation

order was precluded from challenging bankruptcy court's jurisdiction, even "if the bankruptcy

court's error was jurisdictional"); *In re Szostek*, 886 F. 2d 1405, 1413 (3d Cir. 1989) (where

creditor to chapter 13 debtor failed to appeal from confirmation of the chapter 13 plan, it became

final, and precluded creditor from challenging its provisions even if contrary to the Bankruptcy

Code); *Republic Supply Co. v. Shoaf*, 815 F. 2d 1046, 1052-53 (5th Cir. 1987)(even if the

jurisdiction of the bankruptcy court is not raised prior to confirmation, a party "need only have

an opportunity to raise the question of jurisdiction," and if no objection is raised, the bankruptcy

court's order is binding, foreclosing from review the court's authority to confirm any provisions

of the plan); *see also Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938) (once a Federal court has

decided the question of jurisdiction, "the court in which the plea of res judicata is made has not

the power to inquire again into that jurisdictional fact").  Thus, the doctrine of res judicata

precludes Mr. Grimes from attacking the Bankruptcy Court's jurisdiction enjoining him from

continuing this Appeal, and the Appeal must be dismissed.

      C.     The Plain Language of the Confirmation Order is Not Subject to Interpretation.

      The injunction provisions set forth in the Plan and the Confirmation Order are not

ambiguous and plainly prohibit the continuation of any claims against RNI.  *See* Plan at § 6.10;

Confirmation Order at ¶ 49.  The plain language of a court order is simply not subject to

interpretation and cannot be ignored.  *See DirecTV, Inc. v. Leto*, 2006 WL 3163232, *4 (3d Cir.

2006) (the plain language of a court's order required a certain conclusion); *In re Midstate*

*Mortgage Investors, Inc.*, 105 Fed. Appx. at 423 (the plain language of plan of reorganization is

determinative); *Jewelcor Inc. v. Asia Commercial Co., Ltd.*, 11 F.3d 394, 396 (3d Cir. 1993) (the

plain language and grammar of a bankruptcy court order dictated a particular result).

The present case is analogous to the *Monarch Life* case, in which the bankruptcy court confirmed a plan of reorganization, *inter alia*, barring all persons from the commencement or continuation of any action or proceeding from or related to a claim against the debtor and, among others, its attorneys. *Monarch Life Ins. Co.*, 65 F.3d at 976. Notwithstanding the injunctions, a creditor of the debtor brought a subsequent state court action against the debtor's former attorneys. *Id.* The debtor's former attorneys moved the bankruptcy court for an order holding the creditor in contempt for violation of the injunction. *Id.* at 977. The creditor argued that the permanent injunction provision of the confirmed plan could not, as a matter of law, extinguish actions against third parties, such as the debtor's attorneys. *Id.* The creditor further argued that the injunction was ambiguous, requiring the court to construe it more narrowly than its plain language suggested. *Id.* The court disagreed, stating that the creditor "cannot turn a blind eye to the plain import of the injunctive provision in the confirmation order, then under the guise of an alleged 'ambiguity' attempt to relitigate the 'jurisdiction' of the court to enter the injunction." *Id.* at 983. The court found that the confirmation order estopped the creditor from belatedly challenging the bankruptcy court's power to enter the injunction. *Id.* at 983.

Here, by arguing that there is no evidence that the Bankruptcy Court intended that the Confirmation Order and the Plan permanently enjoin this appeal, Mr. Grimes is similarly asking the Court to "turn a blind eye to the plain import of the injunctive provision in the [C]onfirmation [O]rder, then under the guise of an alleged 'ambiguity' attempt to relitigate the 'jurisdiction' of the court to enter the injunction." *Id.* at 983. Consistent with *Monarch Life*, the Court should bar Mr. Grimes from challenging the clear import of the subject injunctions.

D.     Section 1144 of the Bankruptcy Code Precludes the Relief Mr. Grimes Seeks.

Mr. Grimes admits that, in order to continue this Appeal, he requires relief from the injunctive provisions of the Confirmation Order. Answering Brief at 17. However, the subject injunctive provisions are the heartstrings of the Plan. Granting Mr. Grimes relief from the injunctions would therefore be tantamount to revocation of the Confirmation Order approving the Plan. Section 1144 of the Bankruptcy Code, the only means by which Mr. Grimes could move for the revocation of the Confirmation Order, does not permit such a collateral attack on a final confirmation order and the Appeal must be dismissed.

Revocation of a confirmation order is governed by Section 1144 of the Bankruptcy Code, which provides, in relevant part:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud.

11 U.S.C § 1144. *See also In re Genesis Health Ventures, Inc.*, 340 B.R. 729, 733 (D. Del. 2006) (stating that the terms of section 1144 are strictly construed and do not allow one "to do indirectly what [he] may no longer do directly because of that statutory bar") (citation omitted). Mr. Grimes has not sought relief under section 1144 of the Bankruptcy Code. Rather, in an attempt to do an end run around this section of the Bankruptcy Code, he wages an impermissible collateral attack on the jurisdiction of the Bankruptcy Court. "Such attacks are barred by res judicata." *See In re Bowen*, 174 B.R. 840, 849 (Bankr. S.D. Ga. 1994) (holding that a creditor in a chapter 11 case was barred by res judicata from collaterally attacking a plan of reorganization on the basis that the bankruptcy court lacked jurisdiction to enter confirmation order; rather, a confirmation order may be revoked only upon the request of a party under section 1144); *see also In re Fesq*, 153 F. 3d 113, 120 (3d Cir. 1998) (chapter 13 case comparing section 1144 to

-8-

virtually identical chapter 13 provision and concluding that fraud is the only ground upon which someone may seek to revoke a confirmed plan); *In re Michelson*, 141 B.R. 715, 723 (Bankr. E.D. Cal. 1992)("[a]bsent a timely appeal, [a plan of reorganization] can be revoked only under the narrow terms of section 1144. The sole permissible basis is fraud that is complained of within 180 days."); *In re Elstein*, 238 B.R. 747 (Bankr. N.D. Ill. 1999) (interpreting chapter 13 provision mirroring section 1144, and holding that those attempting to revoke a confirmed plan may not end run statute governing revocation, but must strictly comply with it).

    E.    The Cases Cited in Support of the Answering Brief are Inapposite.

    Two key facts distinguish those cases cited by Mr. Grimes in support of his Answering Brief from the applicable law summarized above: (1) Mr. Grimes's failure to appeal from the Confirmation Order; and (2) the order from which he now seeks relief is a confirmation order entered in a chapter 11 case. It is true, as a general matter of law, that the filing of an appeal divests the lower court of its control over those aspects of the case directly involved in the appeal; however, where, as here, Mr. Grimes failed to appeal the Confirmation Order of which he now complains, the Confirmation Order is res judicata and there is no jurisdictional impediment to its enforcement. *See In re PWS Holding Corp.*, 303 F. 3d at 315; *Monarch Life Ins. Co.*, 65 F. 3d at 983.

    The majority of cases cited by Mr. Grimes involve parties who timely appealed directly from the order of the lower court that is the subject matter of the challenge. *See Griggs v. Provident Consumer Corp.*, 459 U.S. 56 (1982); *In re Transtexas Gas Corp.*, 303 F. 3d 571 (5th Cir. 2002); *United States v. Batka*, 916 F. 2d 118 (3d Cir. 1990); *Main Line Fed. Sav. and Loan Assoc. v. Tri-Kell, Inc.*, 721 F. 2d 904 (3d Cir. 1983); *In re Bialac*, 694 F. 2d 625 (9th Cir. 1982); *In re Hagel*, 184 B.R. 793 (9th Cir. BAP 1995); *In re AWC Liquidation Corp.*, 292 B.R. 239 (D. Del. 2003); *In re Sacred Heart Hosp. of Norristown*, 204 B.R. 132 (E.D. Pa. 1997); *In re Bryant*,

-9-

DEL1 65670-1

175 B.R. 9 (W.D. Va. 1994); *In re Wonder Corp. of America*, 81 B.R. 221 (Bankr. D. Conn. 1988); *In re Maddox*, 84 B.R. 251 (Bankr. N.D. Ga. 1987); *In re Kendrick Equip. Corp.*, 60 B.R. 356 (Bankr. W.D. Va. 1986); *In re Butcher Boy Meat Market, Inc.*, 10 B.R. 258 (E.D. Pa. 1981). In those cases, therefore, unlike here, res judicata did not bar the appellants from proceeding to challenge the lower court's order on appeal.

The only other decisions Mr. Grimes cites for support, *In re Padilla*, 222 F. 3d 1184 (9th Cir. 2000), *In the Matter of Statistical Tabulating Corp., Inc.*, 60 F. 3d 1286 (7th Cir. 1995) and *Lawrence v. Remes*, No. 92-1103, 1993 WL 141066, at *3 (6th Cir. Apr. 30, 1993), are inapposite because the appeals at issue there do not challenge an order confirming a plan of reorganization, and thus do not tread on the binding effect of a confirmation order.[4] As noted *supra.* at pp. 5-6, where, as here, a party has an opportunity to challenge the bankruptcy court's jurisdiction over the confirmation of certain plan provisions, that party "must raise subject matter jurisdiction at that time or on direct appeal *or not at all*." *Corbett*, 124 F. 3d at 89 (emphasis added).  Thus, Mr. Grimes's reliance on the cases he cites in his Answering Brief is misplaced.

---

[4] Mr. Grimes's reliance on *Lawrence* is even more attenuated where he cites to the dissent's discussion as to whether the bankruptcy court erroneously consolidated a chapter 7 case and a chapter 11 case. *See Lawrence*, 1993 WL 141066, at *3.

## IV.    CONCLUSION

For the reasons set forth herein and in the Motion to Dismiss, Mr. Grimes is permanently

enjoined from pursuing this Appeal and the Appeal must be dismissed in its entirety.

DATED:  February 8, 2007            Respectfully submitted,

**RNI WIND DOWN CORPORATION F/K/A
RIVERSTONE NETWORKS, INC.,**

**KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP**

By:  _/s/ Christopher A. Ward_
Christopher A. Ward (Del. Bar No. 3877)
919 North Market Street, Suite 1000
Wilmington, DE 19801
Tel:    302-426-1189
Fax:    302-426-9193

          -and-

**BROWN RUDNICK BERLACK ISRAELS LLP**
Cheryl B. Pinarchick, Esq.
One Financial Center
Boston, MA 02111
Tel:    617-856-8200
Fax:    617-856-8201

**ATTORNEYS FOR RNI WIND DOWN
CORPORATION, ET AL.**

# 1477278 v1 -

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| RNI WIND DOWN CORPORATION, et al., | : | |
| | : | Case No. 06-10110 (CSS) |
| Reorganized Debtors. | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | (Jointly Administered) |
| | : | |
| CHARLES L. GRIMES, | : | |
| | : | |
| Appellant, | : | |
| | : | Civil Action No. 06-cv-00585 (GMS) |
| v. | : | |
| | : | |
| RNI WIND DOWN CORPORATION, et al., | : | |
| | : | |
| Appellees. | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | |

## AFFIDAVIT OF CRAIG R. JALBERT

I, Craig R. Jalbert, do hereby depose and state as follows:

1.      I am a certified insolvency and restructuring advisor with Verdolino & Lowey, P.C., a management consulting, accounting and tax services firm located in Foxboro, Massachusetts.

2.      I am the Plan Administrator for the Debtors in the chapter 11 cases titled *In re RNI Wind Down Corp.*, Case No. 06-10110 (Bankr. D. Del.) (the "Chapter 11 Cases").

3.      As Plan Administrator, I administer the distributions provided for under the Plan and resolve outstanding claim objections and other matters relating to the liquidation of the Debtors' estates.

4.      In the Chapter 11 Cases, numerous former directors and officers of RNI filed indemnity claims against the Debtors' estates totaling millions of dollars.

5.    The Plan memorializes the settlement of dozens of material disputes among the parties, including the treatment of the indemnity claims.

6.    The parties relied on the finality of the Plan to consummate those settlements over the last four (4) months, including the estates' payment of more than $250 million to creditors and shareholders. These distributions amount to approximately 91 percent of the cash on hand as of the Effective Date of the Plan.

7.    Of the distributions, through December 31, 2006 I have transferred $75,347,081.88 to creditors (who have been paid in full) and $174,399,534.36 to equity holders.

8.    The injunctions are a central component of the deals the parties struck and have enabled me to implement those deals in the months since.

Signed under the penalties and pains of perjury,

Dated: February _7_, 2007        Craig R. Jalbert

# 1478269 v1 -

2

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
                                                       :
In re:                                                 :        Chapter 11
                                                       :        Case No. 06-10110 (CSS)
RNI WIND DOWN CORPORATION, et al.¹, :
                                                       :        (Jointly Administered)
                                                       :
                          Reorganized Debtors          :
                                                       :
-------------------------------------------------------x
```

## PLAN ADMINISTRATOR'S FIRST QUARTERLY REPORT

---

¹ The Reorganized Debtors are RNI Wind Down Corporation, formerly known as Riverstone Networks, Inc., (Tax ID No. XX-XXX6178), BlueCoast Software (Tax ID No. XX-XXX9415), The OASys Group, Inc. (Tax ID No. XX-XXX8093), Riverstone Networks SPC, Inc. (Tax ID No. XX-XXX3518) and Pipal Systems, Inc. (Tax ID No. XX-XXX6850).



# RNI Wind Down Corporation
## Cash Receipts and Disbursements
September 25 through December 31, 2006

| | | | |
|---|---|---|---|
| Cash balance September 25, 2006 | | | $284,323,931.60 |
| | | | |
| Receipts | | | |
| Interest Income | | | $976,395.51 |
| Litigation Proceeds | | | $950,000.00 |
| Lucent Escrow Proceeds, net | | | $2,111,272.00 |
| Other receipts (Refunds, etc.) | | | $37,306.21 |
| Total receipts | | | $4,074,973.72 |
| | | | |
| Total available funds | | | $288,398,905.32 |
| | | | |
| Disbursements | | | |
| Post Effective Expenses | | | |
| 401(k) Adminstration | | | $4,293.36 |
| ADP Payroll Processing fees | | | $3,276.39 |
| Bank Service Charges | | | $1,739.46 |
| Bond Premium | | | $25,000.00 |
| Consultants | | | $261,478.52 |
| Corporate governance | | | $632.00 |
| Legal | | | $966,409.85 |
| Santa Clara Office | | | $8,295.32 |
| Storage | | | $3,040.00 |
| Trustee fees | | | $108,271.15 |
| U.S. Trustee Fees | | | $11,000.00 |
| Total Post Effective Expenses | | | $1,393,436.05 |
| Chapter 11 Administrative Professional fees | | | |
| Debtors' Fees | | | $1,945,188.66 |
| Equity Committee Fees | | | $3,102,745.26 |
| Fee Examiner Fees | | | $97,508.61 |
| Unsecured Creditors' Committee Fees | | | $648,273.59 |
| Total Chapter 11 Admin Prof. | | | $5,793,716.12 |
| | | | |
| Distributions to Creditors | | | |
| Administrative Claims | | | $31,207.05 |
| Bondholder Claims | | | $68,485,723.28 |
| Feldman Claim | | | $625,488.21 |
| Gopalarkrishan Claim | | | $15,398.71 |
| General Unsecured Claims | | | |
| Claim Payments | | $5,032,419.47 | |
| ER Matching Taxes | | $32,617.84 | |
| Interest | | $86,033.54 | |
| Total General Unsecured Claims | | | $5,151,070.85 |
| Harding Claim | | | $5,020.00 |
| Kern Claim | | | $450,000.00 |
| Other D&O | | | $33,904.01 |
| Pereira Claim | | | $17,870.72 |
| Section 6a-2 | | | $513,528.31 |
| Stanton Claim | | | $17,870.72 |
| Total Distributions to Creditors | | | $75,347,081.86 |
| | | | |
| Pre-Effective Expenses | | | |
| Claims agent | | | $223,946.39 |
| Consulting | | | $155,024.48 |
| Expense Reimbursements | | | $10,204.53 |
| Insurance | | | $1,530.73 |
| Shareholder Services | | | $1,653.51 |
| Telephone | | | $424.10 |

# RNI Wind Down Corporation
## Cash Receipts and Disbursements
September 25 through December 31, 2006

| | | | | | | |
|---|---|---|---|---|---|---:|
| | | | Wages | | | $218,122.67 |
| | | Total Pre-Effective Expenses | | | | $610,906.41 |
| | | | | | | |
| | | Distributions to Equity | | | | |
| | | | Shareholders | | | $161,232,449.20 |
| | | | Options/Restricted | | | $12,934,877.62 |
| | | | ER Matching Taxes | | | $232,207.54 |
| | | Total Distributions to Equity | | | | $174,399,534.36 |
| | | | | | | |
| | Total disbursements | | | | | $257,544,674.80 |
| | | | | | | |
| | Cash balance December 31, 2006 | | | | | $30,854,230.52 |
| | | | | | | |

## Attachment to Plan Administrator's First Quarterly Report

### Summary of Material Litigation and Other Events

### Dispute With Morrison & Foerster LLP:

On or about September 22, 2006, the Official Committee of Equity Security Holders and the Plan Administrator filed their Joint Complaint Against Morrison & Foerster LLP, Objection to Claims Asserted by Morrison & Foerster LLP, and Objection to Request for Date Change .of Morrison & Foerster LLP, objecting to claims filed by Morrison & Foerster, LLP ("M&F") in the Debtors' bankruptcy and asserting certain affirmative causes of action against M&F. On or about November 2, 2006, the Plan Administrator filed its Amended (I) Complaint Against Morrison & Foerster LLP, (II) Objection to Claims Asserted by Morrison & Foerster LLP, and (III) Objection to Request for Date Change of Morrison & Foerster LLP (the "Amended Complaint"), objecting to additional claims filed by M&F. To date, the aggregate amount of claims asserted by M&F is approximately $225,000. On or about December 18, 2006, M&F filed a Motion to Dismiss (the "Motion to Dismiss") seeking to dismiss the Amended Complaint. By agreement between the parties, the Plan Administrator's deadline to respond to the Motion to Dismiss is January 26, 2007. No hearing on this matter has been scheduled at this time.

### Dispute With Morris, Nichols, Arsht & Tunnell LLP:

On or about October 25, 2006, Morris, Nichols, Arsht & Tunnell LLP ("MNAT"), a law firm representing certain of the Debtors' former officers and directors (the "Certain Settling Officers and Directors") in connection with the Debtors' bankruptcy cases, filed, among other things, the Amended Certain Settling Officers' and Directors Application for Allowance and Payment of Professional Fees of Morris, Nichols, Arsht & Tunnell LLP and Reimbursement of Expenses Incurred During the Period from April 7, 2006 Through September 25, 2006, or in the Alternative, Motion for Payment and Reimbursement Pursuant to 11 U.S.C. §§ 105(a) and 503(b) for Making a Substantial Contribution, purportedly seeking reimbursement of professional fees and expenses in the amount of $786,301.02 (as supplemented, the "Claimed Fees") on account of the Debtors' indemnification obligations to the Certain Settling Officers and Directors, or, in the alternative, seeking the Claimed Fees as reimbursement for the "substantial contribution" of the Certain Settling Officers and Directors and MNAT to the Debtors' bankruptcy cases.

On or about November 9, 2006, the Plan Administrator filed its preliminary objection to the Initial Fee Application, and on or about November 22, 2006, the Plan Administrator filed its supplemental objection to the Initial Fee Application, arguing that the Debtors' estates had no liability for the Claimed Fees because such amounts are not indemnifiable under applicable law, and that neither the Certain Settling Officers and Directors nor MNAT had made a substantial contribution to the Debtors' cases.

MNAT has filed supplemental fee applications (in the amounts of $136,863.22 and $122,556.81, respectively) seeking reimbursement for fees and expenses purportedly incurred subsequent to the time period covered by the Initial Fee Application. To date,

**Attachment to Plan Administrator's First Quarterly Report**

**Summary of Material Litigation and Other Events**

the aggregate amount of Claimed Fees asserted by MNAT is approximately $1.05 million.

Pursuant to the Bankruptcy Court's Order Assigning Matter to Mediation, the Claimed Fees and the Plan Administrator's objections thereto have been assigned to mediation before the Honorable Kevin J. Carey. The mediation is scheduled to take place on or about February 26, 2007.

### Dispute With U.S. Bank National Association, as Indenture Trustee:

U.S. Bank National Association (the "Bond Trustee"), as indenture trustee for the 3 ¾% Convertible Subordinated Notes, filed proofs of claim in the Debtors' bankruptcy cases (the "Bond Trustee Proofs of Claim") on account of the Bondholder Claims as well as for reimbursement of the Bond Trustee's fees and expenses. The Bond Trustee also submitted applications ("Bond Trustee Fee Applications") in accordance with section 4.5(e) of the Plan for reimbursement of the Bond Trustee's fees and expenses (collectively, the Bond Trustee Proofs of Claim and the Bond Trustee Fee Applications are referred to as the "Fee Reimbursement Requests"). To date, the Fee Reimbursement Requests aggregate approximately $600,000.

The Plan Administrator paid the Bondholder Claims in full on the Initial Distribution Date. However, the Plan Administrator disputes the Bond Trustee's entitlement to reimbursement by the estate of its fees and expenses, arguing that the Debtors' estates had no liability for the Fee Reimbursement Requests because such amounts were not "incurred" by the Bond Trustee. In addition, the Plan Administrator disputes the reasonableness of the fees and expenses included in the Fee Reimbursement Requests. Accordingly, on or about September 22, 2006, the Plan Administrator filed a claim objection to the Bond Trustee Proofs of Claim (solely as to the fees and expenses) and disputes the payment of the additional Bond Trustee Fee Applications submitted by the Bond Trustee pursuant to section 4.5(e) of the Plan. This dispute is currently scheduled for a hearing before the bankruptcy court on February 8, 2007.

### Status of Claim Objections:

On January 8, 2007, the bankruptcy court held a hearing to consider the relief sought in the various claim objections filed in the Debtors' bankruptcy cases. The bankruptcy court entered Orders allowing each of the pending claim objections. As a result of the resolution of a multitude of claims prior to the hearing and the bankruptcy court's entry of these Orders, the vast majority of the claims filed against the Debtors now have been resolved. The remaining claims include the M&F, MNAT, and Bond Trustee claims described above as well as the indemnification claim filed by Andrew Feldman (a former officer of the Debtors). The hearing to consider the objection to Andrew Feldman's claim is currently scheduled for February 8, 2007.

2

**Attachment to Plan Administrator's First Quarterly Report**

**Summary of Material Litigation and Other Events**

**_In re Riverstone Networks, Inc. Derivative Litigation_, No. CV-810290, Santa Clara Superior Court:**

On August 13, 2002, a stockholder derivative suit was filed in the Santa Clara Superior Court on behalf of Riverstone Networks, Inc. In April 2003, another derivative suit was filed in the Santa Clara Superior Court (_Carrico v. Pereira_, No. CV-816188). The two derivative actions were then consolidated into this action. In May 2003, a consolidated derivative complaint was filed. The defendants demurred and moved to stay the proceedings in favor of the related federal derivative action filed in the United States District Court for the Northern District of California, _Watterson v. Pereira_, Case No. C-03-0637 (collectively, the actions are referred to as the "Derivative Litigation"). On September 17, 2003, the Court sustained the demurrer without prejudice to amend the complaint and, at the same time, granted the motion to stay. The stay is presently still in effect. The Plan Administrator has requested that the derivative plaintiffs agree to voluntarily dismiss the action. If the derivative plaintiffs do not agree to do so, the Plan Administrator intends to file a motion to lift the stay and to dismiss the case. A case management conference is scheduled for January 22, 2007.

**_Grimes v. RNI Wind Down Corporation, et al._, Civil Action No. 06-cv-00585 (GMS), United States District Court for the District of Delaware:**

Mr. Grimes has appealed the Bankruptcy Court's approval of an amended settlement agreement between the parties to the Derivative Litigation. On December 19, 2006, the Plan Administrator moved to dismiss the appeal on the grounds that Mr. Grimes is permanently enjoined from pursuing the appeal by the Confirmation Order and the Plan. Mr. Grimes's response to the motion is due on or before January 25, 2007.

**_Grimes v. Watterson, et al._, No. 05-16588, United States Court of Appeals for the Ninth Circuit:**

On March 29, 2006, this appeal was stayed by the commencement of the bankruptcy proceedings. On November 24, 2006, the United States Court of Appeals for the Ninth Circuit issued an order that appears to lift the stay as to the former officers and directors but not as to the Reorganized Debtors. However, on or about December 15, 2006, the Plan Administrator filed a motion to dismiss the appeal on the grounds that Mr. Grimes is permanently enjoined from pursuing the appeal by the Confirmation Order and the Plan. The filing of the motion to dismiss has resulted in a stay of the briefing schedule with respect to the merits as to all parties. Mr. Grimes's opposition to the motion to dismiss is due on January 18, 2007.

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| | :     Chapter 11 |
| RNI WIND DOWN CORPORATION, et al., | : |
| | :     Case No. 06-10110 (CSS) |
| Reorganized Debtors. | : |
| | :     (Jointly Administered) |
| CHARLES L. GRIMES, | : |
| | : |
| Appellant, | : |
| | : |
| v. | :     Civil Action No. 06-cv-00585 (GMS) |
| | : |
| RNI WIND DOWN CORPORATION, et al., | : |
| | : |
| Appellees. | : |

## COMPENDIUM OF UNREPORTED CASES

DirecTV, Inc. v. Leto
    2006 WL 3163232 (3d Cir. 2006)...............................................................................1

Lawrence v. Remes
    No. 92-1103, 1993 WL 141066 (6th Cir. Apr. 30, 1993) ...........................................2

New Jersey Dep't of Treasury v. Visara Int'l, Inc.
    166 Fed. Appx. 639, Civ. No. 05-1196 (3d Cir., Feb 15, 2006)...........................3

**KLEHR, HARRISON, HARVEY,**
**BRANZBURG & ELLERS LLP**
Christopher A. Ward (Del. Bar No. 3877)
919 North Market Street, Suite 1000
Wilmington, DE 19801
Tel:   302-426-1189
Fax:   302-426-9193

       -and-

**BROWN RUDNICK BERLACK ISRAELS LLP**
Cheryl B. Pinarchick, Esq.
One Financial Center
Boston, MA 02111
Tel:   617-856-8200
Fax:   617-856-8201

**ATTORNEYS FOR RNI WIND DOWN**
**CORPORATION, ET AL.**

# 1



467 F.3d 842
467 F.3d 842
**(Cite as: 467 F.3d 842)**

Page 1

Briefs and Other Related Documents
DirecTV, Inc. v. LetoC.A.3 (Pa.),2006.
United States Court of Appeals,Third Circuit.
DIRECTV, INC., a California Corporation, Appellant
v.
Bennie LETO.
**No. 05-3908.**

Argued Oct. 4, 2006.
Filed Nov. 6, 2006.

**Background:** Satellite cable company brought action against consumer, alleging illegal interception of its television transmissions. The United States District Court for the Western District of Pennsylvania, Gary L. Lancaster, J., dismissed action. Company appealed.

**Holding:** The Court of Appeals, Ambro, Circuit Judge, held that district court's original order severed claims as to multiple defendants.

Reversed and remanded.
West Headnotes

**[1] Federal Civil Procedure 170A**  **81**

170A Federal Civil Procedure
  170AI In General
    170AI(E) Joinder of Claims and Remedies
      170Ak81 k. In General. Most Cited Cases
District court's original order properly severed cable company's claims as to multiple defendants accused of illegally intercepting television transmissions, rather than dismissing action as whole, for purposes of company's subsequent action as to single defendant; company, initially having filed timely complaint that misjoined defendants, would have been substantially prejudiced on limitations grounds if claims were deemed dismissed and not severed. Fed.Rules Civ.Proc.Rule 21, 28 U.S.C.A.

**[2] Federal Civil Procedure 170A**  **387.1**

170A Federal Civil Procedure
  170AII Parties
    170AII(J) Defects, Objections and Amendments
      170Ak387 Misjoinder
        170Ak387.1 k. In General. Most Cited Cases
"Misjoinder" occurs when there is no common question of law or fact, or when events that give rise to plaintiff's claims against defendants do not stem from same transaction. Fed.Rules Civ.Proc.Rule 21, 28 U.S.C.A.

**[3] Federal Civil Procedure 170A** **388**

170A Federal Civil Procedure
  170AII Parties
    170AII(J) Defects, Objections and Amendments
      170Ak387 Misjoinder
        170Ak388 k. Striking Out or Dropping Parties. Most Cited Cases

**Limitation of Actions 241** **130(8)**

241 Limitation of Actions
  241II Computation of Period of Limitation
    241II(H) Commencement of Proceeding; Relation Back
      241k130 New Action After Dismissal or Nonsuit or Failure of Former Action
        241k130(8) k. Failure for Defects as to Parties. Most Cited Cases
When court drops defendant from action under misjoinder rule, that defendant is dismissed without prejudice; statute of limitations is not tolled, since court treats initial complaint as if it never existed. Fed.Rules Civ.Proc.Rule 21, 28 U.S.C.A.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

467 F.3d 842
467 F.3d 842
(Cite as: 467 F.3d 842)

[4] **Federal Civil Procedure 170A** 🔑 81

170A Federal Civil Procedure
   170AI In General
      170AI(E) Joinder of Claims and Remedies
         170Ak81 k. In General. Most Cited Cases

**Limitation of Actions 241** 🔑 121(1)

241 Limitation of Actions
   241II Computation of Period of Limitation
      241II(H) Commencement of Proceeding;
Relation Back
         241k121 Defects as to Parties
            241k121(1) k. In General. Most Cited
Cases
When court severs claim against defendant under
misjoinder rule, suit simply continues against severed
defendant in another guise; statute of limitations is
held in abeyance, and severed suit can proceed so
long as it initially was filed within limitations period.
Fed.Rules Civ.Proc.Rule 21, 28 U.S.C.A.

[5] **Federal Civil Procedure 170A** 🔑 388

170A Federal Civil Procedure
   170AII Parties
      170AII(J) Defects, Objections and
Amendments
         170Ak387 Misjoinder
            170Ak388 k. Striking Out or Dropping
Parties. Most Cited Cases
Since district court's decision to remedy misjoinder
by dropping and dismissing party, rather than
severing relevant claim, may have important and
potentially adverse statute of limitations
consequences, discretion delegated to trial judge to
dismiss is restricted to what is just. Fed.Rules
Civ.Proc.Rule 21, 28 U.S.C.A.

[6] **Federal Civil Procedure 170A** 🔑 388

170A Federal Civil Procedure
   170AII Parties
      170AII(J) Defects, Objections and
Amendments
         170Ak387 Misjoinder
            170Ak388 k. Striking Out or Dropping
Parties. Most Cited Cases

Court's discretion to drop and dismiss claims against
misjoined defendants is abated when it prejudices any
substantial right of plaintiffs, which includes loss of
otherwise timely claims if new suits are blocked by
statutes of limitations. Fed.Rules Civ.Proc.Rule 21,
28 U.S.C.A.

*843 Howard R. Rubin, Esquire, William E. Copley,
III (Argued), Sonnenschein, Nath & Rosenthal,
Washington, DC, Counsel for Appellant.
John W. Gibson, Esquire (Argued), Pittsburgh, PA,
Counsel for Appellee.

Before McKEE, AMBRO, and NYGAARD, Circuit
Judges.

OPINION OF THE COURT
AMBRO, Circuit Judge.
DirecTV, a satellite cable company, caught persons
pirating (that is, intercepting without payment) its
television transmissions. Its policy is to sue, and it
did so here. Eight defendants, including Bennie
*844 Leto, were joined in one suit brought in the
United States District Court for the Western District
of Pennsylvania. The claims against the defendants
were timely brought.

The District Court, responding to a motion by the
defendants under Federal Rule of Civil Procedure 21,
entered in December 2003 what appeared to be an
order severing DirecTV's claims against each
defendant. The order reads:
It is hereby ORDERED that the case shall proceed
under the caption of *DIRECTV v. Garry Bloch*, No.
03-0752, as to defendant Garry Bloch. As to each of
the other defendants, the case shall proceed as a
separate action under a separate civil action number
upon payment by plaintiff of the requisite filing fee
as to each defendant.
It is FURTHER ORDERED that all separate actions
arising from this order shall be deemed RELATED
and shall be assigned to the docket of the undersigned
in anticipation of consolidation for the purposes of
pretrial discovery.

Within days of the order, DirecTV paid a separate
filing fee and filed a separate complaint against Leto.
He responded by moving to dismiss on the ground
that the later-filed complaint was outside the statute
of limitations. This made sense only if the 2003
order dismissed DirecTV's complaint rather than
severed one suit into eight separate suits.
Counterintuitively, the District Court agreed with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Leto that it had dismissed the initial DirecTV suit, and dismissed it with prejudice.

[1] Feeling blindsided, DirecTV appeals. While we normally give great deference to a court's interpretation of its own orders, we cannot do so here, as the order is too clear to permit any interpretation but a severance. Even were that not the case, while district judges have discretion to remedy misjoinders either by severing claims or dismissing them without prejudice, that discretion, while accorded a wide fairway, ventures into unplayable rough when it prejudices substantial rights. Here DirecTV, initially having filed a timely complaint that misjoined defendants, is substantially prejudiced if that suit is deemed dismissed and not severed. We thus reverse and remand.[FN1]

> FN1. The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 because DirecTV's causes of action arise under federal law. We have jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final order.
> We exercise plenary review of a District Court's grant of a Rule 12(b)(6) motion (the means by which Leto moved to dismiss here). In re Merck & Co. Sec. Litig., 432 F.3d 261, 266 (3d Cir.2005). In so doing, "we apply the same test as the district court," accepting as true "all facts alleged in the complaint and view[ing] them in the light most favorable to [DirecTV]." Id. (internal quotation marks omitted). We review the District Court's decision to drop parties under Rule 21 for an abuse of discretion. See, e.g., Letherer v. Alger Group, L.L.C., 328 F.3d 262, 266 (6th Cir.2003); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir.1997). Under this standard, we must affirm the District Court's ruling unless we are "left with a definite and firm conviction that the trial court committed a clear error of judgment." Letherer, 328 F.3d at 266 (internal quotation marks omitted).

[2] Federal Rule of Civil Procedure 20(a) permits "joinder"-the joining together of more than one party-if the plaintiff's claim "aris[es] out of the same transaction ... and if any question of law or fact common to all defendants will arise in the action." Misjoinder, on the other hand, occurs when there is no common question of law or fact or when, as here,

the events that give rise to the plaintiff's claims against defendants do not stem from the same transaction.

*845 Misjoinder is governed by Rule 21, which reads:
Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

To remedy misjoinder, then, a court may not simply dismiss a suit altogether. Instead, the court has two remedial options: (1) misjoined parties may be dropped "on such terms as are just"; or (2) any claims against misjoined parties "may be severed and proceeded with separately." Fed.R.Civ.P. 21.

[3][4] The effect of each option is quite different. When a court "drops" a defendant under Rule 21, that defendant is dismissed from the case without prejudice. Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1068 (3d Cir.1979); see also Elmore v. Henderson, 227 F.3d 1009, 1011-12 (7th Cir.2000) (Posner, J.). When that occurs, the "statute of limitations is not tolled" because we treat the initial complaint "as if it never existed." Brennan v. Kulick, 407 F.3d 603, 606 (3d Cir.2005) (internal quotation marks omitted).[FN2] But when a court "severs" a claim against a defendant under Rule 21, the suit simply continues against the severed defendant in another guise. White v. ABCO Eng'g Corp., 199 F.3d 140, 145 n. 6 (3d Cir.1999); Elmore, 227 F.3d at 1012. The statute of limitations is held in abeyance, and the severed suit can proceed so long as it initially was filed within the limitations period. Id.

> FN2. See also Elmore, 227 F.3d at 1011-12 (noting that, although "[w]e cannot find a case on the point," this "seems to us clear as a matter of first principles").

[5] Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is "just." In this context, we turn to the DirecTV/Leto case.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

467 F.3d 842
467 F.3d 842
**(Cite as: 467 F.3d 842)**

While we normally "give particular deference to [a] district court's interpretation of its own order," FN3 we cannot do so where the plain language of the order is completely contrary to the Court's interpretation. The District Court's initial 2003 order on its face was a severance, rather than a dismissal, of DirecTV's claim against Leto. That order specifically stated that the case against Leto *"shall proceed* as a separate action ... upon payment by plaintiff of the requisite filing fee" (emphasis added). Taking this clear cue, within ten days DirecTV paid the filing fee and filed a separate complaint against Leto. Yet in a surprising response to Leto's subsequent motion to dismiss, the District Court interpreted its prior order as a drop and dismissal rather than a severance. It read "shall proceed" out of its 2003 order. To do so trades concise clarity for confusion.

> FN3. *In re Fine Paper Antitrust Litig.,* 695 F.2d 494, 498 (3d Cir.1982). *Accord WRS, Inc. v. Plaza Entm't, Inc.,* 402 F.3d 424, 428 (3d Cir.2005); *Pittsburgh Terminal Corp. v. Balt. & Ohio R.R. Co.,* 824 F.2d 249, 254 (3d Cir.1987) (quoting *In re Fine Paper).*

In its 2003 order, the District Court made no reference to dropping-or even dismissing-any defendants. To repeat, it said that each case (other than against the first defendant) "shall proceed as a separate action under a separate civil action number." This language follows the language*846 in Rule 21: "Any claim against a party may be severed and proceeded with separately." In addition, this language also reflects our Court's description of severance: "[I]f claims are severed pursuant to Rule 21 they become independent actions with separate judgments entered in each." *White,* 199 F.3d at 145 n. 6 (internal quotation marks omitted).

Moreover, if the District Court had intended to drop the misjoined defendants, it should not have said that their "case[s] shall proceed." Dismissed cases do not proceed at all. In addition, the Court itself expected all, now separate, suits to continue, as it further ordered that "all separate actions arising from this order shall be deemed RELATED and shall be assigned to [the Judge's docket] in anticipation of consolidation for the purposes of pretrial discovery."

For these reasons, the District Court's 2003 order was no doubt a severance. In light of the precise wording of the order, it cannot subsequently be deemed a dismissal.

Even if the language of the District Court's 2003 order had not clearly severed DirecTV's claim against Leto, it nonetheless would have been improper for the Court to choose dismissal instead, as this misjoinder remedy would have imposed adverse statute-of-limitations consequences on DirecTV. Although a district court has discretion to choose either severance or dismissal in remedying misjoinder, it is permitted under Rule 21 to opt for the latter only if "just"-that is, *if doing so "will not prejudice any substantial right." See Sabolsky v. Budzanoski,* 457 F.2d 1245, 1249 (3d Cir.1972) (emphasis added). Hence, a court must analyze the consequences of a dismissal on a claimant's ability to meet the statute of limitations prior to choosing dismissal over severance.

This principle was recognized by the Court of Appeals for the Seventh Circuit in *Elmore v. Henderson.* That case, like the one at hand, involved a district court judge's decision to drop and dismiss-rather than sever-a claim under Rule 21 to remedy misjoinder. The judge subsequently dismissed the plaintiff's separately filed complaint as untimely because it was filed outside of the statute-of-limitations period. The Seventh Circuit held that the district court's decision was almost certainly erroneous because, "in formulating a remedy for a misjoinder[,] the judge is required to avoid gratuitous harm to the parties," and is therefore "duty-bound" to prevent a dismissal that would have adverse "statute [-]of[-]limitations consequences." *Elmore,* 227 F.3d at 1012. The district court instead should have severed the claim and allowed it "to continue as a separate suit so that it would not be time-barred" rather than dropping and dismissing the claim. *Id.*

[6] We follow suit and hold that the discretion to drop and dismiss claims against misjoined defendants under Rule 21 is abated when it "prejudic[es] any substantial right" of plaintiffs,FN4 *see* *847*Sabolsky,* 457 F.2d at 1249, which includes loss of otherwise timely claims if new suits are blocked by statutes of limitations.

> FN4. Several district courts, both in and outside the Seventh Circuit, have followed this principle. *See, e.g., DIRECTV, Inc. v. Adrian,* No. 03-C-6366, 2004 WL 1146122, at *4 (N.D.Ill. May 18, 2004) ("We are duty-bound to sever claims rather than dismiss defendants if a dismissal would bring statute of limitations consequences."); *Direct TV, Inc. v. Delaney,* No. 03-C-3444,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

467 F.3d 842
467 F.3d 842
**(Cite as: 467 F.3d 842)**

2003 WL 24232530, at *5 (N.D.Ill. Nov.20, 2003) (same); *Berry v. Ill. Dep't of Human Servs.*, No. 00-C-5538, 2001 WL 111035, at *18 (N.D.Ill. Feb.2, 2001) (avoiding "a dismissal prejudicing a substantial right" by severing claims and tolling the statute of limitations for complaints refiled "within a reasonable period of time"); *Franconia Assocs. v. United States*, 61 Fed.Cl. 335, 337 (Fed.Cl.2004) ("[I]t is important to determine whether there is a statute of limitations problem-if the filing of new suits is barred by the statute, severance is really the only appropriate option, as the original filing date carries over to the new cases."). *Contra DIRECTV Inc. v. Hudson*, No. 2:03-cv-457, at 3-4, 6-8 (S.D.Ohio July 1, 2004) (order) (remedying a misjoinder issue by dismissing, rather than severing, misjoined defendants and stating that DirecTV presumably, "as a part of its litigation strategy, chose to take that risk rather than file separate actions and incur substantial litigation costs in the process").

With this backdrop of cabined discretion, the outcome here writes itself. Even had the District Court been correct in interpreting its 2003 order as a dismissal and not a severance, this still would have affected adversely DirecTV's right to recover from Leto: the new suit, lacking a link back to the timely initial action, would be out of time. Because a dismissal improperly would have imposed adverse statute-of-limitations consequences on DirecTV, we hold that the District Court would have abused its discretion in choosing dismissal as a misjoinder remedy.

* * * * *

The plain language of the District Court's 2003 order requires the conclusion that it severed, rather than dismissed, DirecTV's suit against Leto. That order was so direct and clear-crafted that no contrary conclusion was later conceivable. Once a District Court speaks with such clarity, any deference to its discretion falls away. In addition, even if the language of the District Court's 2003 order did not clearly constitute a severance but instead a dismissal, Rule 21 requires that, in remedying misjoinder, the Court must analyze the consequences of choosing dismissal over severance, and is obliged to avoid prejudicing any substantial right in exercising its discretion. Under this principle, dropping and

dismissing DirecTV's claim against Leto, rather than severing the claim and allowing it to continue as a separate suit so that it would not be time-barred, would have been an abuse of discretion.[FN5]

> FN5. Because of our holdings, we need not reach DirecTV's plea for equitable tolling. However, it is worth noting that equitable tolling would not fit here, as DirecTV does not allege that it was prevented from filing a complaint within the limitations period. Instead, it contends that its initial suit, which *was* filed within the limitations period, was improperly dismissed. As noted by the Seventh Circuit in *Elmore*, "equitable tolling is not a remedy for an erroneous judgment" by the District Court; instead, appeal of the erroneous judgment is the proper course. *Elmore*, 227 F.3d at 1013.

We therefore reverse the District Court's grant of dismissal in favor of Leto and remand this case to the Court for further proceedings consistent with this opinion.

C.A.3 (Pa.),2006.
DirecTV, Inc. v. Leto
467 F.3d 842

Briefs and Other Related Documents (Back to top)

• 05-3908 (Docket) (Aug. 22, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# 2



992 F.2d 1216
992 F.2d 1216, 1993 WL 141066 (C.A.6 (Mich.))
**(Cite as: 992 F.2d 1216)**



Lawrence v. RemesC.A.6 (Mich.),1993.NOTICE:
THIS IS AN UNPUBLISHED OPINION.(The
Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter. Use FI CTA6 Rule 28 and FI
CTA6 IOP 206 for rules regarding the citation of
unpublished opinions.)
United States Court of Appeals, Sixth Circuit.
Walter J. LAWRENCE, Debtor-Appellant,
v.
Richard C. REMES, Trustee-Appellee,
**No. 92-1103.**

April 30, 1993.

On Appeal from the United States District Court for
the Western District of Michigan, No. 91-00202,
<u>Siler</u>, J.
W.D.Mich.

AFFIRMED.

Before <u>RYAN</u> and <u>SILER</u>, Circuit Judges, and
<u>LIVELY</u>, Senior Circuit Judge.
PER CURIAM.
**\*1** Walter J. Lawrence, a pro se debtor, appeals the
district court's judgment affirming a bankruptcy court
order that consolidated his Chapter 7 bankruptcy
petition with a previously filed Chapter 13 case. The
issues are whether: (1) the bankruptcy court
erroneously converted Lawrence's Chapter 7 petition
into a Chapter 13 case, as <u>11 U.S.C. § 706(c)</u> allows
such conversion only by request from the debtor; (2)
the bankruptcy court erroneously consolidated
Lawrence's two petitions under Bankruptcy Rule
1015(a); and (3) the court erroneously determined
that Lawrence had committed defalcation of funds of
his daughter's estate.

I.

Lawrence had filed a Chapter 13 bankruptcy petition
in the Western District of Michigan, which was
dismissed by the bankruptcy court on October 31,
1990, due to his pending Chapter 13 case in Texas.
Lawrence appealed this dismissal to the district court
and requested a stay pending appeal. The stay was
denied, so Lawrence then petitioned under Chapter 7
in the Western District of Michigan.

The bankruptcy court ordered Lawrence to show
cause why the Chapter 7 petition should not be
dismissed pursuant to <u>11 U.S.C. § 707(b)</u>. Both
parties responded and the court did not dismiss the
petition. Later, the bankruptcy court ordered
Lawrence to show cause why the Chapter 7 case
should not be consolidated with the Chapter 13
petition then pending appeal in the district court.
After a hearing, the bankruptcy court entered an order
consolidating the Chapter 7 petition with the Chapter
13 case nunc pro tunc as of the date of the filing of
the Chapter 7 petition. The district court affirmed
the bankruptcy court's order. Appellee has not filed
a brief. For the reasons stated herein, we AFFIRM
the order of the district court.

II.

<u>Section 706(c)</u> prohibits the court from converting a
Chapter 7 case to a Chapter 13 case "unless the
debtor requests such conversion." Lawrence argues
that the bankruptcy court improperly converted the
Chapter 7 case, as the court stated that "[t]he case
will proceed as a Chapter 13 case until all of the
procedures now on appeal have been completed one
way or the other." The district court properly
concluded, however, that the bankruptcy court's
statement did not suggest that the judge converted the
Chapter 7 case into a Chapter 13 case. Instead, the
bankruptcy judge was concerned with preventing
duplication and contradictory rulings as to creditors'
rights in the two cases.

III.

"If two or more petitions are pending in the same

court by or against the same debtor, the court may order consolidation of the cases." Bankruptcy Rule 1015(a). The bankruptcy court has discretion to issue orders that will conserve judicial resources and time. Rule 1015(a) advisory committee note. As the debtor, court, and creditors are identical, consolidation was appropriate given the considerations of confusion, expense, and time.

Lawrence unsuccessfully argues that at the time of consolidation, as the Chapter 13 case was on appeal to the district court, the bankruptcy court lacked jurisdiction. However, the bankruptcy courts were created as adjuncts of the district court. *In re Salem Mortgage Co.,* 783 F.2d 627, 633 n. 18 (6th Cir.1986). Therefore, the bankruptcy court properly concluded that the Chapter 13 case was not closed and would not be closed until all appellate proceedings were resolved. Accordingly, the court did not abuse its discretion in consolidating these cases, as the filing of the Chapter 7 petition while the Chapter 13 case was pending was abusive and invalid. *See In re Martin,* 97 B.R. 1013, 1017 (Bankr.N.D.Ga.1989); *Associates Fin. Servs. Corp. v. Cowen,* 29 B.R. 888, 894 (Bankr.S.D.Ohio 1983). The bankruptcy court disfavored the fact that Lawrence filed the Chapter 7 petition to invoke the protection of the automatic stay after a stay had been denied. Further, the district court opined that Lawrence has been avoiding his creditors since 1984 through abuse of the bankruptcy process.

*2 The dissent rightfully states that once a notice of appeal has been filed from a bankruptcy court's ruling, that court loses its jurisdiction to take further action in the case *on appeal*. However, in this matter, the bankruptcy court consolidated the later-filed Chapter 7 case with the case on appeal. When the debtor appealed that issue to the district court, the district court ratified the bankruptcy court's act of consolidation. As both cases were then in the district court either on appeal or in the adjunct bankruptcy court, they met the criteria of Bankruptcy Rule 1015 ("pending in the same court by ... the same debtor") to allow consolidation.

IV.

A Michigan state probate court determined that Lawrence had committed defalcation of funds of his daughter's estate when it ordered the bonding insurance company to make the estate whole for the funds. The district court referred to this finding, but that does not make the finding appealable in this

case, as this court has jurisdiction only over final orders of the district court in bankruptcy appeals. *In re Continental Airlines, Inc.,* 932 F.2d 282, 285 (3d Cir.1991). In addition, whether the bonding insurance company claim was improperly allowed in the Chapter 13 case is not properly raised in this appeal from the consolidation order, as it is the subject of a different case and a different appeal.

AFFIRMED.

RYAN, Circuit Judge, dissenting.
Bankruptcy Rule 1015 mandates that a bankruptcy court may only consolidate "two or more petitions [that] are *pending in the same court,*" (emphasis added), and so makes clear that in order to consolidate two petitions, the bankruptcy court must have jurisdiction over both. Because I believe the bankruptcy court lacked jurisdiction over Lawrence's Chapter 13 petition, and so lacked jurisdiction to consolidate his Chapter 7 petition with it, I respectfully dissent.

The majority relies on *In re Salem Mortgage Co.,* 783 F.2d 626 (6th Cir.1986), to conclude that the bankruptcy court had jurisdiction over the Chapter 13 petition. However, *Salem* involved a *district court's* subject matter jurisdiction over bankruptcy matters:
Subsection (b) grants to the U.S. district courts original, but not exclusive, jurisdiction of all civil proceedings arising under title 11 or arising under or related to cases under title 11. This broad grant of jurisdiction will enable the *bankruptcy courts, which are created as adjuncts of the district court for the purpose of exercising the jurisdiction,* to dispose of controversies that arise in bankruptcy cases or under the bankruptcy code. Actions that formerly had to be tried in the State court or in the Federal district court, at great cost and delay to the estate, may now be tried in bankruptcy court.

*Id.* at 633 n. 18 (emphasis added) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 18, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5804). It is apparent that the language describing the bankruptcy courts as "adjuncts" of the district courts, to which the majority avers, speaks only to the legitimacy of a bankruptcy court's original jurisdiction, and to the peculiarity of the bankruptcy and district court's nonexclusive jurisdiction over non-core proceedings. While this language may make clear that bankruptcy and district courts enjoy a unique relationship, it does not purport to propose that a bankruptcy court be permitted to have lingering jurisdiction over a case that it dismissed, which dismissal has been appealed to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

district court.    Neither does it explain why that relationship should nullify the rule universally applied to district and appellate court jurisdictions: that the filing of a notice of appeal divests one court of jurisdiction and transfers jurisdiction to the appealed-to court.    The special relationship between the bankruptcy and district courts would not make it any more convenient or less chaotic were the two courts to be simultaneously exercising jurisdiction over a case under these circumstances.

**\*3** A few circuits have addressed the question of the bankruptcy court's relationship to the district court, and its effect on the two court's jurisdiction.    In *In re Combined Metals Reduction Co., 557 F.2d 179 (9th Cir.1977)*, the Ninth Circuit considered a case in which a district court originally denied a party's motion for permission to file objections to bankruptcy claims, and then vacated its order after the party had perfected his appeal.    Although noting "the well-established rule that a bankruptcy court has wide latitude to reconsider and vacate its prior decisions, so long as the proceedings have not been terminated, and no intervening rights have become vested ...," *id.* at 201, the court of appeals concluded that the bankruptcy court lacked jurisdiction to revisit its order once the order had been appealed.    In so doing, the court of appeals explicitly endorsed the application of the general rule regarding loss of jurisdiction to the specific case of bankruptcy courts: The general rule is that once a notice of appeal has been filed, the lower court loses jurisdiction over the subject matter of the appeal....    This rule is clearly necessary to prevent the procedural chaos that would result if concurrent jurisdiction were permitted.

*Id.* at 200 (citations omitted).    The court then discussed one party's argument "that a bankruptcy court can vacate its decision even after an appeal thereof has been perfected...."  *Id.* at 201.  The court rejected this proposed interpretation:*[A]ccepting this view ... would require us to hold that a bankruptcy court and a court of appeals can have concurrent jurisdiction over the subject matter of an appeal.* Such a holding would permit bankruptcy courts to divest the courts of appeals of jurisdiction over appeals by the simple expediency used by the district court in the case presently before us.  *We are of the opinion that no lower court should be able to vacate or modify an order under appeal, not even a bankruptcy court attempting to eliminate the need for a particular appeal.*

*Id.* (emphasis added).    The Ninth Circuit has, moreover, recently reiterated this holding, citing

*Combined Metals* and employing its reasoning.    *In re: Adams Apple, Inc., 829 F.2d 1484, 1489 (9th Cir.1987).* [FN1]

> [FN1]. *Adams Apple* came after both the Bankruptcy Reform Act of 1978 and the Bankruptcy Amendments & Federal Judgeship Act of 1984, which Acts made significant changes to bankruptcy court jurisdiction.

The Third Circuit, too, has spoken to this issue, and rejected the suggestion that bankruptcy and district courts may possess some commonality of jurisdiction.  *Main Line Fed. Sav. and Loan Ass'n v. Tri-Kell, Inc., 721 F.2d 904, 906 (3d Cir.1983).*    In so doing, the court noted that "[t]he procedural morass in this case illustrates the problems created by assertions of concurrent jurisdiction," and emphasized that "in the case before us application of the rule [against concurrent jurisdiction] would promote rather than retard the efficient utilization of the appellate process." *Id.* at 907.

I believe it is appropriate to apply the rule against concurrent jurisdiction in this case, and so would adopt the reasoning of the Ninth and Third Circuits. Dismissing Lawrence's Chapter 7 petition as an abusive filing would have been the direct and appropriate route for the bankruptcy court to take. But by consolidating the petition with an already-dismissed petition, and disposing of it by this more convoluted route, it has simply obscured the issues in this case.    Its action attempted to transform the already-pending appeal concerning the Chapter 13 petition into an appeal involving 1) that dismissal; 2) the de facto dismissal of the Chapter 7 petition;  and 3) the consolidation of the two cases.    And, meanwhile, the bankruptcy court's action caused yet another appeal to be filed, focusing solely on the latter two events.

**\*4** The holding expressed by the majority may wreak unforeseeable havoc by giving the green light to bankruptcy courts to revisit orders over which the district courts have exercised jurisdiction.    Because I believe it was improper for the bankruptcy court to exercise jurisdiction over a case when its dismissal had already been appealed to the district court, I respectfully dissent.

C.A.6 (Mich.),1993.
Lawrence v. Remes
992 F.2d 1216, 1993 WL 141066 (C.A.6 (Mich.))

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

992 F.2d 1216                                                                Page 4
992 F.2d 1216, 1993 WL 141066 (C.A.6 (Mich.))
**(Cite as: 992 F.2d 1216)**


END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**3**



166 Fed.Appx. 639
166 Fed.Appx. 639, 2006 WL 335855 (C.A.3 (N.J.))
**(Cite as: 166 Fed.Appx. 639)**

Briefs and Other Related Documents
New Jersey Dept. of Treasury v. Visara Intern., Inc.C.A.3 (N.J.),2006.This case was not selected for publication in the Federal Reporter.NOT PRECEDENTIAL Please use FIND to look at the applicable circuit court rule before citing this opinion. Third Circuit Local Appellate Rule 28.3(a) and Internal Operating Procedure 5.3. (FIND CTA3 Rule 28.0 and CTA3 IOP APP I 5.3.)
United States Court of Appeals,Third Circuit.
NEW JERSEY DEPARTMENT OF TREASURY,
Division of Purchase and Property, Appellant,
v.
VISARA INTERNATIONAL, INC.
**No. 05-1196.**

Argued Jan. 17, 2006.
Decided Feb. 15, 2006.

**Background:** State of New Jersey brought suit for breach of contract, unjust enrichment, fraud, and breach of implied covenant of good faith and fair dealing against purchaser of assets of defunct corporation from which State had purchased computer equipment and prepaid maintenance services. The United States District Court for the District of New Jersey, Stanley R. Chesler, J., granted summary judgment to successor. State appealed.

**Holdings:** The Court of Appeals, Fuentas, Circuit Judge, held that:

(1) State remained company's creditor after nonconsensual assignment of assets, and

(2) confirmation of company's Chapter 11 bankruptcy plan presented res judicata bar to attempt to enforce company's obligations against asset purchaser.

Affirmed.
West Headnotes



**[1] Assignments 38** ⚷ **100**

38 Assignments
   38V Rights and Liabilities
      38k99 Equities and Defenses Between Original Parties
         38k100 k. In General. Most Cited Cases
State did not lose its status as creditor of computer equipment and services company by virtue of company's nonconsensual assignment of its contractual obligations to third party.

**[2] Bankruptcy 51** ⚷ **3568(2)**

51 Bankruptcy
   51XIV Reorganization
      51XIV(B) The Plan
         51k3566 Confirmation; Objections
            51k3568 Effect
               51k3568(2) k. Conclusiveness. Most Cited Cases
Inasmuch as state remained creditor of corporation after corporation's attempt to assign its contractual obligations without state's consent, state was creditor of company during company's subsequent bankruptcy proceeding, and confirmation of Chapter 11 plan presented res judicata bar to state's attempt to subsequently enforce contractual obligations against assignee.

**[3] Assignments 38** ⚷ **29**

38 Assignments
   38I Property, Estates, and Rights Assignable
      38k29 k. Transfer of Liability. Most Cited Cases
Assignor could not assign its obligations under contract without consent of other contracting party to which it was liable.



**[4] Novation 278** ⚷ **1**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

278 Novation
    278k1 k. Nature and Requisites in General. Most Cited Cases
A novation is the act of substituting for an old obligation a new one that either replaces an existing obligation with a new obligation or replaces an original party with a new party.

**\*639** On Appeal from the United States District Court for the District of New Jersey. (D.C. No. 04-cv-01776). District Judge: Honorable Stanley R. Chesler.

Mala S. Narayanan (Argued), Office of the Attorney General of New Jersey, Richard J. HughesJustice Complex, Trenton, New Jersey, for Appellant.
Robert E. Ganz (Argued), Ganz, Wolkenbreit & Friedman, Albany, New York, Hal K. Haveson, Haveson & Otis, Princeton, New Jersey, for Appellee.

Before ROTH, FUENTES, and BECKER, Circuit Judges.

OPINION OF THE COURT
FUENTES, Circuit Judge.
**\*\*1** Appellant, New Jersey Department of Treasury ("New Jersey"), appeals the decision of the U.S. District Court for the District of New Jersey granting summary judgment in favor of appellee Visara International, Inc. ("VI") on New Jersey's claims for breach of contract, unjust enrichment/quantum meruit, bad faith, fraud, and breach of the implied covenant of good faith and fair dealing. We exercise plenary review over these claims on appeal and affirm the District Court's decision.

I. Background

In 1997, and again in 2001, New Jersey awarded contracts (the "New Jersey Contracts") to Visara, Inc., ("Visara") for computer equipment and pre-paid maintenance and warranty services. New Jersey paid Visara a total of $10.1 million for the equipment and maintenance services. Much of the computer equipment proved to be defective almost immediately after being put into service. In April 2002, a service representative informed New Jersey that all of Visara's assets-including its obligations under the New Jersey Contracts-had been sold to VI. In fact, VI had purchased Visara's assets in February 2002 through an Asset Purchase Agreement, which provided, among other things, that VI would

"assume" Visara's warranty and maintenance obligations to New Jersey. New Jersey was not a signatory to the Agreement.

In May 2002, shortly after the asset sale, Visara was put into involuntary bankruptcy by a creditor filing in the U.S. Bankruptcy Court for the Northern District of New York. On October 29, 2003, Visara filed its Disclosure Statement and Chapter 11 Proposed Liquidating Plan of Reorganization. The proposed plan included a settlement agreement between Visara and VI that required VI to contribute $200,000 to fund a ten percent payment to Visara's general unsecured creditors in exchange for a release from the claims of Visara's creditors.

New Jersey filed a $2.8 million claim on December 5, 2003, almost one year after the bar date for filings by governmental units had passed. Visara objected to New Jersey's claim on three grounds: untimeliness, insufficient documentation, and New Jersey's failure to mitigate damages. New Jersey subsequently sought permission of the Bankruptcy Court to withdraw its claim. On February 11, 2004, the Bankruptcy Court issued an "Order Disallowing Claim of the State of New Jersey." The bankruptcy proceedings eventually concluded when the Bankruptcy Court approved the settlement agreement (which was increased to $220,000) and confirmed Visara's Chapter 11 plan. No appeals were filed by the New Jersey Attorney General or any other party.

On March 9, 2004-less than one month after the Bankruptcy Court disallowed New Jersey's claim against Visara-New Jersey filed suit against VI in the Superior Court of New Jersey. New Jersey asserted claims for breach of contract, unjust enrichment/quantum meruit, bad faith, fraud, and breach of the implied covenant of good faith and fair dealing. New Jersey sought to recover the same sum of $2.8 million that it sought in Visara's bankruptcy proceedings. The action was removed to the U.S. District Court for the District of New Jersey. The parties eventually filed cross-summary judgment motions. On December 20, 2004, the District Court granted summary judgment in VI's favor based on *res judicata,* holding that, in view of New Jersey's status as a creditor to **\*641** Visara during Visara's bankruptcy proceedings, the claims in this action were resolved by the confirmation of the Chapter 11 plan. This appeal followed.

II. Discussion

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

166 Fed.Appx. 639                                                                        Page 3
166 Fed.Appx. 639, 2006 WL 335855 (C.A.3 (N.J.))
**(Cite as: 166 Fed.Appx. 639)**

**\*\*2 [1][2]** New Jersey argues that the District Court erred in granting VI's motion for summary judgment on *res judicata* grounds.    For the reasons stated below, we conclude that the District Court properly granted summary judgment for VI.

The rule of *res judicata,* as applied in the bankruptcy context, has been summarized as follows:
Section 1141(a) of the [Bankruptcy] Code provides that a plan is binding upon all parties once it is confirmed.... [A] confirmed plan of reorganization is binding upon every entity that holds a claim or interest even though a holder of a claim or interest is not scheduled, has not filed a claim, does not receive a distribution under the plan or is not entitled to retain an interest under such plan.    In other words, a confirmed plan precludes parties from raising claims or issues that could have or should have been raised before the confirmation but were not.

8 *Collier on Bankruptcy* ¶ 1141.02 (15 ed. rev.2004) (footnotes omitted).

**[3][4]** New Jersey contends that *res judicata* does not apply here because it was not a creditor of Visara during Visara's bankruptcy proceedings.    First, New Jersey argues that, by the time Visara's bankruptcy proceedings began, VI had expressly "assumed" Visara's contractual obligations to New Jersey; therefore, New Jersey was a creditor of VI and not Visara.    However, as the District Court explained, it is a matter of basic contract law that
one who ... is bound to any performance whatsoever cannot by its own act, or by any act in agreement with anyone else, except its creditor, divest itself of the duty and substitute the duty of another.    No one can assign his liabilities under a contract without the consent of the party to whom he is liable.

29 *Williston on Contracts* § 74:27 at 412 (4th ed.2003, Supp.2004) (internal quotation marks and footnote omitted); *see also Riley v. New Rapids Carpet Ctr.,* 61 N.J. 218, 294 A.2d 7, 10 (1972) (citing *Williston on Contracts* for same proposition); *Wachovia Realty Invs. v. Hous., Inc.,* 292 N.C. 93, 232 S.E.2d 667, 674 (1977) (discussing same proposition). [FN1]    In other words, Visara could not assign its obligations under the New Jersey contracts to VI, without the consent of New Jersey, the party to which it was liable.    The District Court concluded that without any evidence that New Jersey expressly or impliedly agreed to a novation [FN2] of its contracts with Visara, New Jersey remained Visara's creditor despite the attempted assignment of Visara's obligations to VI. [FN3] We agree.

FN1. Although there is some question as to whether the Asset Purchase Agreement between Visara and VI is governed by New Jersey or North Carolina law, we need not resolve a choice of law question here because the relevant laws do not conflict. *See Lucker Mfg. v. Home Ins. Co.,* 23 F.3d 808, 813 (3d Cir.1994) ("Before a choice of law question arises, ... there must actually be a conflict between the potentially applicable bodies of law.").

FN2. A novation is "[t]he act of substituting for an old obligation a new one that either replaces an existing obligation with a new obligation or replaces an original party with a new party." *Black's Law Dictionary* 1091 (7th ed.1999).

FN3. We further note that the New Jersey Contracts contained an anti-assignment-without-consent clause.    That provision states the following:
3.11    SUBCONTRACTING    OR ASSIGNMENT-The contract may not be subcontracted or assigned by the contractor, in whole or in part, without the prior written consent of the Director of the Division of Purchase and Property.    Such consent, if granted, shall not relieve the contractor of any of his responsibilities under the Contract.
This language in the contract suggests that the maintenance obligations were never validly transferred to VI. For example, according to the Second Restatement of Contracts, a term prohibiting the assignment of "the contract" bars delegation of a duty to an assignee.    Restatement (Second) of Contracts § 322; *see also* U.C.C. § 2-210(2) (*"Unless otherwise agreed* all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance." (emphasis added)); N.J. Stat. § 12A:2-210(2); N.C. Gen.Stat. § 25-2-210(2).    Therefore, it appears that New Jersey does not have, and never did have, a valid and independent claim against VI.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

166 Fed.Appx. 639
166 Fed.Appx. 639, 2006 WL 335855 (C.A.3 (N.J.))
(Cite as: 166 Fed.Appx. 639)

Page 4

**\*642** New Jersey also contends that the circumstances surrounding Visara's bankruptcy proceedings demonstrate that it was not a creditor of Visara.   To that end, New Jersey points out that Visara did not list the State of New Jersey in its bankruptcy schedules, Visara never formally notified New Jersey of its bankruptcy filing, and Visara never sought New Jersey's consent to the settlement agreement funded by VI. The District Court properly rejected these arguments, explaining that issues with respect to notice and consent should have been raised in Visara's bankruptcy proceedings.   In addition, the fact that New Jersey accepted computer service from VI for approximately six months after Visara sold its assets to VI is of no moment.   As explained above, Visara could not assign its obligations under its contracts with New Jersey without New Jersey's consent, and that consent was never given.   Accordingly, for the reasons stated above, we reject New Jersey's arguments that it was not a creditor of Visara during Visara's bankruptcy proceedings and therefore affirm the District Court's dismissal of New Jersey's claims against VI on *res judicata* grounds.

### III. Conclusion

**\*\*3** We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary.   Accordingly, the judgment of the District Court will be affirmed.

C.A.3 (N.J.),2006.
New Jersey Dept. of Treasury v. Visara Intern., Inc.
166 Fed.Appx. 639, 2006 WL 335855 (C.A.3 (N.J.))

Briefs and Other Related Documents (Back to top)

• 05-1196 (Docket) (Jan. 24, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| RNI WIND DOWN CORPORATION, et al.,[1] | : | Case No. 06-10110 (CSS) |
|  | : |  |
| Reorganized Debtors. | : | (Jointly Administered) |
| _____ | : |  |
|  | : |  |
| CHARLES L. GRIMES, | : | Civil Action No. 06-0585 (GMS) |
|  | : |  |
| Appellant, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| RNI WIND DOWN CORPORATION, et al., | : |  |
|  | : |  |
| Appellees. | : |  |
| _____ | : |  |

### CERTIFICATE OF SERVICE

I, Christopher A. Ward, Esq. of Klehr, Harrison, Harvey, Branzburg & Ellers LLP hereby certify that on this 8th day of February 2007, I caused copies of the foregoing Reply to Appellant's Answering Brief to Motion to Dismiss Appeal to be served upon the parties listed below via United States first class mail, postage pre-paid:

> David Jenkins
> Kathleen M. Miller
> Smith, Katzenstein, & Furlow
> The Corporate Plaza
> 800 Delaware Ave.
> P.O. Box 410
> Wilmington, DE 19899

/s/ Christopher A. Ward
Christopher A. Ward (Del. Bar No. 3877)

---

[1]The Reorganized Debtors are RNI Wind Down Corporation, formerly known as Riverstone Networks, Inc. (Tax ID No. XX-XXX6178), BlueCoast Software (Tax ID No. XX-XXX9415), The OASys Group, Inc. (Tax ID No. XX-XXX8093), Riverstone Networks SPC, Inc. (Tax ID No. XX-XXX3518) and Pipal Systems, Inc. (Tax ID No. XX-XXX6850) each with a mailing address c/o Craig R. Jalbert, Verdolino & Lowey, P.C., Pine Brook Office Park, 124 Washington Street, Foxborough, MA 02035.